```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
YANG FENG ZHAO,
                              :
              Plaintiff,
                              :      MEMORANDUM & ORDER
         -against-
                              :      07 Civ. 3636 (LAK)(MHD)
CITY OF NEW YORK et al.,
                              :
              Defendants.
------------------------------x
```

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

Plaintiff Yang Shen Zhao has sued two New York City police detectives and the City for false arrest and malicious prosecution based on plaintiff's arrest on October 24, 2005 and his prosecution for the murder of a night club bouncer on December 11, 2001. Plaintiff remained incarcerated for eleven months, until September 22, 2006, and the charges were then dismissed on December 18, 2006 at the request of the prosecutor, who advised the court that Zhao had not been involved in the crime. The focus of plaintiff's case is on the actions of the two defendant detectives, who, according to the complaint, coerced a false confession from plaintiff by the use of force and verbal threats after a very extended interrogation. Plaintiff also alleges that the police and prosecutors pursued the case against him for an extended period of time even though they had evidence demonstrating both plaintiff's non-involvement in the crime and the responsibility of two other

1

identified individuals for the murder.

In the course of discovery, plaintiff has sought, among other things, undisclosed portions of the prosecutor's file pertaining to the criminal investigation, at least up to the time of his exoneration and the dismissal of the charges against him. (Aff. of Eric W. Siegle, Esq. ¶¶ 7-9, Oct. 9, 2007; Letter from Eric W. Siegle, Esq. to the Court (Oct. 30, 2007).) He has also sought disclosure of training materials utilized by the New York Police Department concerning techniques and procedures for interrogating suspects, arguing that they are pertinent to his claims against the detectives and his Monell claim against the City for inadequate training. (See Oct. 9 Siegle Aff. ¶¶ 6-10, 12-13); Oct. 30 Siegle letter; Letter from Eric W. Siegle, Esq. to the Court (Nov. 8, 2007).) Defendants belatedly invoked a claim of a law-enforcement privilege to block disclosure of these documents and, in response to court orders, have proffered a privilege log and affidavits to support their claims of privilege, together with a new motion for a protective order. (Decl. of Assistant Corp. Counsel John H. Graziadei & Exs. A-E, Oct. 31, 2007; Letter from Assistant Corp. Counsel John H. Graziadei to the Court at 1-4, 6-8 (Nov. 14, 2007); Letter from Assistant Corp. Counsel John H. Graziadei to the Court at 4-9 (Oct. 31, 2007).) They also seem to argue now that the documents, or at least some of them, are not relevant and that some

are protected from discovery by a state sealing statute. (Nov. 14 Graziadei letter at 4-6; Oct. 31 Graziadei letter at 3-4.) Finally, at the order of the court, defendants have submitted for in camera review 286 pages of documents withheld on the basis of a law-enforcement privilege. (Graziadei Decl. & Ex. D; Nov. 14 Graziadei letter; Letter from Assistant Corp. Counsel John H. Graziadei to the Court (Nov. 7, 2007) & annexed decls. of Graham Daw, Thomas G. Mason, Matthew Wagner & Michael Cassidy; Oct. 31 Graziadei letter.)

For various reasons, we grant plaintiff's application in part and deny defendants' motion for a protective order to preclude discovery.

ANALYSIS

Plaintiff seeks production of the investigatory documents based principally on his assertion that they are needed to establish his contention both that the defendants lacked probable cause when they arrested him and that they lacked a basis at any time to pursue his prosecution for murder. (Nov. 8 Siegle letter at 7-9.) As for the training materials, Zhao asserts that they are relevant to evaluating the defendant detectives' conduct in interrogating him and are necessary to support his Monell claim.

3

(<u>Id.</u> at 20.) In the face of the defendants' invocation of the law-enforcement privilege, plaintiff argues that the privilege log on which that claim is based is untimely and plainly inadequate. (<u>Id.</u> at 5-7.) He further suggests that defendants fail to establish the factual predicates on which the privilege claims are based. (<u>Id.</u>) As for the state sealing statute cited by defendants, plaintiff argues that it simply does not apply to the documents at issue and that in any event it does not govern discovery in this federal-question case. (<u>Id.</u> at 9-12.)

In support of defendants' protective-order motion, they insist that the homicide investigation is open, that disclosure of the requested investigatory documents would interfere with the investigation and put informants at risk, and that plaintiff has not shown a need for the documents. (Nov. 14 Graziadei letter at 1-6.) As for the training materials, they argue that disclosure would prejudice the ability of the Police Department to interrogate suspects and witnesses and otherwise interfere with the performance of the Department's law-enforcement responsibilities. (<u>Id.</u> at 6-8.)

We first address the investigatory documents and then consider the training documents.

4

A. The Investigation File

Defendants' papers are less than clear in identifying what documents are being withheld (see Decl. of Thomas Conforti ¶¶ 4-14, Oct. 31, 2007), although the October 23, 2007 privilege log offers some indication. (Graziadei Decl. Ex. D.) As for the log itself, it is untimely since it was provided two weeks after the deadline in the October 2, 2007 order issued by Judge Kaplan.[1] Moreover, the log is deficient in that some of its entries are so general in their description of the documents as to leave us to speculate as to the substance of what is being concealed, while others indicate on their face an inappropriate invocation of the privilege. (See id. Ex. D at #79 ("Blank Polaroid").) Notwithstanding these deficiencies, we decline to reject the privilege claims on that basis alone, and look to both the substance of a set of affidavits proffered by Police Department officials in support of defendants' privilege claims and an in camera review of the withheld documents.

The rationale for the law-enforcement privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals

---

[1] The order required production of any privilege logs by October 8, 2007. The privilege log on which defendants rely is dated October 23, 2007.

5

involved with an investigation, and otherwise to prevent interference in an investigation." In re Dep't of Investigation of City of N.Y., 856 F.2d 481, 484 (2d Cir. 1988); see also Kitevski v. City of New York, 2006 WL 680527, at *2-3 (S.D.N.Y. Mar. 6, 2006). Like other related privileges, it offers only conditional protection and may be set aside on an adequate showing of need. See, e.g., Kunstler v. City of New York, 2005 WL 2656117, at *1 (S.D.N.Y. Oct. 18, 2005); Fountain v. City of New York, 2004 WL 941242, at *4 (S.D.N.Y. May 3, 2004) (stating that unlike the state secrets privilege, the "official information privilege . . . is not absolute") (citing Kelly v. City of San Jose, 114 F.R.D. 653, 668 (N.D. Cal. 1987)).

Our assessment of the defendants' privilege claims relies on the oft-cited criteria outlined by Judge Weinstein in King v. Conde, 121 F.R.D. 180, 189-91 (E.D.N.Y. 1988), for assertion and documentation of the grounds for such a privilege. See, e.g., Haus v. City of New York, 2005 WL 1705291, at *4 (S.D.N.Y. July 21, 2005); Fountain, 2004 WL 941242, at *3-4. Of particular pertinence, defendants "must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not rely simply on generalized reiterations of the policies underlying the privilege." Schiller v. City of New York, 2007 WL 136149, at *7 (S.D.N.Y. Jan.

6

19, 2007) (quoting <u>Kunstler</u>, 2005 WL 2656117, at *1); <u>see</u>, <u>e.g.</u>, <u>King</u>, 121 F.R.D. at 189.

The basic premise for defendants' effort to block production of the investigatory documents is that their disclosure will harm an "open and active" investigation into the 2001 homicide for which plaintiff was arrested in 2005. (Conforti Decl. ¶ 4.) In this respect, they suggest that witnesses and informants may be reluctant to cooperate if their identities are revealed, and that suspects will be alerted to the fact that they are under suspicion and may destroy evidence or attempt to retaliate against or intimidate witnesses. (<u>Id.</u> ¶¶ 5-6, 11.) They also express concern in general terms that disclosure of the documents "would deprive the NYPD of its tactical advantage in planning and executing future investigations as well as compromise the [current] ongoing investigation." (<u>Id.</u> ¶ 8.)

There are several difficulties with defendants' cited assertions. First, although defendants suggest, in entirely conclusory terms, that the homicide investigation is ongoing (<u>id.</u> ¶ 4),[2] the record suggests otherwise. Plaintiff, apparently relying

---

[2] Thomas Conforti states, "I understand that plaintiff seeks production of the entire open homicide file that has been developed during the investigation into the death of Danny Cabezas. However, the investigation remains open and active." (Conforti Decl. ¶ 4.) Mr. Conforti gives no further explanation,

7

on documents turned over to him by the prosecutors during the pendency of the criminal case against him, makes the point that the killing was at least partly recorded on a night club security video and that at some point during the investigation the police identified two men who appeared on the video as the stabber and his accomplice. (See Nov. 8 Siegle letter at 3.) The names of those two men were known at the time and one was even publicly disclosed, and hence the only aspect of the investigation that is still open is the challenge of locating these two individuals. (Id. at 3-4, 12-13 & Ex. 3.) Furthermore, as plaintiff notes, all of the so-called investigatory documents listed on the defendants' privilege log with a date in fact predate plaintiff's arrest in October 2005, thus indicating that the documents at issue do not relate to any ongoing Police Department activity attempting to locate the men allegedly involved. (See Graziadei Decl. Ex. D.) In addition, as defendants' own counsel noted at a pretrial conference, one of the two defendant police detectives, Det. Billy Milan, testified at his deposition on October 15, 2007 that until that moment he had believed that plaintiff was the stabber and that he was mystified as to why the District Attorney had asked for the dismissal of the charges against plaintiff. (Pretrial Conf. Tr. 27-28, Oct. 16, 2007; accord Milan Dep. 261-62, Oct. 15, 2007; see also id. at

---

but rather merely states, among other similar remarks, that disclosure of the documents would "compromise and interfere with the ongoing investigation". (Id.)

8

185.)[3]

Strikingly, although defendants proffer a declaration that refers to the investigation as being "open and active" (Conforti Decl. ¶ 4), they do not contradict or even address plaintiff's assertion suggesting that the investigation, while technically open because the identified perpetrators have not been located, is entirely quiescent. Moreover, we note that the investigation documents that we have reviewed in camera are entirely consistent with this conclusion, since they all appear to predate plaintiff's October 2005 arrest and reflect that the police were focusing on two individuals other than plaintiff.

Given the lack of specifics that defendants offer on this point and their failure to take issue with plaintiff's proffer about the state of the investigation, it appears that the investigation is not being actively pursued at this stage and that whatever might be done in the future -- apart from being quite speculative -- is likely to be limited to attempts to locate the two named suspects. This set of facts substantially weakens the

---

[3] At Det. Milan's deposition, he observed an enhanced video of an encounter between plaintiff and the victim, and for the first time concluded that -- contrary to his prior belief -- the segment did not show plaintiff stabbing the victim but rather indicated that plaintiff was not the stabber. (Milan Dep. 261-62.)
9

generic argument advanced by defendants that disclosure of investigatory documents is likely to interfere with an ongoing criminal investigation.

Moreover, defendants fail to offer any specific explanation as to why the disclosure of the disputed investigatory documents to plaintiff or his attorney will interfere with the investigation, much less why such a theoretical danger cannot be addressed by application of a protective order, including a provision for an "attorney's eyes only" designation for any particularly sensitive documents (if any exist).[4] Failure to offer such proof -- which is not remedied by the documents we have reviewed[5] -- is fatal to defendants' argument insofar as it is premised on the assertion that disclosure would imperil an "open" investigation. See, e.g., Haus v. City of New York, 2004 WL 3019762, at *5 (S.D.N.Y. Dec. 29, 2004) (noting defendants' failure to address the effect that disclosing the documents under the terms of a confidentiality order might have on anticipated harm).

---

[4] The existing confidentiality stipulation provides for designation of documents as confidential or "attorney's eyes only," although it could be read as limiting the latter category to information identifying witnesses. (Confidentiality Stipulation & Order ¶¶ 8-9, Oct. 2, 2007.)

[5] For the most part, the documents appear to reflect efforts by the police to obtain background and location information concerning several suspects other than the plaintiff.

10

As for the substance of the defendants' concerns about disclosure of the identities of witnesses and suspects, that too seems implausible, if for no other reason because plaintiff was apparently supplied during the pendency of his criminal case with documents identifying such individuals. Indeed, a substantial portion of the deposition of Det. Milan was consumed with testimony identifying various witnesses interviewed by the police (see Milan Dep. 106-07, 111-12, 116-18, 122, 137-38, 141-42), as well as discussing individuals other than the plaintiff who were suspected of involvement in the killing. (E.g., id. at 146-48, 150-53, 158, 162-63).[6]

With regard to defendants' alternative assertion that disclosure of some of the documents could reveal the identity of confidential informants, we recognize the availability of an informant's privilege, e.g., In re United States, 565 F.2d 19, 22-23 (2d Cir. 1977); see also Ayala v. City of New York, 2004 WL 2914085, at *1 (S.D.N.Y. Dec. 16, 2004), which may be invoked whether or not there is a currently active investigation. See, e.g., United States v. Abuhamra, 389 F.3d 309, 324 (2d Cir. 2004)

---

[6] At one point in the deposition, Det. Milan referred to a suspect whom a witness had described under an apparent nickname. Although Milan initially seemed to think that the suspect was plaintiff, it turned out that the witness had referred to certain identifying characteristics of the suspect, including tattoos, for which Det. Milan never bothered to look when he confronted plaintiff. (Milan Dep. 147-48, 162-63.)

11

(remarking that disclosure may prevent use of informant in other investigations). That said, defendants do not satisfactorily explain why, if any informants have explicitly or implicitly been promised confidentiality, they may not be protected by the redaction of any documents containing identifying information. Furthermore, if defendants have a legitimate concern that even information that is not specifically of an identifying nature may be used by the plaintiff to piece together the identities of informants, that concern may be allayed by an "attorney's eyes only" designation -- an alternative that defendants simply fail to address.

In sum, the defendants fail to document with any specificity the factual basis for their invocation of the law-enforcement privilege, including particularly the nature and extent of the harms that would result from required production. They equally fail to address the alternatives available for dealing with the harms that they conclusorily invoke in support of their privilege claims.

We further note that the conditional nature of the law-enforcement privilege reinforces our conclusion that production is properly mandated here. It bears emphasis that plaintiff must demonstrate the absence of probable cause for his arrest, see, e.g., Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996), and for his

12

prosecution. See, e.g., Hartman v. Moore, 547 U.S. 250, 58 (2006). To do so it is essential that his attorney have access to the documents that would demonstrate the extent of the information available throughout the period in question, both to the police and to the prosecutor. Hence, his need for these documents is particularly acute, a circumstance that weighs heavily in the balance against the minimalist showing of the defendants in support of their privilege claim. See Haus, 2004 WL 3019762, at *5 n. 2.

Finally, we note that defendants' invocation of the provisions of the New York sealing statute, N.Y. Crim. Proc. L. § 160.50, is misguided because those provisions do not apply here. That statute requires sealing of "all official records and papers, including judgments and orders of a court . . relating to the arrest or prosecution" of an individual when the criminal proceeding has terminated in his favor. This does not afford defendants a means of objecting to the production of the documents at issue in this case.

The documents currently in question involve police investigatory materials that relate almost exclusively to suspects other than the plaintiff. In addition, the sealing statute is unavailable to defendants because it is intended to protect the exonerated defendant, in this case the plaintiff, who is in fact seeking the documents. Indeed, by filing suit plaintiff waives the

13

protection of the sealing provision. See, e.g., Green v. Montgomery, 219 F.3d 52, 57 (2d Cir. 2000) (citing Kalogris v. Roberts, 185 A.D.2d 335, 336, 586 N.Y.S.2d 806, 807 (2d Dept. 1992)).

Moreover, state law does not govern privilege and other discovery issues in federal-question litigation, as here, although the federal court may properly give state policies embodied in statute or caselaw some weight. In this context, the federal courts have, with some consistency, rejected attempts to invoke section 160.50 as a means to block discovery in section 1983 litigation. See, e.g., Haus v. City of New York, 2006 WL 3375395, at *2 (S.D.N.Y. Nov. 17, 2006) (citing cases).

In sum, for the reasons noted, defendants fail to demonstrate any compelling reason to deny plaintiff or his attorney access to these materials for the limited purpose of litigating plaintiff's case against the defendants. Accordingly, defendants will be required to produce to plaintiff's counsel the so-called investigatory documents previously withheld on the ground of the law-enforcement privilege, but may redact the names of, and other identifying data regarding, confidential informants whose identities have not previously been revealed to plaintiff or his counsel by the prosecutors or the defendants. Defendants may also

14

designate appropriate documents from this universe as confidential under the terms of the governing protective order or "attorney's eyes only." Production is to be completed by no later than December 10, 2007.

B. The Training Materials

Plaintiff also seeks production of certain police training materials that address the interrogation of witnesses and suspects. Again, defendants invoke the law-enforcement privilege.

The thrust of defendants' argument is that the materials in question contain guidance as to tactics for obtaining useful information from both witnesses and suspects. According to defendants, if such individuals learn the details of those tactics, they may be able to avoid providing candid and useful information when questioned by the police. (Oct. 31 Wagner Decl. ¶¶ 4-8; Decl. of Michael Cassidy ¶¶ 4-8, Oct. 31, 2007.)

There are several problems with this argument. First, defendants fail to demonstrate that the materials at issue and their contents are kept confidential. It appears that they are used in training sessions required of some unspecified universe of Police Department personnel. (Oct. 31 Cassidy Decl. ¶ 2; Oct. 31

15

Wagner Decl. ¶ 2.) Defendants do not indicate, however, that the trainees or others given access to these materials are instructed not to disclose the contents of these training sessions or materials to anyone. Indeed, in defendants' initial submission they made no reference at all to confidentiality (see Oct. 31 Wagner & Cassidy Decls.), leading the court to direct them to file supplemental papers addressing the question of confidentiality. (Pretrial Conf. Tr. 26-28, Nov. 1, 2007.) Even in their supplemental papers, however, defendants offer no evidence that would suggest that the Department specifically instructed the pertinent police personnel not to reveal the contents of these documents or of the courses in question. All that their affiants say is that the materials are "confidential" and that all police officers and other personnel are under a standing order not to discuss "official Department business" with others. (Decl. of Matthew Wagner ¶ 8, Nov. 7, 2007; Decl. of Michael Cassidy ¶ 8, Nov. 7, 2007.)

Even putting to one side this deficiency in defendants' showing, we conclude that they have failed to justify withholding the materials in question from the plaintiff's attorney. As noted, to sustain the law-enforcement privilege a party must make a fairly specific showing of anticipated harm from disclosure and cannot rest on conclusory reiteration of the policies underlying the

16

privilege. In this instance, defendants' affiants do nothing more than assert in conclusory terms that disclosure in this case could lead to the frustration of police efforts in other circumstances to elicit truthful responses during the course of interrogations. (Nov. 7 Wagner Decl. ¶¶ 6-7; Nov. 7 Cassidy Decl. ¶¶ 6-7.)

These assertions fail for at least four reasons. First, they are totally unspecific and hence useless to the court in assessing the validity of the defendants' claims that disclosure would potentially result in serious damage to the Police Department's law-enforcement obligations. Second, based on an in camera review of the materials at issue (NYCP ## 414-62), we find that it is highly implausible that even their public disclosure could be viewed as likely to cause any meaningful interference with the law-enforcement capabilities of the Police Department. The advice imparted in these documents is pitched at such a level of generality, and the techniques in question are so self-evident, that they simply do not disclose tactics of which a potential witness or criminal suspect is unlikely to have thought. It follows that the disclosure of these materials can scarcely be assumed to advantage such people in future efforts at evasion.[7] Third, as

---

[7] The only specific and non-obvious tactic has nothing to do with encouraging a witness or suspect to be truthful but rather is designed to avoid later claims by a defendant that the police fabricated a witness statement. See NYCP # 419. Hence, there is no reason to believe that disclosure will affect the ability of

17

noted, the defendants fail to demonstrate that the instructional materials that are in fact confidential. Indeed, this failing is underscored not only by the absence of any markings on the documents warning the possessor of the need to keep the contents private, but still more by the fact that the contents include, inter alia, copies of publicly available published articles. (E.g., NYCP # 426-37.)[8] Fourth, even if we assume -- contrary to all appearances -- that some of the documents contain sensitive information, defendants completely ignore the potential curative effect of a confidentiality order. There is no reason to believe that if sensitive portions of these documents were produced on an "attorney's eyes only" basis, they would be disclosed to potential suspects or to crime witnesses with an interest in avoiding truthful disclosure to the police. See, e.g., Haus, 2004 WL 3019762, at *5.

In sum, defendants do not justify withholding these materials from discovery. They are to produce them to plaintiff's counsel by no later than December 10, 2007. This directive is without prejudice to defendants' invocation of the governing confidentiality order to designate portions of the documents as

---

the police to obtain truthful statements.

[8] Apart from newspaper articles, we note that back issues of the FBI Law Enforcement Bulletin, from which one item is derived, are available at http://www.fbi.gov/publications/leb/leb.htm.

confidential or their ability to designate documents or portions of documents as "attorney's eyes only" if that is justified under the circumstances.

C. <u>Other Matters</u>

In plaintiff's submission, he refers to defendants' production of documents in redacted form even though those documents are not listed on any privilege log. Defendants fail to respond to this issue in either version of their reply papers.

Given the fact that defendants have had two opportunities to provide privilege logs and have also been on notice from plaintiff's papers that he contested the unexplained redactions, they are directed to provide to plaintiff in unredacted form all documents heretofore produced in redacted format unless the redactions were previously listed on a privilege log. Moreover, if defendants have withheld any documents called for by plaintiff but have not listed them on a privilege log, they are to produce them to plaintiff's counsel by December 10, 2007.[9]

---

[9] We note that on November 30, 2007, defendants' counsel requested and received a court order to enforce a subpoena directed to the Office of the Queens County District Attorney. We are mystified about the timing of counsel's apparent effort to obtain plainly relevant documents from the prosecutor's office, but warn defendants that any such documents that are responsive to plaintiff's prior Rule 34 document requests must be turned

19

CONCLUSION

For the reasons noted, plaintiff's application to compel production of documents is granted to the extent noted, and defendants' motion for a protective order is denied.

Dated: New York, New York
December 4, 2007

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Memorandum and Order have been mailed today to:

Eric W. Siegle, Esq.
Siegle & Sims L.L.P.
The Astor Building
217 Broadway
Suite 611
New York, New York 10007

John H. Graziadei, Esq.
Assistant Corporation Counsel
 for the City of New York
100 Church Street
New York, New York 10007

over to plaintiff's counsel forthwith.