# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
YANG FENG ZHAO,

              Plaintiff,      :      AMENDED MEMORANDUM & ORDER

          -against-        :      07 Civ. 3636 (LAK)(MHD)

CITY OF NEW YORK et al.,      :

            Defendants.    :
------------------------------x

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

     Plaintiff Yang Shen Zhao has sued two New York City police detectives and the City for false arrest and malicious prosecution based on plaintiff's arrest on October 24, 2005 and his prosecution for the murder of a night club bouncer on December 11, 2001. Plaintiff remained incarcerated for eleven months, until September 22, 2006, and the charges were then dismissed on December 18, 2006 at the request of the prosecutor, who advised the court that Zhao had not been involved in the crime. The focus of plaintiff's case is on the actions of the two defendant detectives, who, according to the complaint, coerced a false confession from plaintiff by the use of force and verbal threats after a very extended interrogation. Plaintiff also alleges that the police and prosecutors pursued the case against him for an extended period of time even though they had evidence demonstrating both plaintiff's non-involvement in the crime and the responsibility of two other

identified individuals for the murder.

In the course of discovery, plaintiff has sought, among other things, undisclosed portions of the prosecutor's file pertaining to the criminal investigation, at least up to the time of his exoneration and the dismissal of the charges against him. (Aff. of Eric W. Siegle, Esq. ¶¶ 7-9, Oct. 9, 2007; Letter from Eric W. Siegle, Esq. to the Court (Oct. 30, 2007).) He has also sought disclosure of training materials utilized by the New York Police Department concerning techniques and procedures for interrogating suspects, arguing that they are pertinent to his claims against the detectives and his <u>Monell</u> claim against the City for inadequate training. (<u>See</u> Oct. 9 Siegle Aff. ¶¶ 6-10, 12-13); Oct. 30 Siegle letter; Letter from Eric W. Siegle, Esq. to the Court (Nov. 8, 2007).) Defendants belatedly invoked a claim of a law-enforcement privilege to block disclosure of these documents and, in response to court orders, have proffered a privilege log and affidavits to support their claims of privilege, together with a new motion for a protective order. (Decl. of Assistant Corp. Counsel John H. Graziadei & Exs. A-E, Oct. 31, 2007; Letter from Assistant Corp. Counsel John H. Graziadei to the Court at 1-4, 6-8 (Nov. 14, 2007); Letter from Assistant Corp. Counsel John H. Graziadei to the Court at 4-9 (Oct. 31, 2007).) They also seem to argue now that the documents, or at least some of them, are not relevant and that some

2

are protected from discovery by a state sealing statute. (Nov. 14 Graziadei letter at 4-6; Oct. 31 Graziadei letter at 3-4.) Finally, at the order of the court, defendants have submitted for in camera review 462 pages of documents withheld on the basis of a law-enforcement privilege. (Graziadei Decl. & Ex. D; Nov. 14 Graziadei letter; Letter from Assistant Corp. Counsel John H. Graziadei to the Court (Nov. 7, 2007) & annexed decls. of Graham Daw, Thomas G. Mason, Matthew Wagner & Michael Cassidy; Oct. 31 Graziadei letter.)

For various reasons, we grant plaintiff's application in part and deny defendants' motion for a protective order to preclude discovery.

<u>ANALYSIS</u>

Plaintiff seeks production of the investigatory documents based principally on his assertion that they are needed to establish his contention both that the defendants lacked probable cause when they arrested him and that they lacked a basis at any time to pursue his prosecution for murder. (Nov. 8 Siegle letter at 7-9.) As for the training materials, Zhao asserts that they are relevant to evaluating the defendant detectives' conduct in interrogating him and are necessary to support his <u>Monell</u> claim.

(Id. at 20.) In the face of the defendants' invocation of the law-enforcement privilege, plaintiff argues that the privilege log on which that claim is based is untimely and plainly inadequate. (Id. at 5-7.) He further suggests that defendants fail to establish the factual predicates on which the privilege claims are based. (Id.) As for the state sealing statute cited by defendants, plaintiff argues that it simply does not apply to the documents at issue and that in any event it does not govern discovery in this federal-question case. (Id. at 9-12.)

In support of defendants' protective-order motion, they insist that the homicide investigation is open, that disclosure of the requested investigatory documents would interfere with the investigation and put informants at risk, and that plaintiff has not shown a need for the documents. (Nov. 14 Graziadei letter at 1-6.)  As for the training materials, they argue that disclosure would prejudice the ability of the Police Department to interrogate suspects and witnesses and otherwise interfere with the performance of the Department's law-enforcement responsibilities. (Id. at 6-8.)

We first address the investigatory documents and then consider the training documents.

4

A. The Investigation File

Defendants' papers are less than clear in identifying what documents are being withheld (see Decl. of Thomas Conforti ¶¶ 4-14, Oct. 31, 2007), although the October 23, 2007 privilege log offers some indication. (Graziadei Decl. Ex. D.) As for the log itself, it is untimely since it was provided two weeks after the deadline in the October 2, 2007 order issued by Judge Kaplan.[1] Moreover, the log is deficient in that some of its entries are so general in their description of the documents as to leave us to speculate as to the substance of what is being concealed, while others indicate on their face an inappropriate invocation of the privilege. (See id. Ex. D at #79 ("Blank Polaroid").) Notwithstanding these deficiencies, we decline to reject the privilege claims on that basis alone, and look to both the substance of a set of affidavits proffered by Police Department officials in support of defendants' privilege claims and an in camera review of the withheld documents.

The rationale for the law-enforcement privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals

---

[1] The order required production of any privilege logs by October 8, 2007. The privilege log on which defendants rely is dated October 23, 2007.

5

involved with an investigation, and otherwise to prevent interference in an investigation." In re Dep't of Investigation of City of N.Y., 856 F.2d 481, 484 (2d Cir. 1988); see also Kitevski v. City of New York, 2006 WL 680527, at *2-3 (S.D.N.Y. Mar. 6, 2006). Like other related privileges, it offers only conditional protection and may be set aside on an adequate showing of need. See, e.g., Kunstler v. City of New York, 2005 WL 2656117, at *1 (S.D.N.Y. Oct. 18, 2005); Fountain v. City of New York, 2004 WL 941242, at *4 (S.D.N.Y. May 3, 2004) (stating that unlike the state secrets privilege, the "official information privilege . . . is not absolute") (citing Kelly v. City of San Jose, 114 F.R.D. 653, 668 (N.D. Cal. 1987)).

Our assessment of the defendants' privilege claims relies on the oft-cited criteria outlined by Judge Weinstein in King v. Conde, 121 F.R.D. 180, 189-91 (E.D.N.Y. 1988), for assertion and documentation of the grounds for such a privilege. See, e.g., Haus v. City of New York, 2005 WL 1705291, at *4 (S.D.N.Y. July 21, 2005); Fountain, 2004 WL 941242, at *3-4. Of particular pertinence, defendants "must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not rely simply on generalized reiterations of the policies underlying the privilege." Schiller v. City of New York, 2007 WL 136149, at *7 (S.D.N.Y. Jan.

19, 2007) (quoting <u>Kunstler</u>, 2005 WL 2656117, at *1); <u>see</u>, <u>e.g.</u>, <u>King</u>, 121 F.R.D. at 189.

The basic premise for defendants' effort to block production of the investigatory documents is that their disclosure will harm an "open and active" investigation into the 2001 homicide for which plaintiff was arrested in 2005. (Conforti Decl. ¶ 4.) In this respect, they suggest that witnesses and informants may be reluctant to cooperate if their identities are revealed, and that suspects will be alerted to the fact that they are under suspicion and may destroy evidence or attempt to retaliate against or intimidate witnesses. (<u>Id.</u> ¶¶ 5-6, 11.) They also express concern in general terms that disclosure of the documents "would deprive the NYPD of its tactical advantage in planning and executing future investigations as well as compromise the [current] ongoing investigation." (<u>Id.</u> ¶ 8.)

There are several difficulties with defendants' cited assertions. First, although defendants suggest, in entirely conclusory terms, that the homicide investigation is ongoing (<u>id.</u> ¶ 4),[2] the record suggests otherwise. Plaintiff, apparently relying

---

[2] Thomas Conforti states, "I understand that plaintiff seeks production of the entire open homicide file that has been developed during the investigation into the death of Danny Cabezas. However, the investigation remains open and active." (Conforti Decl. ¶ 4.) Mr. Conforti gives no further explanation,

on documents turned over to him by the prosecutors during the pendency of the criminal case against him, makes the point that the killing was at least partly recorded on a night club security video and that at some point during the investigation the police identified two men who appeared on the video as the stabber and his accomplice. (See Nov. 8 Siegle letter at 3.) The names of those two men were known at the time and one was even publicly disclosed, and hence the only aspect of the investigation that is still open is the challenge of locating these two individuals. (Id. at 3-4, 12-13 & Ex. 3.) Furthermore, as plaintiff notes, all of the so-called investigatory documents listed on the defendants' privilege log with a date in fact predate plaintiff's arrest in October 2005, thus indicating that the documents at issue do not relate to any ongoing Police Department activity attempting to locate the men allegedly involved. (See Graziadei Decl. Ex. D.) In addition, as defendants' own counsel noted at a pretrial conference, one of the two defendant police detectives, Det. Billy Milan, testified at his deposition on October 15, 2007 that until that moment he had believed that plaintiff was the stabber and that he was mystified as to why the District Attorney had asked for the dismissal of the charges against plaintiff. (Pretrial Conf. Tr. 27-28, Oct. 16, 2007; accord Milan Dep. 261-62, Oct. 15, 2007; see also id. at

---

but rather merely states, among other similar remarks, that disclosure of the documents would "compromise and interfere with the ongoing investigation". (Id.)

185.)[3]

Strikingly, although defendants proffer a declaration that refers to the investigation as being "open and active" (Conforti Decl. ¶ 4), they do not contradict or even address plaintiff's assertion suggesting that the investigation, while technically open because the identified perpetrators have not been located, is entirely quiescent. Moreover, we note that the investigation documents that we have reviewed in camera are entirely consistent with this conclusion, since they all appear to predate plaintiff's October 2005 arrest and reflect that the police were focusing on two individuals other than plaintiff.

Given the lack of specifics that defendants offer on this point and their failure to take issue with plaintiff's proffer about the state of the investigation, it appears that the investigation is not being actively pursued at this stage and that whatever might be done in the future -- apart from being quite speculative -- is likely to be limited to attempts to locate the two named suspects. This set of facts substantially weakens the

---

[3] At Det. Milan's deposition, he observed an enhanced video of an encounter between plaintiff and the victim, and for the first time concluded that -- contrary to his prior belief -- the segment did not show plaintiff stabbing the victim but rather indicated that plaintiff was not the stabber. (Milan Dep. 261-62.)

generic argument advanced by defendants that disclosure of
investigatory documents is likely to interfere with an ongoing
criminal investigation.

Moreover, defendants fail to offer any specific explanation as
to why the disclosure of the disputed investigatory documents to
plaintiff or his attorney will interfere with the investigation,
much less why such a theoretical danger cannot be addressed by
application of a protective order, including a provision for an
"attorney's eyes only" designation for any particularly sensitive
documents (if any exist).[4] Failure to offer such proof -- which is
not remedied by the documents we have reviewed[5] -- is fatal to
defendants' argument insofar as it is premised on the assertion
that disclosure would imperil an "open" investigation. See, e.g.,
Haus v. City of New York, 2004 WL 3019762, at *5 (S.D.N.Y. Dec. 29,
2004) (noting defendants' failure to address the effect that
disclosing the documents under the terms of a confidentiality order
might have on anticipated harm).

---

[4] The existing confidentiality stipulation provides for
designation of documents as confidential or "attorney's eyes
only," although it could be read as limiting the latter category
to information identifying witnesses. (Confidentiality
Stipulation & Order ¶¶ 8-9, Oct. 2, 2007.)

[5] For the most part, the documents appear to reflect efforts
by the police to obtain background and location information
concerning several suspects other than the plaintiff.

10

As for the substance of the defendants' concerns about disclosure of the identities of witnesses and suspects, that too seems implausible, if for no other reason because plaintiff was apparently supplied during the pendency of his criminal case with documents identifying such individuals. Indeed, a substantial portion of the deposition of Det. Milan was consumed with testimony identifying various witnesses interviewed by the police (see Milan Dep. 106-07, 111-12, 116-18, 122, 137-38, 141-42), as well as discussing individuals other than the plaintiff who were suspected of involvement in the killing. (E.g., id. at 146-48, 150-53, 158, 162-63).[6]

With regard to defendants' alternative assertion that disclosure of some of the documents could reveal the identity of confidential informants, we recognize the availability of an informant's privilege, e.g., In re United States, 565 F.2d 19, 22-23 (2d Cir. 1977); see also Ayala v. City of New York, 2004 WL 2914085, at *1 (S.D.N.Y. Dec. 16, 2004), which may be invoked whether or not there is a currently active investigation. See, e.g., United States v. Abuhamra, 389 F.3d 309, 324 (2d Cir. 2004)

---

[6] At one point in the deposition, Det. Milan referred to a suspect whom a witness had described under an apparent nickname. Although Milan initially seemed to think that the suspect was plaintiff, it turned out that the witness had referred to certain identifying characteristics of the suspect, including tattoos, for which Det. Milan never bothered to look when he confronted plaintiff. (Milan Dep. 147-48, 162-63.)

11

(remarking that disclosure may prevent use of informant in other investigations). That said, defendants do not satisfactorily explain why, if any informants have explicitly or implicitly been promised confidentiality, they may not be protected by the redaction of any documents containing identifying information. Furthermore, if defendants have a legitimate concern that even information that is not specifically of an identifying nature may be used by the plaintiff to piece together the identities of informants, that concern may be allayed by an "attorney's eyes only" designation -- an alternative that defendants simply fail to address.

In sum, the defendants fail to document with any specificity the factual basis for their invocation of the law-enforcement privilege, including particularly the nature and extent of the harms that would result from required production. They equally fail to address the alternatives available for dealing with the harms that they conclusorily invoke in support of their privilege claims.

We further note that the conditional nature of the law-enforcement privilege reinforces our conclusion that production is properly mandated here. It bears emphasis that plaintiff must demonstrate the absence of probable cause for his arrest, see, e.g., Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996), and for his

12

prosecution. See, e.g., Hartman v. Moore, 547 U.S. 250, 58 (2006). To do so it is essential that his attorney have access to the documents that would demonstrate the extent of the information available throughout the period in question, both to the police and to the prosecutor. Hence, his need for these documents is particularly acute, a circumstance that weighs heavily in the balance against the minimalist showing of the defendants in support of their privilege claim. See Haus, 2004 WL 3019762, at *5 n. 2.

Finally, we note that defendants' invocation of the provisions of the New York sealing statute, N.Y. Crim. Proc. L. § 160.50, is misguided because those provisions do not apply here. That statute requires sealing of "all official records and papers, including judgments and orders of a court . . relating to the arrest or prosecution" of an individual when the criminal proceeding has terminated in his favor. This does not afford defendants a means of objecting to the production of the documents at issue in this case.

The documents currently in question involve police investigatory materials that relate almost exclusively to suspects other than the plaintiff. In addition, the sealing statute is unavailable to defendants because it is intended to protect the exonerated defendant, in this case the plaintiff, who is in fact seeking the documents. Indeed, by filing suit plaintiff waives the

protection of the sealing provision. <u>See</u>, <u>e.g.</u>, <u>Green v. Montgomery</u>, 219 F.3d 52, 57 (2d Cir. 2000) (citing <u>Kalogris v. Roberts</u>, 185 A.D.2d 335, 336, 586 N.Y.S.2d 806, 807 (2d Dept. 1992)).

Moreover, state law does not govern privilege and other discovery issues in federal-question litigation, as here, although the federal court may properly give state policies embodied in statute or caselaw some weight. In this context, the federal courts have, with some consistency, rejected attempts to invoke section 160.50 as a means to block discovery in section 1983 litigation. <u>See</u>, <u>e.g.</u>, <u>Haus v. City of New York</u>, 2006 WL 3375395, at *2 (S.D.N.Y. Nov. 17, 2006) (citing cases).

In sum, for the reasons noted, defendants fail to demonstrate any compelling reason to deny plaintiff or his attorney access to these materials for the limited purpose of litigating plaintiff's case against the defendants. Accordingly, defendants will be required to produce to plaintiff's counsel the so-called investigatory documents previously withheld on the ground of the law-enforcement privilege, but may redact the names of, and other identifying data regarding, confidential informants whose identities have not previously been revealed to plaintiff or his counsel by the prosecutors or the defendants. Defendants may also

14

designate appropriate documents from this universe as confidential under the terms of the governing protective order or "attorney's eyes only." Production is to be completed by no later than December 10, 2007.

B. The Training Materials

Plaintiff also seeks production of certain police training materials that address the interrogation of witnesses and suspects. Again, defendants invoke the law-enforcement privilege.

The thrust of defendants' argument is that the materials in question contain guidance as to tactics for obtaining useful information from both witnesses and suspects. According to defendants, if such individuals learn the details of those tactics, they may be able to avoid providing candid and useful information when questioned by the police. (Oct. 31 Wagner Decl. ¶¶ 4-8; Decl. of Michael Cassidy ¶¶ 4-8, Oct. 31, 2007.)

There are several problems with this argument. First, defendants fail to demonstrate that the materials at issue and their contents are kept confidential. It appears that they are used in training sessions required of some unspecified universe of Police Department personnel. (Oct. 31 Cassidy Decl. ¶ 2; Oct. 31

15

Wagner Decl. ¶ 2.) Defendants do not indicate, however, that the trainees or others given access to these materials are instructed not to disclose the contents of these training sessions or materials to anyone. Indeed, in defendants' initial submission they made no reference at all to confidentiality (see Oct. 31 Wagner & Cassidy Decls.), leading the court to direct them to file supplemental papers addressing the question of confidentiality. (Pretrial Conf. Tr. 26-28, Nov. 1, 2007.) Even in their supplemental papers, however, defendants offer no evidence that would suggest that the Department specifically instructed the pertinent police personnel not to reveal the contents of these documents or of the courses in question. All that their affiants say is that the materials are "confidential" and that all police officers and other personnel are under a standing order not to discuss "official Department business" with others. (Decl. of Matthew Wagner ¶ 8, Nov. 7, 2007; Decl. of Michael Cassidy ¶ 8, Nov. 7, 2007.)

Even putting to one side this deficiency in defendants' showing, we conclude that they have failed to justify withholding the materials in question from the plaintiff's attorney. As noted, to sustain the law-enforcement privilege a party must make a fairly specific showing of anticipated harm from disclosure and cannot rest on conclusory reiteration of the policies underlying the

privilege. In this instance, defendants' affiants do nothing more than assert in conclusory terms that disclosure in this case could lead to the frustration of police efforts in other circumstances to elicit truthful responses during the course of interrogations. (Nov. 7 Wagner Decl. ¶¶ 6-7; Nov. 7 Cassidy Decl. ¶¶ 6-7.)

These assertions fail for at least four reasons. First, they are totally unspecific and hence useless to the court in assessing the validity of the defendants' claims that disclosure would potentially result in serious damage to the Police Department's law-enforcement obligations. Second, based on an *in camera* review of the materials at issue (NYCP ## 414-62), we find that it is highly implausible that even their public disclosure could be viewed as likely to cause any meaningful interference with the law-enforcement capabilities of the Police Department. The advice imparted in these documents is pitched at such a level of generality, and the techniques in question are so self-evident, that they simply do not disclose tactics of which a potential witness or criminal suspect is unlikely to have thought. It follows that the disclosure of these materials can scarcely be assumed to advantage such people in future efforts at evasion.[7] Third, as

---

[7] The only specific and non-obvious tactic has nothing to do with encouraging a witness or suspect to be truthful but rather is designed to avoid later claims by a defendant that the police fabricated a witness statement. *See* NYCP # 419. Hence, there is no reason to believe that disclosure will affect the ability of

noted, the defendants fail to demonstrate that the instructional materials that are in fact confidential. Indeed, this failing is underscored not only by the absence of any markings on the documents warning the possessor of the need to keep the contents private, but still more by the fact that the contents include, inter alia, copies of publicly available published articles. (E.g., NYCP # 426-37.)[8] Fourth, even if we assume -- contrary to all appearances -- that some of the documents contain sensitive information, defendants completely ignore the potential curative effect of a confidentiality order. There is no reason to believe that if sensitive portions of these documents were produced on an "attorney's eyes only" basis, they would be disclosed to potential suspects or to crime witnesses with an interest in avoiding truthful disclosure to the police. See, e.g., Haus, 2004 WL 3019762, at *5.

In sum, defendants do not justify withholding these materials from discovery. They are to produce them to plaintiff's counsel by no later than December 10, 2007. This directive is without prejudice to defendants' invocation of the governing confidentiality order to designate portions of the documents as

the police to obtain truthful statements.

[8] Apart from newspaper articles, we note that back issues of the FBI Law Enforcement Bulletin, from which one item is derived, are available at http://www.fbi.gov/publications/leb/leb.htm.

18

confidential or their ability to designate documents or portions of documents as "attorney's eyes only" if that is justified under the circumstances.

C. Other Matters

In plaintiff's submission, he refers to defendants' production of documents in redacted form even though those documents are not listed on any privilege log. Defendants fail to respond to this issue in either version of their reply papers.

Given the fact that defendants have had two opportunities to provide privilege logs and have also been on notice from plaintiff's papers that he contested the unexplained redactions, they are directed to provide to plaintiff in unredacted form all documents heretofore produced in redacted format unless the redactions were previously listed on a privilege log. Moreover, if defendants have withheld any documents called for by plaintiff but have not listed them on a privilege log, they are to produce them to plaintiff's counsel by December 10, 2007.[9]

---

[9] We note that on November 30, 2007, defendants' counsel requested and received a court order to enforce a subpoena directed to the Office of the Queens County District Attorney. We are mystified about the timing of counsel's apparent effort to obtain plainly relevant documents from the prosecutor's office, but warn defendants that any such documents that are responsive to plaintiff's prior Rule 34 document requests must be turned

19

CONCLUSION

For the reasons noted, plaintiff's application to compel production of documents is granted to the extent noted, and defendants' motion for a protective order is denied.


Dated: New York, New York
       December 4, 2007

_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE



Copies of the foregoing Memorandum and Order have been mailed today to:

Eric W. Siegle, Esq.
Siegle & Sims L.L.P.
The Astor Building
217 Broadway
Suite 611
New York, New York 10007

John H. Graziadei, Esq.
Assistant Corporation Counsel
 for the City of New York
100 Church Street
New York, New York 10007

_____

over to plaintiff's counsel forthwith.

20



### THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

MICHAEL A. CARDOZO
*Corporation Counsel*

JOHN H. GRAZIADEI
*Senior Counsel*
Telephone: (212) 442-3551
Facsimile: (212) 788-9776

December 10, 2007



**VIA FACSIMILE**
Honorable Michael H. Dolinger
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Zhao v. City of New York, et al.*, 07 CV 3636 (LAK) (MHD)

Your Honor:

Pursuant to Your Honor's Order entered on December 5, 2007, defendants are required to produce documents that were the subject of the Order by December 10, 2007. Defendants respectfully request a stay of discovery from so much of that Order that requires defendants to produce the documents by December 10, 2007 so that defendants may move for either reconsideration of Your Honor's Order pursuant to Local Civil Rule 6.3 or serve and file objections to the Order pursuant to Fed. R. Civ. P. 72(a). Thank you for Your Honor's consideration of this request.

Respectfully submitted,

John H. Graziadei (JG 1333)
Senior Counsel

cc:    Jonathan Sims, Esq.
       Eric Siegle, Esq.

*ENDORSED ORDER*

The deadline to comply with our December 4, 2007 memorandum and order is extended to December 14, 2007 to permit defendants to move for reconsideration or file objections. If they do so by that date, the memorandum and order will be stayed pending resolution of any such application.

12/11/07



THE CITY OF NEW YORK

# LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NY 10007

**MICHAEL A. CARDOZO**
*Corporation Counsel*

JOHN H. GRAZIADEI
*Senior Counsel*
Telephone: (212) 442-3551
Facsimile: (212) 788-9776

December 14, 2007

*ENDORSED ORDER*

Application denied insofar as it seeks
an extension of the stay [granted on
Dec. 10, 2007, ] not Dec. 14, 2007 as counsel
claims]. If defendants intend to produce
the documents subject to an attorney's eyes
only" provision [as granted in the Dec. 4,
2007 order], they are to be so, and that
production will -- for present purposes and subject to
litigation if the parties disagree -- be limited
disclosure to the attorneys. If defendants intend
produce the documents as ordered, they may
file objections but, the stay will not be
enlarged. If defendants

**VIA FACSIMILE**
Honorable Michael H. Dolinger
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Zhao v. City of New York, et al.,* 07 CV 3636 (LAK) (MHD)

Your Honor:

MHD
12/14/07

     Pursuant to Your Honor's Order entered on December 5, 2007 ("Order"), defendants
were required to produce documents that were the subject of the Order by December 10, 2007.
On December 14, Your Honor granted defendants a stay of discovery from so much of that
Order that requires defendants to produce the documents by December 10, 2007 until December
14, 2007 so that defendants may either move for reconsideration of Your Honor's Order pursuant
to Local Civil Rule 6.3 or serve and file objections to the Order pursuant to Fed. R. Civ. P. 72(a).
For the reasons set forth herein, defendants respectfully request that the stay be enlarged until
December 19, 2007, the time permitted under Local Civil Rule 6.4 and Fed. R. Civ. P. 6, so that
defendants will not be required to produce the documents before serving and filing their motion.

     Pursuant to the Order, defendants may produce the documents submitted to Your Honor
for *in camera* review subject to their designation as "confidential under the terms of the
governing protective order or 'attorney's eyes only.'" From the Court's Order, it isn't clear
whether the provision that the documents may be designated as for "attorney's eyes only" applies
to the terms set forth in the governing stipulation and protective order, which permits plaintiff to
share the information with agents, including but not limited to experts and investigators, "for the
purpose of communication with witnesses or the service of subpoenas," or whether disclosure
would, in fact, be limited to plaintiff's attorneys. Although defendants are prepared to make the

production pursuant to the Court's Order, the information must be produced pursuant to an "attorney's eyes only" provision that provides that plaintiff shall not disclose the information to anyone, including, but not limited to, plaintiff, investigators, and/or experts. In an effort to avoid further applications and litigation on this issue, defendants conferred with plaintiff to determine whether this may be resolved by agreement by the parties. Plaintiff's position, however, is that the information may be disclosed to experts and investigators for the purpose of communication with witnesses and the service of subpoenas. Although plaintiff proposed that he would limit his disclosure to the information contained in the documents, and not the documents themselves, defendants maintain that this disclosure would present the same dangers. Producing the documents subject to the existing protective order would interfere with an open and active investigation insofar as plaintiffs would be permitted under the protective order to contact the witnesses and alert them to the status of the investigation.

Accordingly, defendants respectfully request that that the stay be enlarged until December 19, 2007, the time permitted under Local Civil Rule 6.4 and Fed. R. Civ. P. 6, so that defendants will not be required to produce the documents before serving and filing their motion.

Respectfully submitted,

John H. Graziadei (JG 1333)
Senior Counsel

cc:    Eric Siegle, Esq.
       Jonathan Sims, Esq.

# EXHIBIT 2

## SIEGLE & SIMS L.L.P.

*THE ASTOR BUILDING*

217 BROADWAY • SUITE 611

NEW YORK, NEW YORK 10007

TELEPHONE: (212) 406-0110

FACSIMILE: (212) 406-5259

JONATHAN D. SIMS

ERIC W. SIEGLE

November 8, 2007

**VIA HAND DELIVERY**

United States District Court

Southern District of New York

500 Pearl Street, Room 1310

New York, New York 10007

Attn.: Michael H. Dolinger, U.S.M.J.

      Re:   <u>Zhao v. City of New York et al.</u>

            07-CV-3636 (LAK)(MHD)

Dear Honorable Judge Dolinger:

We are writing in opposition to defendants' motion for a protective order of certain materials they maintain are non-discoverable, including police reports relative to the investigation of the underlying murder (hereinafter "POLICE REPORTS"), personnel and disciplinary records of defendant detectives (hereinafter "DISCIPLINARY RECORDS"), and training materials employed by the defendant City relating to the investigations of murder cases, cold cases, interrogation techniques, identification procedures and assessment of probable cause, including, but not limited to the Homicide Investigation Course ("H.I.C.") and Criminal Investigation Course ("C.I.C.") manuals (hereinafter "TRAINING MATERIALS").[1]

---

[1] It is important to note that while these items are partially responsive to some of plaintiff's discovery requests, plaintiff's actual requests are much broader than the limited materials now proffered by defendants and detailed in the privilege log. In defendants' responses to plaintiff's first and second set of interrogatories and request for production of documents, defendants did not disclose materials and instead asserted a privilege as to the majority of items sought. Therefore, plaintiff expected these materials to be included in the privilege log. Upon receipt of the revised privilege log dated October 31, 2007, plaintiff observed that these items were omitted. Rather than list the full panoply of items sought by plaintiff, attached hereto as Exhibit 1 are copies of plaintiff's first and second interrogatories and requests for production of documents on defendants, which seek numerous other documents which defendant asserted a privilege for, and yet, failed to include in the log. Specifically, plaintiff respectfully refers the Court to the following: First Set of Interrogatories 2 g, h, I, j, k, l, m, and n; First Set of Document Requests 1, 2, 3, 4, 5, 6, and 9; Second Set of Document Requests 18, 19, and 20. With respect to the Second Set of Requests, defendants have failed to provide a copy of the complete, un-redacted Detective Guide in effect on October 25, 2005, as sought in Request 19,

Defendants have refused to provide these materials to plaintiff because they claim (1) the POLICE REPORTS are not relevant; are sealed pursuant to New York State C.P.L §160.50; and are protected from disclosure due to the law enforcement privilege; (2) that the TRAINING MATERIALS are protected from disclosure due to the law enforcement privilege; and (3) that the DISCIPLINARY RECORDS are not relevant. Defendants are wrong on all accounts.

## UNDERLYING FACTS

On or about December 11, 2001, plaintiff Yang Feng Zhao was a patron of the Golden Box Karaoke club, located at 40-52 Main Street, Flushing, New York. Danny Cabezas was employed by and worked at the club as a bouncer/doorman. At approximately 2:10 a.m., Danny Cabezas was stabbed to death by a third person in the area of the second floor doorway entrance/exit area of the club. Analysis of video evidence, in conjunction with eyewitness statements, reveals that at the time of the stabbing, plaintiff was in another part of the club and could not have committed the murder. After being stabbed, Danny Cabezas stood against a wall, clutched his chest, and then walked/stumbled to the main hallway of the club, where he collapsed and fell to the floor at approximately the same time as Zhao walked passed him heading toward the exit of the club.

Shortly after the stabbing, numerous members of the New York City Police Department ("NYPD") arrived at the Golden Box Karaoke Club and began an investigation into the assault/murder of Danny Cabezas.[2] As part of its investigation, on or about December 11, 2001, four witnesses to the stabbing or the events surrounding the stabbing were interviewed by members of the NYPD, including two managers and two waitresses from the location. From the police reports detailing those interviews (hereinafter "DD5s"), it is clear that:

1) the stabbing occurred in the second floor doorway entrance/exit area of the Karaoke club;

2) Mr. Cabezas was stabbed in the chest;

3) after he was stabbed, Mr. Cabezas walked away from the doorway entrance/exit area, while bleeding and holding his chest; and

4) Mr. Cabezas fell down slowly in front of room #9 (which is around the

---

and have provided a few pages that were redacted without explanation. *See* Ex. 6. Plaintiff requests an Order compelling production of the complete Detective Guide as well as responses to plaintiff's other discovery requests which have been ignored.

[2] At the time that the first police officers arrived at the scene, Mr. Cabezas was still alive and therefore the matter was initially deemed an assault. Mr. Cabezas died hours after the stabbing.

corner from the entrance/exit, in an adjacent hallway).

During the course of their immediate investigation, the NYPD was provided with four V.H.S. video cassette tapes depicting the club on the night of the incident and the events surrounding the stabbing, including portions of the stabbing itself. The information obtained by the NYPD from the four witnesses taken shortly after the stabbing is corroborated by the content of the four surveillance videotapes.

No arrests were made immediately after the incident. The NYPD conducted an investigation in an effort to identify and arrest the perpetrator. As part of their investigation, immediately after the incident, the NYPD identified plaintiff as a witness and another person, Guang Lin, as a suspect. Shortly thereafter, Detective Vincenzo Romano, with permission obtained from the appropriate authorities within the NYPD, went to the Sing Tao Newspaper, a daily newspaper serving the Chinese community in New York, seeking information from the community regarding the stabbing. Sing Tao published a still photograph created by the NYPD-TARU from one of the security videos which depicts numerous potential witnesses and suspects. Sing Tao also published individual photographs of Guang Lin and plaintiff and identified both people by name underneath their photographs. In the article Detective Romano was quoted as identifying Guang Jin Lin as the person who kicked the security guard and identified plaintiff by name as a witness. *See* Exhibit 1, copy of attached article.

As part of their investigation, prior to any arrest, the NYPD received credible information, from at least one known informant, that an individual known as "Tae Bao," stabbed Cabezas. "Tae Bao" was described as the shortest person, with long hair and a tattoo on his arm. Examination of the surveillance videos reveals that a person with long hair and a tattoo on his arm, and short in stature, engaged in a fight with Cabezas minutes before the stabbing. Further, the video shows Guang Lin, who is clearly an associate of "Tae Bao," also engaged in the fight with Cabezas. Further, after the fight is broken up, "Tae Bao" visibly motions in a threatening manner towards Cabezas. Minutes later, the surveillance video captures what appears to be Guang Lin passing an object to "Tae Bao." "Tae Bao" is then observed opening what appears to be a knife, and thrusting it the direction of the location where witnesses state Cabezas was located when he was stabbed (Cabezas is not visible on the tape). Thereafter, "Tae Bao" is observed putting his hands together in a motion consistent with closing a knife, grabbing Guang Lin by the shoulder, and running out of the location. Further, when "Tae Bao" runs out of the location, the video depicts that he is barefoot and without his jacket; items the video shows "Tae Bao" was wearing when he entered the Golden Box. Shortly thereafter, an unidentified female patron is observed carrying a pair of shoes and jacket out of the location.

Despite possessing the information which conclusively established that "Tae Bao" and Guang Lin had committed Cabezas' murder, defendant Milan, without having visited the crime scene or talking to a single eyewitness, in full ignorance of all of the evidence possessed by the

-3-

NYPD, authorized plaintiff's arrest.[3]

On or about October 25, 2005, after hours of being threatened, assaulted and battered, and after having repeatedly denied stabbing Danny Cabezas, defendant Ng forced plaintiff to sign a handwritten confession that was crafted, authored and written by defendant Ng, despite the fact that Ng knew plaintiff did not admit stabbing Danny Cabezas. Defendant Ng testified at his deposition that he interrogated plaintiff for several hours and then went to defendant Milan, the case detective, and advised him that plaintiff was maintaining his innocence. Defendant Milan, who himself testified that he believed that plaintiff would not be charged with the crime of murder absent a confession, then told defendant Ng to continue the interrogation to get plaintiff to confess.

On October 25, 2005, a complaint was signed by defendant Milan and filed in the Criminal Court of the City of New York, Queens County, charging plaintiff with Murder in the Second Degree. The sole allegation in defendant Milan's sworn complaint is that he was informed by defendant Ng that plaintiff admitted stabbing Danny Cabezas thereby causing his death. Plaintiff was arraigned on this complaint and, as a result, was remanded to the custody of the New York City Department of Corrections.

Thereafter, on November 16, 2005, defendant Ng testified before a grand jury in Queens County, stating in sum and substance, that plaintiff admitted he stabbed and killed Danny Cabezas despite the fact that he knew plaintiff never made this admission. As a result, the grand jury of the County of Queens voted an indictment charging plaintiff with two counts of Murder in the Second Degree and one count of Criminal Possession of a Weapon in the Fourth Degree which was filed in the Supreme Court of the State of New York, Queens County. Plaintiff was incarcerated from October 24, 2005, until September 22, 2006, when, after conducting a thorough investigation independent of defendants, the District Attorney for the County of Queens, upon their own motion, moved the court to release plaintiff on his own recognizance.

On December 18, 2006, the indictment charging plaintiff with Murder in the Second Degree and other charges was dismissed with prejudice upon the motion of the District Attorney

---

[3]Milan's theory was that plaintiff stabbed Cabezas in the hallway and Cabezas fell immediately to the ground. As pointed out above, four eyewitnesses placed the stabbing in another area of the club, and observed Cabezas walking and holding his chest while bleeding before falling slowly to the ground in the hallway in front of room number 9. As Milan testified at his deposition, his sole basis to arrest plaintiff was a portion of the videotape, which showed the reaction of waitresses who saw Cabezas as he fell while plaintiff walked past him. Milan's theory was completely unsupported by the extensive evidence in the possession of the NYPD at the time of plaintiff's arrest. Further, the re-sizing of the image contained on the video tape definitively shows that Cabezas had been stabbed prior to encountering plaintiff, as admitted by Milan at his deposition. The police department made no effort to re-size the image, and plaintiff alleges said technology was readily available for that purpose prior to plaintiff's arrest.

-4-

for the County of Queens, who stated through A.D.A. Eugene Reibstein, "the position of the People is this is not the man who committed the murder. And we are moving to dismiss the count against him, so we can go get the real guy."[4]

Plaintiff was incarcerated for a total of 334 days, during which time he was sexually abused on a number of occasions by another inmate.

<u>INSTANT LITIGATION</u>

As a result of the foregoing, plaintiff commenced suit against defendants alleging numerous violations of his federal and state constitutional rights, including those protected and made actionable pursuant to 42 U.S.C. §1983, among other claims. This action was commenced by plaintiff by the service of a summons and complaint on defendant City on or about May 8, 2007, on defendant Billy Milan on June 27, 2007, and on defendant Nga Cheung Ng on July 2, 2007. The Defendants joined this action by service of Answers; the CITY on July 2, 2007, and defendants Milan and Ng on July 31, 2007.

Thereafter, discovery has gone forward, albeit slowly, due to the previously well-documented, dilatory tactics employed by defendants herein. In fact, defendants still refuse to disclose discovery materials including POLICE REPORTS, DISCIPLINARY RECORDS and TRAINING MATERIALS by asserting the law enforcement privilege and claiming lack of relevance, despite the fact that approximately two to three weeks of delay was occasioned by the negotiation of defendants' proposed comprehensive Confidentiality Stipulation between the parties, which was executed by plaintiff's on September 17, 2007, which governs disclosure of most of the very documents defendants seek to remain undiscoverable. *See* Exhibit 3, copy of Confidentiality Stipulation.

Additionally, with regard to the instant motion, as noted in footnote 10, defendants continue to flout this Court's orders relative to discovery. As detailed hereafter, defendants were to provide a detailed list of complaints/investigations involving discipline issues or allegations of misconduct against the two defendant detectives, so plaintiff could make necessary arguments herein, and defendants, without any basis, **ignored** this order.

Similarly, defendants have unilaterally, without any legal basis, refused to comply with Local Rule 26.2, regarding assertion of privilege as to discovery materials and the rules regarding employment of a "privilege log." Local Rule 26.2(a)(2)(a), requires a party asserting a privilege as an excuse for withholding otherwise discoverable discovery materials to identify the type of document; the general subject matter of the document; the date of the document; and such other information as is sufficient to identify the document for a subpoena duces tecum. Despite being given a second bite of the proverbial apple by this Court to correct and submit a proper log,

---

[4]It should be noted that the District Attorney did not possess a copy of the re-sized video image prior to dismissing the indictment.

defendants have failed to do so and their application for a protective order should be summarily denied.

The log is improper because it employs basically the same language verbatim for just about every entry therein; including blindly asserting New York State C.P.L. §160.50 to items clearly not covered by that statute (*see* discussion *infra*. of applicability of C.P.L. §160.50), claiming for almost every entry the following: "Disclosure of name will disclose the privileged information," which, without explanation, is unintelligible. The log further fails to provide dates, the author, receiver or source of many of the materials. Moreover, the log fails to make a specific showing as to the applicability of the privilege as it relates to each document. The purpose of a privilege log is to provide the demanding party with enough information to argue against the existence and/or application of the privilege. Defendants' log is insufficient in this regard.

Moreover, it is apparent from the following entry that was inadvertently left in the privilege log, that defendants themselves are unsure as to whether they even have a legal basis to assert the privilege. The entry, page 8 of the privilege log, item NYCP 81, states as follows: "**Handwritten Note. Disclosure of any additional information will disclose the privileged information?? (can we say this ??).**" This window into the thought process of defendants' counsel in preparing this entry calls into question the validity of the assertion of the privilege as to each documents listed in the privilege log. As the privilege log is defective, we respectfully request the Court summarily deny defendants application.

Similarly, as the Court noted during the November 1, 2007 conference, defendants application is glaringly absent of sworn allegations detailing efforts taken by the NYPD to ensure confidentiality of their own training materials. Last night, via facsimile, on the eve of the date in which our submission was due, defendants have proffered four boilerplate affidavits in an effort to remedy an obvious shortcoming of their motion.

Two affidavits, from Mathew Wagner and Michael Cassidy, are re-submissions of earlier affidavits, which completely mimic each other, word for word, and repeat verbatim, the two previously submitted affidavits, except for two sentences added to paragraph 8 thereof, which state the NYPD keeps this information confidential and point to the NYPD Patrol Guide which states Prohibited Conduct is "Divulging or discussing official Department business, except as authorized." Defendants believe this a sufficient showing to maintain that both the H.I.C. and C.I.C. manuals are confidential. Such conclusory allegations do not carry the day. Defendants fail to detail any specifics steps/actions taken by the NYPD to ensure confidentiality and to protect this information from public dissemination. Rather, they point to some obscure, inapplicable general guideline in the NYPD Patrol Guide that states, in essence, all police business can't be discussed. Defendants position with regard to their efforts to maintain confidentiality of these requested materials is without any merit, and their application to protect these materials from disclosure must be denied.

Similarly, in the eleventh hour, defendants have submitted affidavits from members of the

-6-

CCRB and IAB, which state in substance, their respective offices operate independently from the NYPD and therefore, confidentiality, as to their investigations, is necessary. They both point to the fact that they are governed by New York State Civil Rights Law §50-a, which deem their work confidential as part of police personnel records and therefore disclosure should not be had. Both affidavits are absolutely silent as to the specific documents involving complaints made against and investigations of defendant Detectives Milan and Ng herein, and how disclosure to plaintiff's counsel, in light of the Confidentiality Stipulation entered into between the parties, is going to chill their future ability to operate. In fact, we submit that these affidavits don't state or suggest that, because such a position is untenable. In sum, the boilerplate affidavits of Graham Daw and Thomas Mason are of no probative value to defendants motion.

As such we believe defendants motion should be summarily denied and the defendants immediately ordered to disclose all the materials detailed herein to plaintiff.

## POLICE REPORTS

Defendants' claim POLICE REPORTS should not be turned over to plaintiff because: 1) they are not relevant to plaintiff's claim; (2) a majority of the documents are sealed pursuant to New York State C.P.L. §160.50; and (3) the law enforcement privilege protects them from disclosure. Defendants are wrong.

## RELEVANCY OF POLICE REPORTS

The POLICE REPORTS requested by plaintiff are relevant to plaintiff's claims and their disclosure is reasonably calculated to lead to the discovery of admissible evidence. Defendants characterization of these materials as otherwise is inane. Defendants argue that plaintiff's claims are based "entirely on defendants' investigation of the stabbing itself, their analysis of the video surveillance tapes, and the questioning of plaintiff that resulted in his signed confession statement." *See* Graziadei letter, dated October 31, 2007, page 3. Defendants attempt to mislead this Court by mischaracterizing plaintiff's claims, and what they believe to be the evidence necessary in support thereof.

As detailed in plaintiff's complaint, one of plaintiff's causes of action herein is grounded on the theory of false arrest, pursuant to 42 U.S.C. §1983. As such Plaintiff is obligated to prove that the defendants intended to confine plaintiff; plaintiff was conscious of the confinement; plaintiff did not consent to the confinement; and that the confinement was not otherwise privileged, meaning there was no probable cause. Plaintiff also alleges a similar pendent state claim, which mirrors the federal cause of action.

Additionally, plaintiff's complaint alleges a cause of action for malicious prosecution pursuant to 42 U.S.C. §1983 and the analogous pendent state claim. Therefore, plaintiff must prove defendants commenced or continued a criminal prosecution against him; the prosecution ended in plaintiff's favor; there was no probable cause for the proceeding; defendants acted with

-7-

actual malice; and plaintiff suffered a deprivation of liberty under the Fourth Amendment.

Probable cause or the lack thereof, is a critical element of each of these claims. Probable cause to arrest exists when authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. *See Smith v. Edwards*, 175 F.3d 99 (2d Cir. 1999) and *Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991). The failure to make an inquiry when a reasonable person would have done so may be evidence of a lack of probable cause. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d. Cir. 1996) and *Bullard v. City of New York*, 2003 WL 168444 (S.D.N.Y. Jan. 20, 2003). The test for whether probable cause exists is objective, and involves an analysis of the totality of evidence known at the time of the arrest, and therefore an officer's subjective belief at the time of arrest is irrelevant. *See Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003) *Martinez v. Simonetti*, 202 F.3d 625, 633 (2d Cir. 2000); *Smith v. Edwards*, 175 F.3d 99, 106 (2d Cir. 1999); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d. Cir. 1996).

Accordingly, in assessing probable cause to arrest plaintiff on October 24, 2005, all documents and records possessed by defendants prior to that date relating to the investigation of other suspects to the murder of Danny Cabezas are relevant in determining whether probable cause existed to arrest plaintiff. Any materials relating to other suspects are particularly germane to this inquiry and as such, plaintiff's requests for these materials are reasonably calculated to lead to the discovery of admissible evidence. Additionally, evidence that the NYPD possessed information regarding others suspected of the murder of Danny Cabezas at any time before his murder prosecution was dismissed on December 18, 2006, may be relevant to the issue of the maliciousness of the prosecution of plaintiff and therefore, plaintiff's discovery demands for the entire investigatory file of the NYPD relating to the murder and subsequent investigation is reasonably calculated to lead to the discovery of admissible evidence.

Contrary to defendants' position herein, relevancy of police investigatory materials related to other suspects which pre-date a person's arrest (probable cause) and, subsequently, their release from custody (malicious prosecution) has been specifically addressed by the Federal Courts and is discussed in a case defendants erroneously cite in support of the law enforcement privilege. In *Myrhe v. Ditzler*, 2006 U.S. Dist. LEXIS 6452 (N.Dist. Ill. Feb. 21, 2006), the court ordered defendant Sheriff's Department to produce all documents "that mention or refer to events that occurred from the murder to Plaintiffs' release from custody [for that murder]" as they are so obviously relevant and, therefore, such request is reasonably calculated to lead to the discovery of admissible evidence. Thus, although cited by defendants, *Myrhe* completely supports plaintiff's position herein.

In the case at bar, <u>every **single**</u> document detailed in defendants' privilege log, where the date is known, pre-dates October 24, 2005, the date plaintiff was falsely arrested and imprisoned

-8-

for the murder of Danny Cabezas.[5]  Additionally, all documents in which the date is listed as "unknown," are grouped with other documents which make it clear that they pre-date plaintiff's arrest and prosecution. Therefore, all of the POLICE REPORTS listed in the privilege log are relevant and the plaintiff's requests for disclosure thereof is reasonably calculated to lead to the discovery of admissible evidence.

## POLICE REPORTS AND N.Y.S. C.P.L. §160.50

Defendants claim that the vast majority of documents plaintiff seeks are "sealed" pursuant to New York State Criminal Procedure Law §160.50, and thus, not discoverable by plaintiff.[6] Defendants are wrong. First, defendants have made absolutely no showing that the records they claim are sealed pursuant to C.P.L. §160.50, are in fact sealed. Second, even if said records, or portions thereof were sealed, plaintiff is still entitled to discovery thereof.

Defendants, citing, C.P.L. §160.50, assert that the majority of documents set forth in the privilege log are sealed. C.P.L. §160.50, however, only applies to "official records and papers, including judgments and orders of a court . . . relating to the arrest and prosecution" of individuals who have had a criminal action terminated in their favor. Nowhere in defendants' papers or privilege log have defendants made any showing that any of the documents they claim are protected by C.P.L. §160.50 are, in fact, "official records and papers relating to the arrest and prosecution of individuals." Further, defendants have made absolutely no showing that these records relate to criminal actions that were <u>terminated in the favor</u> of these individuals, other than the bald conclusion of counsel Graziadei on page 4 of his letter dated October 31, 2007.

Although defendants' privilege log is intentionally bereft of details, a sampling of the privilege log demonstrates that defendants' improperly assert C.P.L. §160.50 as offering protection from disclosure. For example, on page two of the privilege log, with regard to Bates number NYCP 16, defendants' claim C.P.L. §160.50 protection as to "Det. Romano's DD5 relating to a conversation he had with Lt. Lau about possible whereabouts of individual other than plaintiff." This document, dated January 15, 2002, almost three years before plaintiff's arrest, based upon discovery to date, relates to Det. Romano's efforts to locate the possible

---

[5] In fact, the date of the last document chronologically listed on the privilege log is plaintiff's arrest date. If defendants' claim that there is an open homicide investigation has any merit (discussed *infra*.), additional documents should exist which post-date plaintiff's arrest and prosecution. If said documents do exist, then defendants have improperly failed to include them in their privilege log. Moreover, if those documents exist and they pre-date plaintiff's release from custody, then there is little doubt that plaintiff is entitled to them. If those documents do not exist, such is evidence that the homicide investigation herein has never been re-opened, and defendants' claim of an open homicide investigation is a *red herring*.

[6] In fact, defendants' claim that documents are not discoverable based on C.P.L. §160.50 for virtually every entry in the first 23 pages of the privilege log.

perpetrator of the murder of Danny Cabezas. As such, this document is not an "official document" relating to the arrest and prosecution of an individual, rather it is report about a person sought by Det. Romano as the perpetrator of this murder. As that person was not arrested and prosecuted for the murder of Danny Cabezas and the matter, obviously, not terminated in that person's favor, the document is not covered by C.P.L. §160.50.

Similarly, defendants' claim C.P.L. §160.50 protection as to Bates number NYCP 20 on page three of the privilege log with regard to "Det. Casazza's DD5 relating to conversation had with officials of a government agency regarding individual other than plaintiff." This document is dated April 8, 2003, years before plaintiff's arrest, and upon information and belief, relates to efforts made by the New York City Police Department ("NYPD") to locate either the possible perpetrator of the murder or a witness thereto. As such, C.P.L. §160.50 is inapplicable and does not provide a basis for withholding said record.

While it is impossible to discern the nature of many of the documents from defendants descriptions in the privilege log, a review of a sample of said entries makes clear that defendants' claim of protection pursuant to C.P.L. §160.50 is highly suspect. This is especially true in view of the fact that absolutely no showing has been made that any of these documents were: (1) official documents relating to the arrest of any individuals; and (2) that said individuals cases were terminated in their favor. Further, as indicated in the examples cited above, and the preceding discussion of relevancy of the POLICE REPORTS, such documents are highly relevant to plaintiff's claims of false arrest and malicious prosecution, as they demonstrate that the police department possessed information that another individual was responsible for the murder and therefore, vitiates any claim of probable cause to arrest plaintiff for the murder of Danny Cabezas. It is also relevant to the element of "malice" in plaintiff's malicious prosecution claim.

It appears that many of these entries to which defendants' claim C.P.L. §160.50 protection, relate to the investigation of an individual, Guang Lin, or others, for his/their possible role in the Cabezas murder. As such, these documents cannot be subject to C.P.L. §160.50 protection, as by their terms, they are part of the investigation into a murder for which plaintiff was arrested and ultimately exonerated. Because neither Guang Lin, nor anyone else other than plaintiff, has been arrested or prosecuted for the Cabezas murder, there exists no action that could have terminated in their favor, and C.P.L. §160.50 does not apply.

Assuming, *arguendo*, that some of the documents to which defendants assert C.P.L. §160.50 protection involve prior arrests of Guang Lin or others [7] which had terminated in their

---

[7] It should be noted that plaintiff was arrested on or about April 3, 2003, in New York County with three others. The case against plaintiff and the others was never prosecuted (they were released without being arraigned) and is sealed by the terms of C.P.L. §160.50. (The C.P.L. §160.50 waiver that plaintiff provided to defendants herein, does not cover this arrest). Nevertheless, at plaintiff's deposition, counsel Graziadei questioned plaintiff about that incident,

-10-

favor (for which no showing has been made by defendants' herein), if those documents had been sealed, the question arises as to how the NYPD has access to same given the sealing. If they were properly unsealed, which is highly doubtful, then C.P.L. §160.50 would not form a basis to prevent disclosure. If they had not been obtained via an unsealing order, then defendants have themselves violated C.P.L. §160.50 and should not now be allowed to hide behind same to prevent plaintiff from obtaining this information.

Defendants should not be permitted to violate the terms of the statute, and then claim its protection, especially where these documents were utilized in the murder investigation for which plaintiff was arrested and ultimately exonerated. Plaintiff's interest in obtaining these materials in this civil rights action, outweighs the privacy interests of these individuals, who are/were potential murder suspects, whose records have already been disclosed both to defendants herein as well as the public. As discussed *infra.*, Guang Lin's mug shot photograph (likely from a sealed arrest) was provided by the NYPD to the Sing Tao newspaper for publication, naming him as a suspect in the murder. In light of that disclosure to the public, the question arises as to what marginal violation of Guang Lin's privacy interest would be implicated by the limited disclosure requested by plaintiff's counsel herein. Thus, it is hard to fathom defendants' current argument that C.P.L. §160.50 should be utilized to protect Guang Lin's privacy interest, given the police departments' prior violation of his privacy rights by publishing his identity as a potential murder suspect and using an arrest photograph from a "sealed" matter, especially in light of the serious nature of the civil rights claims asserted by plaintiff.

As the court observed in *Cruz v. Kennedy*, 1997 U.S. Dist. LEXIS 23012 (S.D.N.Y. Dec. 17, 1997), "New York State law does not govern discoverability and confidentiality in federal civil rights actions, and state privacy rules . . . should never be permitted to 'frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." Further, the federal courts, when addressing demands for production of such arrest documents, have commonly rejected confidentiality arguments premised on C.P.L. §160.50 even without redaction. *See, e.g., Woodward v. City of New York*, 2000 WL 516890 (S.D.N.Y. March 10, 2000).

In the present case, in view of plaintiff's causes of action sounding in false arrest and malicious prosecution, the POLICE REPORTS are highly relevant, relating to the investigation of Guang Lin, and possibly others, in the murder of Danny Cabezas. Accordingly, regardless of C.P.L. §160.50, said documents should be turned over to plaintiff without limitation. *Woodward*

---

and asked plaintiff about the other individuals with whom he was arrested, while reading from a police report related to that incident, documents which defendants now assert are privileged (*See* Bates #s NYCP 5-9). Thus, counsel Graziadei had in his possession and utilized at plaintiff's deposition herein, documents he now refuses to provide plaintiff, claiming they are sealed pursuant to C.P.L. §160.50. If they are sealed, counsel Graziadei himself is not entitled to them pursuant to the terms of C.P.L.§160.50, and fairness dictates that they now be turned over to plaintiff.

-11-

*v. City of New York*, 2000 WL 516890 (S.D.N.Y. March 10, 2000).

With regard to the documents identified by Bates numbers NYCP 5-9 (*See* fn. 4, infra.), which contain the names of three others arrested with plaintiff, who were not investigated with regard to the murder of Danny Cabezas, plaintiff suggests that the Court order the production of said documents, with the exception that the defendants redact the names of the individuals therein, other than plaintiff. *See Haus v. City of New York*, 2006 U.S. Dist. LEXIS 23006 (S.D.N.Y. April 17, 2006).

## POLICE REPORTS AND LAW ENFORCEMENT PRIVILEGE

Defendants claim that the murder investigation into the death of Danny Cabezas is still open, and thus, the documents listed on the privilege log are protected by the law enforcement privilege, as their release could jeopardize the "open" investigation. Defendants are wrong. The investigation is no longer open, and even if it were, the law enforcement privilege does not act to bar plaintiff's access to documents that are highly relevant to plaintiff's civil rights claims.

Defendants claim that the murder has not been solved, that the investigation is therefore still open, and this fact is not in dispute. Contrary to defendants assertion, this is untrue. Although the perpetrator is apparently not in custody, the murder has been solved; it being clear from all the evidence amassed prior to plaintiff's arrest that an individual depicted in the video as one of the shortest persons present at the time of the murder, with long hair and a tattoo on his arm, who is seen opening and closing a knife and thrusting same in a stabbing motion into the area where witnesses definitively described to the police on the night of the murder as that where Danny Cabezas was stabbed, and who was identified by informants interviewed by law enforcement as the stabber, clearly murdered Danny Cabezas. The perpetrator of the crime, "Tae Bao," and his associate, Guang Lin, with whom he acted in concert, were known to the NYPD prior to plaintiff's arrest and prosecution and the only thing that has not happened, to date, is the arrest of these individuals. Moreover, as evidenced by the statements of Eugene Reibstein, A.D.A., on December 16, 2006, in dismissing the underlying murder prosecution against plaintiff, that they can now "go get the real guy," it is clear that law enforcement too has solved the murder and is aware of the actual perpetrators.

Additionally, although the stabber is still at large, contrary to defendants claims, the investigation is not really open or active. This is evidenced by the lack of any allegedly privileged materials detailed in the privilege log dated after the Queens County District Attorney's office dismissed this matter against plaintiff in December 2006. In fact, all of the entries contained therein relate to documents pre-dating plaintiff's arrest of October 24, 2005. Moreover, defendant Milan, who is still an active member of the NYPD, recently testified that prior to viewing plaintiff's enhanced video at his deposition, he still believed plaintiff stabbed Danny Cabezas. Defendant Milan had filed a closing police DD-5 indicating the investigation was no longer open, and was in fact closed, and testified that he was confused as to why the Queens County District Attorney's Office dismissed the case.

-12-

To date, through discovery herein, we have not received a single police report or DD-5 from defendants that the murder investigation of Danny Cabezas has been re-opened or that they have undertaken any investigative initiatives in furtherance of apprehending the known perpetrators. In fact, Attorney Graziadei stated in this Court on October 16, 2007, that Detective Milan still "believed at the time during the deposition that the plaintiff in this litigation still committed the crime and... in fact he was still interested in prosecuting the plaintiff in this case and was looking for additional evidence with which to do so....." *See* October 16, 2006 Transcript p. 27-28, previously provided to the Court with our October 25, 2007 correspondence opposing defendants' protective order as to the depositions of other police witnesses herein.

Accordingly, defendants bald averments that there is an open investigation relative to the underlying stabbing is specious at best, and the conclusory declarations of law enforcement submitted with his application are of little value as to this point as they fail to detail any efforts taken to date with regard to the investigation into the homicide since the date of plaintiff's arrest, October 24, 2005.

The purpose of the law enforcement privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation. *In re Department of Investigation of the City of New York*, 856 F.2d 481, 484 (2d Cir. 1988). In order to sustain the privilege, a party "must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not rely simply on generalized reiterations of the policies underlying the privilege." *Kunstler v. City of New York*, 2005 U.S. Dist LEXIS 23899 (S.D.N.Y. Oct. 18, 2005). The privilege is a qualified one, and therefore, the courts should balance the public interest in non-disclosure against the need of the particular litigant for access to the privileged information. *Kunstler v. City of New York*, 439 F. Supp. 2d 327, 328 (S.D.N.Y. 2006). Further, the party asserting the privilege must make a threshold showing that the privilege attaches. It has been held that the government has a vital interest in upholding civil rights, and thus, impediments to fact finding in § 1983 cases are not favored. *Skibo v. City of New York*, 109 F.R.D. 58, 64 (E.D.N.Y. 1985); *Katt v. New York City Police Dep't*, 1997 U.S. Dist. LEXIS 10014 (S.D.N.Y. July 14, 1997).

Defendants rely upon *Austin v. Brown*, 2007 U.S. Dist. LEXIS 78311 (E.D.N.Y. Oct. 22, 2007), for the proposition that since the murder herein has not been solved there is a sufficient basis for asserting the law enforcement privilege. First as detailed herein, this homicide has been solved, the perpetrators, however, are apparently still at large. Second, the *Austin* decision is inapposite to the case at bar, involving a person incarcerated for a homicide bringing a *habeas* petition and attempting to seek discovery of materials relating to <u>another</u> homicide, which apparently was unsolved. Therefore, in *Austin*, the Court held that the documents related to the <u>other</u> homicide were so attenuated, in terms of relevance, that they did not have to be provided to petitioner based on the law enforcement privilege.

-13-

Unlike *Austin*, in the present case, plaintiff's seeks documents from the investigation of the homicide for which he was arrested and prosecuted in a civil rights action. Thus, *Austin* is completely inapplicable to the issue at bar. Rather, cases such as *Myhre v. Ditzler*, 2006 U.S. Dist. LEXIS 6452 (N.D. Ill. Feb. 21, 2006), make clear that plaintiff is entitled to these documents.

The defendants' concern that the release of the POLICE REPORTS will somehow jeopardize an existing investigation are unfounded, unsupported by any rational argument proffered herein, have been addressed in the Confidentiality Stipulation (*See* Ex. 2) entered into between the parties, and therefore, must be rejected.

Moreover, as detailed in *Kshel Realty Corp. v. City of New York*, 2004 U.S. Dist. LEXIS 25791 (S.D.N.Y. Dec. 20, 2004), "principles of waiver apply to the law enforcement privilege, so that a document otherwise properly withheld may be subject to disclosure if the privilege has been forfeited. Thus, for example, a witness statement that might be subject to the privilege in order to shield the identity of the witness becomes subject to discovery once the witness' identity is disclosed." This holding logically applies both to witnesses as well as subjects of an investigation.

In the underlying criminal litigation plaintiff was provided documents by the Queens County District Attorney's Office relating to the investigation of other subjects of the murder investigation. This included the mug shot pedigree of Guang Lin from an arrest in 2000 which, upon information and belief, is represented by Bates numbers NYCP 2, 3, or 4 on defendants' privilege log. This also included informant information relating to the identity of "Tae Bao." Plaintiff has disclosed these documents to defendants herein as part of his discovery obligations. Defendants are now claiming a privilege as to the very materials provided to plaintiff as part of the criminal case and have refused to turn them over to plaintiff despite the fact that any privilege has clearly been waived. Additionally, despite our possession of these materials since before August 2006, defendants have not set forth any evidence that plaintiff's possession of these documents, for in excess of a year, has somehow impeded or otherwise jeopardized their investigation into the suspects of this investigation, endangered an informant, or compromised the safety of a witness.

As detailed above, defendants have also waived the law-enforcement privilege regarding POLICE RECORDS relating to an individual known as Guang Lin and others whose information and photograph defendants had published in a newspaper. As part of the investigation, with written permission from the highest ranks of the NYPD, on March 22, 2002, Detective Vincenzo Romano gave an interview to a reporter from the New York Chinese daily newspaper, Sing Tao, in an effort to obtain information about suspects in the murder investigation, asking members of the public to contact the police if they had any information. The NYPD provided the newspaper with a picture of Guang Lin and a still photograph from a surveillance video depicting numerous other potential witnesses/suspects. Now, despite having published this information to the general public, defendants claim the documents relating to Guang Lin and others are privileged and have

-14-

even refused to turn over Guang Lin's "wanted card," which was brought to the Court's attention at the hearing on November 1, 2007. It is preposterous at this point for the defendants to claim the law enforcement privilege as to materials relating to Guang Lin and other potential witnesses and suspects, when the NYPD released Guang Lin's name and photograph, as well as the photographs of other potential witnesses/suspects for publication in 2002.

Moreover, as a precondition to receiving any documentary discovery herein, a Confidentiality Stipulation,[8] Exhibit 3 herein, was executed which provides safeguards as to the disclosure of this information and is specifically designed to allay the concerns of defendants herein.

Lastly, defendants have made no clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, other than a conclusory assertion that disclosure of these materials will somehow impede an open homicide investigation or endanger the safety of an informant. The lack of any specific showing is highlighted by defendants' failure to address the executed Confidentiality Stipulation, as well as the fact that no evidence exists that plaintiff's possession (without limitation) of much of the information defendants seek to withhold has somehow jeopardized the safety of an informant, or otherwise compromised any "open" investigation. *See Kunstler v. City of New York, Nos.*, 2005 U.S. Dist LEXIS 23899 (S.D.N.Y. Oct. 18, 2005) (clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted must be made).

As a result of the above, Plaintiff's interest in these highly relevant POLICE RECORDS and the concomitant interests of the public and the government in upholding civil rights, outweigh the defendants' interest in secrecy. Therefore, the privilege is overcome. *See In re Search of the Premises Known as 1182 Nassau Averill Park Road,* 203 F. Supp. 2d 129, 140 (N.D.N.Y. 2002). Accordingly, this Court should order defendants to disclose all the POLICE REPORTS detailed in the privilege log.

## DISCIPLINARY RECORDS AND RELEVANCY

Defendants assert that they should not be compelled to disclose various CCRB and IAB records (apparently comprising at least 134 pages of documents[9]) involving the two named

---

[8] On December 11, 2007, at a conference before the Honorable Lewis A. Kaplan, defendants stated on the record that they would provide these documents as long as Plaintiff executed a confidentiality stipulation. Thereafter, despite the execution of the Confidentiality Stipulation, Exhibit 3, defendants failed to turn over said documents and now assert the law enforcement privilege.

[9] Defendants note in footnote 2 of their letter dated October 31, 2007, that additional "outstanding CCRB and IAB complaints" will be provided to the Court upon receipt.

-15-

detective defendants as they are not relevant and reasonably calculated to lead to the discovery of admissible evidence. Defendants make this claim because the complaints were either unsubstantiated, are remote in time, don't bear a fair relationship to the specific misconduct alleged in plaintiff's complaint, and the conduct would be inadmissible pursuant to F.R.E. 404(b). Defendants are wrong.

Pursuant to the Supreme Court's decision in *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690-695, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), under 42 U.S.C. §1983, in order to hold defendant City responsible for the wrong suffered by plaintiff, plaintiff is obligated to prove, in addition to action under color of law that deprived plaintiff of his constitutional federal rights, that the constitutional violation was the result of a governmental policy, practice, procedure or custom.

Among other things, plaintiff has alleged that defendant City is liable under 42 U.S.C. § 1983, pursuant to *Monell*, in part, because defendant City failed to adequately train and supervise its detectives in the investigation of homicides, cold cases, arrests and interrogations resulting in violations of plaintiff's civil rights and defendant City knew, or should have known, that defendants Milan and Ng were poorly trained, improperly supervised, and employed improper arrest, interrogation and investigative techniques. Thus, DISCIPLINARY RECORDS, which plaintiff has requested, are essential herein and must be disclosed by defendants.

While plaintiff cannot make a formal showing of relevance as to the specific *Monell* issues raised in the complaints, as plaintiff is not in possession of any details of the withheld documents despite this Court's Order of October 16, 2007,[10] it appears, from the sheer volume of materials regarding complaints and investigations withheld (with potentially more to come as indicated in defendants submission), raises a significant issue as to a pattern of wrongdoing by these officers which, at the very minimum, affect their credibility as witnesses.

Further, prevailing case law holds that "unsubstantiated" complaints may be significant in an assessment of an officer's qualifications and performance, particularly if the complaints reflect a pattern, which are relevant to plaintiff's *Monell* claims. In addition, the complaints may identify a witness to similar conduct by the same officer on another occasion, and testimony by that witness about the prior incident may be admissible for various reasons. *See* F.R.E. 408. Lastly, whether or not barred by F.R.E. 404(b), such evidence may lead to the discovery of admissible evidence.

Defendants' contention that unsubstantiated complaints are not discoverable is in

---

[10] On October 16, 2007, this Court ordered defendants to provide "by close of business end of this week a list to the plaintiff of any charges, any complaints, whether they be CCRB or IAB, whatever they are, with respect to these defendants, officers or detectives, dates, nature of charges, disposition. You can, in fact I think it is appropriate, when you make your privilege submission to include a section on these documents. . . ," October 16, 2007 trans. P. 38.

-16-

contravention to established case law. *Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995); *Harper v. Port Authority*, 2006 U.S. Dist. LEXIS 46949 (S.D.N.Y. July 10, 2006) *Bradley v. City of New York*, 2005 U.S. Dist. LEXIS 22419 (S.D.N.Y. October 3, 2005). The courts have routinely directed production of such complaints in §1983 actions, regardless of whether the complaints are substantiated, unsubstantiated or even withdrawn, and have ordered disclosure of records of complaints reflected in IAB investigative records as well. *See, Harper, supra.*, *Bradley, supra.*, and numerous cases cited therein. Further, here, where there exists voluminous materials related to either complaints against and/or investigations into these defendants, such evidence may reflect a pattern of wrongdoing that is highly relevant to plaintiff's *Monell* claims in this 42 U.S.C. §1983 action.

Defendants imply that the CCRB and IAB records relating to defendant Milan concern allegations of excessive force, and argue that plaintiff has not asserted an excessive force claim against Milan, and thus, said documents would be irrelevant to plaintiff's claims. Defendants are wrong. In fact, a simple review of plaintiff's complaint demonstrates that the excessive force claim has been asserted against all defendants, including Milan.

Further, if plaintiff can demonstrate that defendant Milan knowingly subjected plaintiff to excessive force by directing defendant Ng to utilize excessive force, or knowingly sending defendant Ng, a detective who he knew had a reputation for using excessive force, to extract a confession from plaintiff, plaintiff could prevail on the excessive force claim against defendant Milan. To that end, during Milan's deposition, counsel Graziadei asserted a privilege and directed Milan not to answer the question as to whether he was aware of any complaints made against Ng. Moreover, during his deposition, Milan admitted that plaintiff would not have been charged with murder without the confession, and therefore, he sent Ng back into the interview room to obtain a confession from plaintiff, after Ng had already interrogated plaintiff for several hours and Ng had informed Milan that plaintiff had denied involvement in the murder. Thus, given the documented false confession herein, and plaintiff's allegations of excessive force against defendants, including Milan and Ng, any complaints regarding excessive force against Milan are relevant to plaintiff's causes of action.

With regard to the IAB investigations against defendant Ng, defendants assert that these materials should not be turned over because they claim that "**most**" of the investigations "are more than 10 years old and unsubstantiated." *See* letter of Counsel Jacobs, dated October 31, 2007 at p.5. Further, defendant's claim that any investigations that do not focus on the narrow area of "coerced confessions" would not be discoverable as they are not relevant, and not likely to lead to the discovery of admissible evidence.

Defendants' counsel's statement that "most" of the investigations are more than 10 years old and unsubstantiated, suggests that some of the investigations were both substantiated and less than ten years old. Said investigations, especially those that were substantiated, whatever they involved, would be highly pertinent to plaintiff's *Monell* claims. Further, Ng had been involved in the investigation of this murder since 2001, and had contact with plaintiff in 2003 and 2005.

-17-

SIEGLE & SIMS L.L.P.

Thus, in view of the timing of his involvement in this case, claims of remoteness are without merit.

As they have done throughout this litigation, defendants attempt to narrowly frame the issue of relevance of discovery materials, which under the FRCP are to be interpreted broadly. As to the DISCIPLINARY RECORDS, defendants argue that any investigations conducted by IAB of defendant Ng did not focus on coerced confessions, and therefore, are irrelevant. While we do not know what the investigations concern, as defendants intentionally ignored the October 16, 2007 order of the Court, we trust that the Court will examine the documents and make a relevance determination given the broad nature of the allegations by plaintiff herein. Any investigations that reflect on Ng's credibility, the use of excessive force, the planting of evidence, perjury, etc. would be relevant to plaintiff's claims. This is especially the case given plaintiff's claims that Ng forced plaintiff, through assault and threats of physical violence, to sign a piece of paper authored by Ng, which stated that plaintiff stabbed Cabezas, when Ng knew that plaintiff never admitted same. Ng subsequently falsely testified in the grand jury that plaintiff admitted stabbing Cabezas.

Finally, and of great significance, defendants have completely delayed this litigation and intentionally misled the Court with regard to the issue of discovery of the DISCIPLINARY RECORDS. On September 11, 2007, attorney Graziadei informed Judge Kaplan that such materials would be provided to plaintiff upon the execution of defendants' proposed confidentiality agreement. Thereafter, on or about September 17, 2007, plaintiff's counsel executed defendants' Confidentiality Stipulation, Exhibit 2 herein, which specifically contemplates the disclosure of the DISCIPLINARY RECORDS. With regard to these materials the stipulation states

> As used herein, "Confidential Materials" shall mean New York City Police Department ("NYPD") personnel and disciplinary records, and records of investigations regarding the conduct of Members of the Service of the NYPD conducted by the NYPD, the Civilian Complaint Review Board, or other agency, which shall be stamped with the term "CONFIDENTIAL" or otherwise designated by defendants, except that such documents and information shall not be deemed "Confidential Materials' to the extent, and only to the extent, that they are (a) obtained by plaintiff from sources other than defendants, or (b) are otherwise publicly available.

The stipulation then goes on to detail how the materials are to be handled and employed in the litigation. The defendants proffered plaintiff's failure to immediately execute this stipulation to Judge Kaplan on September 11, 2007, as their basis to withhold the disclosure of **any** substantive discovery materials and then once the stipulation was executed and signed by the Court, provided the limited materials produced to date, but **intentionally omitted from disclosure the documents governed by the stipulation.** As plainly read, the Confidentiality Stipulation deals almost exclusively with DISCIPLINARY RECORDS, and yet despite the explicit agreement, defendants have yet to turn over a single DISCIPLINARY RECORD. This is beyond

-18-

comprehension.

In sum, defendants arguments that the CCRB and IAB complaints should not be provided to plaintiff are wholly without merit. The controlling case law regarding this discovery mandates disclosure to plaintiff. Moreover, defendant's own stipulation protects the disclosure of these materials and was executed by the parties in contemplation that these very materials were going to be disclosed. Accordingly, the Court should order defendants to immediately produce the DISCIPLINARY RECORDS to plaintiff.

## TRAINING MATERIALS AND LAW ENFORCEMENT PRIVILEGE

Defendants request a protective order precluding the production of allegedly confidential law enforcement techniques concerning the interviewing and interrogation of suspects, which they claim are contained in the course materials provided in the H.I.C. and C.I.C.[11] Defendants claim that these training materials are protected by the law enforcement privilege because divulging investigatory techniques could hamper the ability of the NYPD to conduct investigations and solve crimes. Defendants are wrong.

As an initial matter, as noted by the Court on November 1, 2007, and as discussed herein, defendants have failed to make a proper showing that the materials at issue have been kept confidential or that disclosure of the materials, on a limited basis and with appropriate safeguards, similar to those detailed in the Confidentiality Stipulation, would somehow compromise the ability of law enforcement to investigate and solve crimes, and thus, the privilege may not be invoked. Similarly, defendants have failed to set forth what specific interests would be compromised by disclosure of these materials to plaintiff's attorneys on a limited basis, and therefore, they have not made a threshold showing that the privilege applies.

Moreover, even if defendants made the necessary showing, plaintiff's need for disclosure of the training materials outweighs the public's interest of non-disclosure in this civil rights action. Finally, much of the information that plaintiff seeks is already known and/or readily available to the public, and as such, defendants' argument that disclosure of these materials compromises the investigative ability of the NYPD is nonsense.

In order to sustain the law enforcement privilege, defendants "must make a clear and

---

[11] It should be noted that defendants, again, improperly frame the issue herein as to the materials that plaintiff has sought. In addition to information regarding training of interrogation techniques, plaintiff seeks all training materials on the assessment of probable cause, the utilization of identification procedures, and the investigations of murder cases and cold cases. Plaintiff has not limited its inquiry to the H.I.C. and C.I.C., but has sought all materials, including supplemental materials and training memorandums issued by the NYPD. It should be noted that defendants have provided some materials on cold case investigations in "redacted" form (*See* Exhibit 4) , and plaintiff seeks a copy of said materials without redaction.

-19-

specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not simply rely on generalized reiterations of the privilege." *Kunstler v. City of New York*, 2005 U.S. Dist. LEXIS 23899 (S.D.N.Y. October 18, 2005). The privilege is a qualified one. *Id.* When determining whether to order disclosure, courts should therefore "balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." *Kunstler v. City of New York*, 439 F. Supp. 2d 327, 328 (S.D.N.Y. 2006), quoting *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336,1341 (D.C. Cir. 1984). "However, the party asserting the privilege must 'make a threshold showing that the privilege attaches' before the court is required to balance the parties' interests. *City of New York v. Beretta U.S.A. Corp.*, 222 F.R.D. 51, 66 (E.D.N.Y. 2004) (quoting *United States v. United States Currency in the Sum of Twenty One Thousand Nine Hundred Dollars*, 1999 WL 993721, at *3 (E.D.N.Y. Sept. 21, 1999).

In the present case, defendants have made an insufficient showing that the materials at issue are confidential, or have been kept confidential. *See* discussion of November 7, 2007 supplemental affidavits, *supra.* Further, defendants have offered no information suggesting that the disclosure of the information sought by plaintiff's counsel, which plaintiff's counsel agrees to include as "Confidential Materials" under the Confidentiality Stipulation, poses any threat to the investigation of crimes by the NYPD. As a result of defendants failure to meet the threshold burden that the privilege applies, the invocation of the privilege should be rejected, and the Court should direct disclosure to plaintiff. *See Concepcion v. City of New York*, 2006 U.S. Dist. LEXIS 54200 (S.D.N.Y. Aug. 4, 2006).

In the event this Court deems that defendants' made the required threshold showing, plaintiff's need for the requested materials outweighs the interests of the public in non-disclosure, especially if that disclosure is made with appropriate safeguards (ie. for "attorneys-eyes only").

In the present case, it is undisputed that a false confession was elicited from plaintiff. Plaintiff's *Monell* claims against defendant City of New York require that plaintiff prove, among other things, that the violations of plaintiff's civil rights resulted from a lack of training as to a difficult choice that defendant City of New York's employees would be expected to confront, and for which training or supervision would ameliorate. *Jenkins v. City of New York*, 2007 U.S. App. LEXIS 2782 (2d. Cir. February 6, 2007). Plaintiff claims that defendant City failed to properly train its officers with regard to how to handle the situation where, as here, the suspect being interrogated repeatedly refuses after many hours of interrogation to confess. Plaintiff alleges that this failure in training contributed to the elicitation of the false confession herein. Thus, plaintiff has a substantial need for these materials in order to prove a required element of the *Monell* claims in this civil rights action. This need outweighs the interests of the public in non-disclosure, especially in light of the public's interest in seeing civil rights claims against the government properly prosecuted. This is especially so when the disclosure would be on a limited basis. *See MacNamara v. City of New York*, 2007 U.S. Dist. LEXIS 28956 (S.D.N.Y. April 20, 2007).

Similarly, plaintiff alleges that defendant City failed to properly train and supervise its

-20-

employees with regard to the investigation of cold cases, and that as a result, plaintiff's civil rights were violated. Defendant Milan conceded that when he acquired the case file regarding the murder of Danny Cabezas that said investigation was a cold case. Thus, plaintiff has a substantial need for training materials concerning cold cases, and said need outweighs the interests of the public in non-disclosure for the reasons stated above.

Further, plaintiff alleges that defendant City failed to properly train and supervise its employees with regard to issues of probable cause, and the propriety of making arrests without probable cause, and as a result, plaintiff's civil rights were violated. Plaintiff alleges that the police possessed information at the time of plaintiff's arrest which demonstrated that plaintiff could not have committed the murder, and thus, plaintiff's arrest was without probable cause. Thus, plaintiff has a substantial need for training materials concerning probable cause, and said need outweighs the interests of the public in non-disclosure for the reasons stated above.

Plaintiff also alleges that defendant City failed to properly train and supervise its employees with regard to the utilization of identification procedures, and that as a result, plaintiff's civil rights were violated. Plaintiff alleges that there existed at least four witnesses, who if asked to view plaintiff in an identification procedure, would have stated that plaintiff could not have committed the murder. The defendants failed to utilize any identification procedure prior to plaintiff's arrest. Thus, plaintiff has a substantial need for training materials concerning the utilization of identification procedures, and said need outweighs the interests of the public in non-disclosure for the reasons stated above.

Additionally, while defendants have attempted to demonstrate that disclosure of these materials would significantly impede their ability to investigate and prosecute crimes, it is submitted that much of the material at issue has already been widely disseminated and is widely known. As a result, defendants' invocation of the privilege should be rejected. *See MacNamara v. City of New York*, 2007 U.S. Dist. LEXIS 28956 (S.D.N.Y. April 20, 2007).

First, numerous manuals and books on interrogation techniques, including the much utilized Reid interrogation technique, are available for sale to the public, which techniques, upon information and belief, are utilized by the NYPD. *See* Amazon.com web page advertising Essentials of the Reid Technique, and other publications regarding interrogation techniques, attached hereto as Exhibit 5. Further, numerous popular television shows over the years contained plot lines which include some of the interrogation techniques that defendants now seek to withhold. Further, the appropriateness of interrogation techniques utilized by the NYPD have been widely discussed during hearings on the admissibility of confessions, and in hundreds of court decisions to which the public has access. Similarly, it is submitted that information related to the investigation of cold cases and information regarding the conducting of identification procedures are also widely known and available. Lastly, it is hard to fathom any realistic concerns that would cause defendants to assert the law enforcement privilege as to training materials concerning probable cause.

-21-

In sum, defendants have not made the required threshold showing to demonstrate that the law enforcement privilege applies to the subject materials. In any event, a balancing of the interests at stake dictate that disclosure of these materials be made to plaintiff.

## CONCLUSION

Accordingly, we respectfully request that the Court deny defendants' application for a protective order herein and order defendants to produce POLICE REPORTS, TRAINING MATERIALS and DISCIPLINARY RECORDS immediately and for such other and further relief as this Court deems proper.

Respectfully submitted,

SIEGLE & SIMS L.L.P.

Eric W. Siegle

cc: John H. Graziadei, A.C.C. (via hand delivery)

-22-