# EXHIBIT 8



THE CITY OF NEW YORK

**LAW DEPARTMENT**

100 CHURCH STREET
NEW YORK, NY 10007

JICHAEL A. CARDOZO
*orporation Counsel*

JOHN H. GRAZIADEI
*Senior Counsel*
Telephone: (212) 442-3551
Facsimile: (212) 788-9776

December 26, 2007

**VIA HAND DELIVERY**
Eric Siegle, Esq.
Siegle & Sims L.L.P.
217 Broadway, Suite 611
New York, New York 10007

Re: *Zhao v. City of New York, et al.*, 07 CV 3636 (LAK) (MHD)

Dear Mr. Siegle,

Under this cover please find documents bearing Bates numbers NYC 457 – NYC 686, which are documents disclosed to defendants by the Queens District Attorney's Office pursuant to subpoena. Please note that, as per the parties' agreement, personal information including dates of birth and tax identification numbers has been redacted. Confidential informant information and identifying data has been redacted pursuant to the Court's December 4, 2007 Order and has been identified on the documents accordingly. Certain information was redacted by the Queens District Attorney's office. Certain documents have been marked "FOR ATTORNEY'S EYES ONLY – CONFIDENTIAL." As per the Court's December 4 and December 14, 2007 Orders, all documents marked for attorney's eyes only produced by defendants must be kept confidential by plaintiff's counsel and may not be disclosed to anyone, including experts, investigators, or plaintiff. This production does not constitute a waiver of any previously asserted objections. Please contact me with any questions.

Sincerely,

John H. Graziadei
Senior Counsel

cc: Alexander Peltz, Esq.

# EXHIBIT 10

## Eric Siegle

**From:** Eric Siegle
**Sent:** Thursday, January 03, 2008 4:17 PM
**To:** 'Graziadei, John H.'
**Cc:** Rossan, Jennifer; Jonathan Sims
**Subject:** RE: Yang Feng Zhao

As I stated to you clearly on December 20, 2007, the order of December 4, 2007 does not permit you to make any redactions to the documents produced by the QCDAO pursuant to your subpoena. .

With regard to your statement that plaintiff would "not take issue with minor redactions" purportedly contained in our December 20, 2007 corrspondence, that paragraph states as follows:

*Regarding the materials which were the subject of the Court's in camera inspection referred to in the Amended Memorandum and Order, Part A, "Investigation File," defendants were "required to produce to plaintiff's counsel of the so-called investigatory documents previously withheld on the ground of the law enforcement privilege, but may redact the names of, and other identifying data regarding, confidential informants whose identities have not previously been revealed to plaintiff or his counsel by the prosecutors or the defendants." Without qualification, defendants were not permitted to make any other redactions. In contravention of the Court's order, defendants have improperly redacted virtually every document disclosed.*

*While plaintiff, for purposes of reasonably resolving this issue amicably between the parties does not take issue with minor redactions (ie. MOS tax id. #s), although in clear violation of the Order, the following redactions must be immediately cured by defendants insofar as they redact anything more that than the "name" and/or "identifying data," which clearly refers to social security numbers and dates of birth, of confidential informants not previously known to plaintiff's counsel from the prosecutors or defendants herein (plaintiff thereafter listed numerous documents which still have not been provided in full to date).*

This courtesy was afforded to you by our office with regard to your prior transgressions in baselessly redacting material despite the Court order of December 4, 2007, not continuing willful and contumacious violations thereof, which we immediately brought to your attention and told you you had absolutely no basis to do. This is clear from my December 26, 2007 e-mail correspondence to you, as well, wherein we advised you of your transgressions and gave you ample opportunity to cure, which opportunity you have refused to take advantage of.

As to Mr. Sims' statement to you on December 13, 2007, he advised that pursuant to the December 4, 2007 Order you are to provide unredacted copies of all documents previously disclosed by defendants not listed on your privilege log, which were served prior to the December 4, 2007 order, and that we would give you until end of business the next day to ameliorate this transgression, but not take issue with tax id #s. You failed to take advantage of this courtesy as well.

You continue to attempt to manipulate what has actually transpired in this litigation and attempt to use the courtesies we have offered you herein as a sword to justify your improper conduct. This will no longer be tolerated and will be brought to the Court's attention in our motion.

Please be guided accordingly. As I am sure you are aware from my facsimile correspondence from this morning, we had to contact counsel for Mr. Relbstein to adjourn his deposition of January 7, 2008, due to your conduct in improperly redacting their documents.

# EXHIBIT 11

Jonathan Sims

| | |
|---|---|
| **From:** | Graziadei, John H. [jgraziad@law.nyc.gov] |
| **Sent:** | Monday, October 01, 2007 8:06 PM |
| **To:** | Jonathan Sims |
| **Subject:** | RE: Zhao-deps |

I did not write that you would have consented without getting back to me, only that we had had discussions and that I would be requesting those dates (please see below carefully); you certainly never suggested "from day one" that Zhao required a Cantonese interpreter during his deposition although perhaps you should have if you wanted your client to understand the questions; you clearly have copies of the videotapes already since you produced them to us. I will note to the Court that you have consented to the 22nd for Rivera. Based upon defendants' receipt of notice of your motion, we will have to respond to the motion today, although we would have prefered to wait until you could have expressed an accommodation of the witnesses as we discussed. You did know, however, that I told you I would be responding tonight.

# EXHIBIT 12

7AG4ZHAC

1

7AG4ZHAC
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  YANG FENG ZHAO,
3
4              Plaintiff,
4
5       v.                              07CV3636(LAK)(MHD)
5
6  CITY OF NEW YORK, et al.,
6
7              Defendants.
7
8  ------------------------------x
8                                       New York, NY
9                                       October 16, 2007
9                                       9:10 a.m.
10
10
11  Before:
11
12              HON. MICHAEL H. DOLINGER
12
13                              District Judge
13
14                   APPEARANCES
14
15  SIEGLE & SIMS
15      Attorneys for Plaintiff
16  ERIC W. SIEGLE
16
17  NEW YORK CITY LAW DEPARTMENT
17      Office of the Corporation Counsel
18      for The City Of New York
18  JOHN GRAZIADEI
19      Assistant Corporation Counsel
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

7AG4ZHAC
1              (Case called)
2          THE COURT:  What's going on here.  I notice some very
3  tight deadlines.  There seems to be a claim by plaintiff that
4  the defendant has failed to turn over material that's relevant
5  and has claimed privilege, that documents are privileged.
6          MR. SIEGLE:  Judge, it is our motion.  I think it
7  would be appropriate, there are several layers to our motion.
8  By Judge Kaplan's rules we are only allowed 4 pages basically
9  to make a full panoply of objections we have for what's
10  transpired as to the city's conduct.  I would like to address
11  them one by one with the court.
12          First, judge, we ask for a preclusion of --
13          THE COURT:  Why don't we start with what's wrong, then
                              Page 1

7AG4ZHAC

14  you can tell me what your remedies are.
15       MR. SIEGLE:  The first thing that the city has not
16  done is provide us with the names of any witnesses at all
17  whatsoever pursuant to Rule 26(a).
18       THE COURT:  I thought that I detected in this service
19  of documents, whether it be 26(a) disclosure or otherwise, a
20  reference to certain specified documents as containing the
21  names of the witnesses.  I did not have the benefit of those
22  documents, so I couldn't tell.  In any event, am I misled on
23  that or are you in fact taking depositions of the people who
24  are witnesses in the case.
25       MR. SIEGLE:  No, judge.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    3

7AG4ZHAC

1        MR. GRAZIADEI:  If I may.
2        THE COURT:  One at a time.
3        MR. SIEGLE:  I would be happy to hand up those 31
4   pages.  They are basically court records.  There are only names
5   of two witnesses in those 31 pages, and those are the two
6   defendants that are named in the lawsuit.  Everything else is
7   based on our independent investigation, and we are speculating
8   as to what any of those officers would say until we dispose
9   them.
10       THE COURT:  Let me back up.  What have you done in
11  discovery; what remains to be done.
12       MR. SIEGLE:  As of this date, other than documentary
13  discovery which is before the court which we need, we have
14  given our client, made our client available to the city who was
15  deposed last week on October 10 and 11.  On Friday we deposed
16  detective Richard Maline, and yesterday we disposed defendant
17  detective Billy Milan.
18       As the court will also see, there is a schedule for
19  the rest of the week for my office to conduct I believe it is
20  five more depositions, and the city has yet to schedule a 6th,
21  another detective, I don't know want to say numbers because
22  they are all over the place, which they can't get done by the
23  18th.
24       THE COURT:  Did you ask these two detectives whom you
25  have deposed for the names of the people you deem permanent to
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    4

7AG4ZHAC

1   the case.
2        MR. SIEGLE:  Actually based on the testimony
3   yesterday, your Honor, of one of the defendants in the case,
4   it's becoming apparent that we may not even need the testimony
5   of some of the other people that we have noticed.  This has
6   been a wild goose chase.
7        THE COURT:  Answer my question.  Have you asked the
8   witnesses in deposition for the names of those people whom you
9   thought might be relevant.
10       MR. SIEGLE:  Absolutely.  Yesterday during the
11  deposition of detective Billy Milan, we heard the names of
12  several other officers involved in the case for the very first
13  time.  Those names were not included on any of the paperwork we
14  received from the police department.  A decision has not been
15  made, we just took the testimony yesterday, as to whether or
16  not we would need that deposition testimony, but at this point,
17  I don't believe it's going to be necessary based on what has
18  transpired.

                        Page 2

7AG4ZHAC

19    THE COURT:  Given the schedule, you had better make up
20  your mind very quickly.
21    MR. SIEGLE:  We noticed the witnesses for the first
22  week in September.  The city refused to produce them
23  unilaterally.  We made a motion before Judge Kaplan.  These are
24  the only dates the city would make these people available.
25  They set the schedule; we did not.  They claim they are making

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

7AG4ZHAC

1   accommodation to us because a lot of these detectives are
2   retired and this is the schedule they are working them into.
3    We asked as part of our initial application to Judge
4   Kaplan back in September to enlarge the time for discovery
5   based on the late schedule and Judge Kaplan, I think the
6   comment was show me what you get started then we will deal it.
7    We are getting started.  The city is putting us to the
8   last day of the discovery deadline, not by our choice.
9    THE COURT:  Let's look at open items.  What are the
10  open items in terms of discovery.
11    MR. SIEGLE:  The first issue would be with regard to
12  the city failing to notice any witnesses other than those 31
13  pages we talked about.  I handed up a packet to the court.
14    THE COURT:  OK.
15    MR. SIEGLE:  Our application would be to preclude the
16  city and defendants Milan and Ng from introducing testimony and
17  evidence from anybody's name not contained in the 31 pages,
18  which is all the city said they had used to provide 26(a)
19  disclosure.  The individual defendants themselves answered
20  approximately five or six weeks after the city and after the
21  city's 26(a) disclosure, and the individual defendants
22  themselves, the two officers that were involved in this
23  investigation, never noticed the names of any witnesses in this
24  case at all.  They provided no 26(a) disclosure at all
25  whatsoever.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

7AG4ZHAC

1    THE COURT:  They have not provided any 26(a)
2   disclosure.
3    MR. SIEGLE:  Whatsoever.  That's in our application.
4   In paragraph 2, the city provided, I believe it's July, the
5   city provided theirs, it's exhibit, I am sorry, on July 30,
6   Exhibit 2 of our motion.  There has been no other 26(a)
7   disclosure from anybody else.  There has been no supplemental
8   26(a) disclosure either throughout.
9    THE COURT:  Did you ever take this up with the
10  defendants' lawyers.
11    MR. SIEGLE:  Yes.
12    THE COURT:  With what result.
13    MR. SIEGLE:  With the result, we provided you the
14  documents, find the names.  That's the response to the court.
15  I don't know --
16    THE COURT:  Be more precise.  Did you ever take up
17  with the city's attorney the failure of the individual
18  defendants to provide 26(a) disclosure.
19    MR. SIEGLE:  Yes.  It was a subject of our first
20  motion to compel which was ruled on by Judge Kaplan.  Judge
21  Kaplan said provide all 26(a) disclosure by October 8.  There
22  is a court order; that's Exhibit 1 of the motion.  We received
23  nothing additional by October 8, as it says in paragraph 2.  If

Page 3

7AG4ZHAC

24    the court looks at Exhibit 1, the order is right there, because
25    we did bring it up on our first motion to compel.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

7AG4ZHAC

1    THE COURT: OK.
2    MR. SIEGLE: Next issue comes as to what the city --
3    MR. GRAZIADEI: Your Honor --
4    THE COURT: Counsel, you are going to have to restrain
5    yourself.
6    MR. GRAZIADEI: I would just request that we address
7    them one by one, because Mr. Siegle has introduced so much.
8    THE COURT: Thank you for your advice, but we will do
9    it my way.
10    MR. GRAZIADEI: Absolutely, your Honor.
11    THE COURT: Yes.
12    MR. SIEGLE: The next issue comes as to compelling
13    disclosure of documents, documents which we asked to be
14    disclosed and made motion to in September before Judge Kaplan
15    as well.
16    THE COURT: You filed a motion in September.
17    MR. SIEGLE: We filed a handwritten letter the end of
18    July and August. Judge Kaplan was out the whole month of
19    August. We went to Judge Kimba Wood, the Part I duty judge at
20    that time, asked her to respectfully deal with the issues.
21    Judge Wood referred us, said Judge Kaplan would be back before
22    the discovery deadline actually occurred, therefore, these
23    issues could be raised before Judge Kaplan.
24    On September 11, Judge Kaplan called the parties in
25    for a conference. At that conference, Judge Kaplan said you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

7AG4ZHAC

1    have until October 18 to get things done. Get things done.
2    And then we made these subsequent motions, one at the end of
3    September, which led to the October 2 court order by which we
4    are claiming preclusion by the failure of the city to disclose
5    on October 8, and then when the city improperly responded and
6    failed to respond on October 8, we immediately made the October
7    9 motion which is presently before your Honor.
8    At the September 11 conference before Judge Kaplan,
9    the city stated to the court that they fully responded to our
10    interrogatories and requests to produce and that there was a
11    lot of material they were going to turn over to plaintiff once
12    a confidentiality stipulation was signed. Amongst the
13    documents that were requested which Mr. Graziadei specifically
14    told Judge Kaplan on September 11 that would be turned over
15    were complaints against the police officers that are the
16    defendants in this case. Excuse me; they are not police
17    officers, they are detectives.
18    Specifically, Mr. Graziadei pointed out to the court,
19    as the court will see as Exhibit 9 of our motion, the
20    confidentiality stipulation, paragraph 2, states and
21    contemplates that, I will read it slowly for the court and for
22    the record:
23    As used herein, confidential materials shall mean New
24    York City Police Department personnel and disciplinary records
25    and records of investigations regarding the conduct of members

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

7AG4ZHAC

1    of the service of the NYPD conducted by the NYPD, the Civilian
2    Complaint Review Board, or other agency which shall be stamped
3    with the term confidential or otherwise designated by the
4    defendants.
5         Then there is an exception that goes to records that
6    the plaintiff would have independent.
7         The pertinent part of that paragraph is, as was
8    relayed to Judge Kaplan by the city, they were going to turn
9    over disciplinary records including CCRB materials, so long as
10   we executed the stipulation. Then when we finally received the
11   disclosure from the city on October 1, those materials were
12   absent. Then when we received other materials from the city on
13   October 8, those materials again were absent.
14        We addressed that issue with Mr. Graziadei right away.
15   He said it was covered by the privilege log. I refer the court
16   now to the privilege log. Nowhere in that privilege log does
17   it discuss disciplinary records or complaints against the
18   individual officers.
19        THE COURT:  What is the exhibit number for the
20   privilege log.
21        MR. SIEGLE:  Exhibit 5, I am sorry, your Honor, and
22   because of the way it's scanned in, we couldn't include tabs; I
23   apologize to the court.
24        THE COURT:  That's OK.
25        MR. SIEGLE:  It's a 2-page document, Exhibit 5.
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

10

7AG4ZHAC

1         (Pause)
2         THE COURT:  I have Exhibit 4, defendants' responses to
3    the first consolidated set of interrogatory demands, then there
4    is a confidentiality stipulation.
5         MR. SIEGLE:  That's part of the same exhibit, part of
6    their response. Then the following exhibit has a label that
7    says Exhibit 5. The next two pages are a chart by the city.
8         THE COURT:  I have it.
9         MR. SIEGLE:  With regard to the privilege log, there
10   is not a single mention in there about disciplinary records or
11   complaints, as the court will see. I would also point out to
12   the court, we state to the court in our motion, this privilege
13   log is wholly improper pursuant to Local Rule 26.2(a)(1)(A).
14   The local rule in this district states, where you are going to
15   use a privilege log to refuse to produce documents, you are to
16   specifically list and detail the documents in such a fashion
17   that the opposing party can serve a subpoena duces tecum for a
18   specific document should that become necessary.
19        The city's privilege log is wholly improper. It lumps
20   together hundreds of pages of material without assigning any
21   type of name as to the date the document was created, where the
22   document is being stored, who it was created by, things by
23   which you could identify the document, like the author, which
24   is certainly not that something that would be privileged, the
25   date that the document was created, where the document is being
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

11

7AG4ZHAC

1    stored. These are all things contemplated specifically by the
2    local rule so that we would have an idea what we are talking
3    about here this morning rather than referring to batches of
4    pages grouped together hundreds at a time.
                        Page 5

7AG4ZHAC

5   For example, the second entry lumps together 284
6   pages, stating, documents containing information regarding an
7   individual other than plaintiff.  That's the nature of this
8   whole lawsuit here.  They arrested my client falsely and
9   actually, judge, yesterday, for the very first time, the case
10  officer who arrested my client, for the first time actually at
11  the deposition, in watching a videotape related to this arrest,
12  acknowledged, and he said it was for the first time and I am
13  not surmising that, this is, I see now why he didn't do the
14  stabbing, how he was the wrong guy.  It was the first time
15  ever.
16      He actually testified under oath yesterday that when
17  the Queens District Attorney's Office dismissed the case
18  against my client prior to trial, prior to any evidentiary
19  hearings, the term he used, he was baffled, because there was a
20  confession and he thought the case was rock-solid.  He
21  acknowledged yesterday that they arrested the wrong man.  Why
22  that's important, we have stated from the beginning of this
23  case, on the date that my client was arrested, which is October
24  24, 2005, for a murder which occurred almost 4 years prior, so
25  that the city had information in their possession as to the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

7AG4ZHAC

1   exact perpetrator of this crime.
2       To that extent we provided to the court as an exhibit
3   of this motion, one document we received during the criminal
4   investigation as Brady material, was a document of actual
5   knowing information from an informant and written down by law
6   enforcement of another perpetrator, another stabber in this
7   case.  And we believe, judge, that the documents listed from
8   pages 2 through 285 of this privilege log are another 284 pages
9   of materials related to another person who had done this crime.
10      THE COURT:  Do you have an identification of who that
11  person is.
12      MR. SIEGLE:  We don't other than a nickname and an
13  description that was on this paper.
14      THE COURT:  Have you made any requests, since you have
15  this particular theory about knowledge of this particular
16  individual, have you made any requests for documents pertaining
17  to that individual.
18      MR. SIEGLE:  What we have asked for, judge, in the
19  case is the entire investigation file from the New York City
20  Police Department with regard to this case which we believe we
21  are entitled to.  We are certainly entitled to the file up
22  until the day our client was arrested.  I just want to explain
23  to the court, there was a murder in this case in December of
24  2001.  My client was arrested in October 2005.  There is almost
25  a four-year window here for investigation by the New York City

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

7AG4ZHAC

1   Police Department.  We should be entitled at a minimum to all
2   the materials that they had in their investigation up until the
3   day our client was investigated to show why they investigated
4   the wrong man here, excuse me, why they arrested the wrong man.
5       Additionally, the reasons we believe that we are
6   entitled to more than just past the date of his arrest is to
7   show a jury in this case at trial and to obtain discoverable
8   evidence of all the things that they could have done before
9   October 24 when they arrested our client that they had at their

Page 6

7AG4ZHAC

10 disposal beforehand.  Interestingly enough, the city in its
11 privilege log uses as the basis to refuse to turn over these
12 materials, the law enforcement privilege.  Well, judge, we
13 disclosed yesterday or uncovered yesterday, I should use the
14 word, that there is no open active investigation into this
15 murder.
16 Up until yesterday, the case officer who arrested my
17 client, the lead detective, believed my client guilty of this
18 crime until yesterday.  There has been no active investigation.
19 The law enforcement privilege here, they are just citing that.
20 out of hand.  There is no active investigation at this point in
21 time.  That was adduced at the deposition.
22 Judge, another part of this case and a burden which is
23 on the plaintiffs in this case, in order to prove the city's
24 responsibility under 1983 law, we have to meet the burden set
25 forth in the Monell case.  Part of what we have to prove is a
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

7AG4ZHAC
1 pattern and practice employed by the police department which
2 would, which did result in a violation of our client's
3 constitutional rights, or we have to prove that the training
4 and/or supervision employed by the New York City Police
5 Department led to a violation of our client's constitutional
6 rights.
7 The other documents contained in the privilege log
8 here are training materials with regard to the officers who
9 made the arrests.  Specifically, we asked questions at the
10 deposition, yesterday, and on Friday with regard to training of
11 these officers, and Mr. Graziadei refused to allow these
12 witnesses to answer questions, citing that the materials upon
13 which they would base those answers have been asserted as
14 privileged in his privilege log.
15 He would not let them testify as to their training
16 into interrogation methods that are taught and used, into their
17 assessment of probable cause, how they are taught and trained
18 in that fashion, as to their training and employment of
19 identification procedures in cases, their training and their
20 employment of those training techniques with regard to
21 investigating homicides, their training and their employment of
22 that training with regard to investigating cold cases.
23 It's interesting; during the deposition yesterday,
24 detective Milan testified that although this case wasn't
25 officially termed a cold case by the New York City Police
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

7AG4ZHAC
1 Department, despite the fact it was four years old at the time
2 of the arrest, he considered it a cold case and, therefore, I
3 believe we should be able to get all the training materials
4 with regard to cold cases.
5 The city did provide limited materials here which we
6 attached as the last exhibit to our motion.  If you will see,
7 there is, it's Exhibit 10, if you will see the city, without
8 any basis, without including it in the privilege log, redacted
9 the materials at their whim.  We have no clue what's in those
10 cases, what's been removed.  There are cross-outs all over the
11 document without any suggestion why they were removed.  They
12 are not included in the privilege log.  We believe we are
13 entitled to them.
14 I know there is lot here; I apologize.  Other things
Page 7

7AG4ZHAC

15 that came up and are subject to our motion to compel are,
16 during our investigation, we revealed, excuse me, during our
17 review of the documents that were provided by the city, it is
18 clear that numerous witnesses called 911 with regard to this
19 incident. Our very first discovery request included a request
20 from the city for 911 tapes with regard to this incident and
21 also what's called the Sprint printouts of those communications
22 which we are entitled to. We have never received copies of
23 audiotapes here from the city with regard to those 911 calls or
24 the Sprint printouts either.
25         THE COURT: Have defendants advised you why they have

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

7AG4ZHAC
1 not produced them.
2         MR. SIEGLE: No.
3         THE COURT: Did you ask them.
4         MR. SIEGLE: I don't have specific recollection of
5 that, other than to say we sent correspondence to the
6 defendants reiterating that request. Finally, we have asked
7 for copies of all paperwork from the New York City Department
8 of Corrections with regard to our client's approximately 340
9 days in custody on this case. Our client, from the date of his
10 arrest until the date the Queens County District Attorney's
11 office consented to his own release on his own recognizance, our
12 client spent 334 days, to be exact, in custody.
13         We have asked for records in regard to his custody.
14 We have asked for records in regard to the institution in which
15 he was held. To this date I don't believe that the city has
16 turned those over. We did discuss that specifically with the
17 city, and I believe Mr. Graziadei specifically said they
18 requested that information from the Department of Corrections
19 and they were awaiting it. As of this date we still don't have
20 it. This was a document discovery demand that was served on
21 July 26, 2007.
22         I just want to point out some of the other privileged
23 documents that we believe we are entitled to. I already
24 discussed pages 2 through 285. There is page 1 which
25 specifically requests information, which specifically says

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

7AG4ZHAC
1 information of a confidential informant due to an open homicide
2 investigation. There is no open homicide investigation here.
3 We established that conclusively yesterday. There may be one
4 again in the future based on the testimony yesterday, but there
5 is no active open homicide investigation by the New York City
6 Police Department.
7         Additionally, the city may have concerns as to
8 revealing a specific confidential informant. As the city has
9 taken it on their own with numerous other documents, the
10 document could have been provided with a redaction as to the
11 name of the confidential informant or certain identifying
12 information, and let us see the rest of the document, or at
13 least be able to make a motion with regard to that additional
14 material.
15         Similarly, there are 100 pages numbered 316 through
16 413, I think it's 97 pages, related to gang-related
17 information. Apparently the city has information that this
18 murder may have been perpetrated by members of a gang. Well,
19 it was conclusively established at yesterday's deposition

Page 8

7AG4ZHAC

20    through documents and the testimony of the arresting officer
21    who arrested Yang Feng Zhao that they had no information that
22    Yang Feng Zhao was in a gang.  Therefore, we believe these
23    materials are even more relevant after the testimony yesterday
24    than they were beforehand.
25              There have been some statements by Mr. Graziadei to my

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

7AG4ZHAC

1    partner in discussing this case, stating that the city believes
2    our client is in a gang.  We don't know the basis of that.  I
3    am sure it must come from these materials which are stated, 316
4    to 413.  The actual arresting officer who arrested our client
5    on October 26, 2005, testified yesterday that he didn't have
6    belief that our client was in a gang.  But Mr. Graziadei has
7    that belief.  I believe it's probably because of those records,
8    although, because they are lumped together in such a fashion, I
9    don't know when that material arose or the dates of those
10   materials, the author of those materials, the basis for those
11   materials.
12             Finally, the last part of our motion which I don't
13   think has to be discussed at this point is with regard to
14   compelling production.  There is an issue actually, compelling
15   the production of witnesses for deposition by the discovery
16   deadline, which is Thursday, October 18.  The city has told us
17   definitively that they cannot produce detective Sergio Rivera,
18   whom we had noticed for deposition early in September, by the
19   discovery deadline of October 18.  We asked for permission in
20   the alternative to either order the city to produce him or in
21   the alternative if the court wants us to do it, we would take
22   that deposition after the 18th with the court's permission, if
23   that's something the court would be willing to do
24             THE COURT:  Is Rivera still on the police force.
25             MR. SIEGLE:  I believe he is retired.  All these

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

7AG4ZHAC

1    witnesses whom we have requested depositions of, the city has
2    failed to give us their addresses or telephone numbers for us
3    to be able to try to subpoena them at all throughout this
4    litigation.  They claim that that is privileged pursuant to
5    state law and therefore they are going to produce these
6    witnesses and they have provided us no personal information
7    with regard to a single law enforcement member involved in this
8    case.
9              The other issue which arose Friday afternoon and is
10   the subject of another motion I filed Friday night is a motion
11   to quash.  As you will see by the discovery schedule, the
12   plaintiffs noticed and subpoenaed a nonparty witness in this
13   case to testify on Wednesday morning.  After that deposition,
14   immediately after that deposition, we noticed another detective
15   to testify.  On Friday afternoon, Mr. Graziadei had my partner
16   and I personally served with subpoenas to take our testimony to
17   conflict with the depositions of those two witnesses.
18             As this court is readily aware, the law in the
19   district is so compelling, subpoenas served on counsel to take
20   their individual testimony are highly disfavored and should
21   only be had if there is a showing, and that showing is pursuant
22   to the Shelton case.  I know that motion is not currently
23   before the court, but it certainly affects the schedule we are
24   talking about this morning.  I believe, if the court would want

Page 9

7AG4ZHAC
25    me to talk about the motion to quash and the law regarding our
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

7AG4ZHAC
1    testimony, I will, but we can hold that.
2        THE COURT:  I am aware of the law.
3        MR. SIEGLE:  Thank you, judge.  I just wanted to state
4    that that was an issue that the city created.  All of a sudden
5    in the 11th hour they have served subpoenas on my partner and
6    me personally to drive a wedge between us and our client and to
7    prevent us going forward with meaningful discovery of an
8    eyewitness to the murder on the morning of Wednesday, October
9    17.  We noticed George Wang, one of the managers of the club
10   where this incident took place.
11       THE COURT:  Obviously you are not going to be deprived
12   of your right to depose this fellow on the 17th of October.
13       MR. SIEGLE:  Thank you, your Honor.
14       THE COURT:  That's neither here nor there, but if
15   there is a basis for the defendants to depose the lawyers for
16   the plaintiff, that remains.
17       MR. SIEGLE:  That's the full motion, your Honor.
18       THE COURT:  Thank you.
19       Do defendants wish to be heard.
20       MR. GRAZIADEI:  Yes, your Honor.
21       THE COURT:  Let's start with witnesses and with
22   initial disclosures.  Have you ever served a 26(a) disclosure
23   on behalf of the individual defendants in this case.
24       MR. GRAZIADEI:  Your Honor, we served our 26(a)
25   disclosures on, I don't have a date, early on in the
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

7AG4ZHAC
1    litigation.
2        THE COURT:  That was a disclosure on behalf of the
3    city, not on behalf of the individual defendants.  I repeat my
4    question:  Have you served 26(a) disclosures on behalf of your
5    individual defendant clients.
6        MR. GRAZIADEI:  Yes, your Honor; those disclosures
7    were on behalf of all the defendants.
8        THE COURT:  They were not.
9        MR. GRAZIADEI:  The 26(a) disclosures, your Honor,
10   were, although the individual defendants had not been served or
11   answered, it was on their behalf.  It provided notice.
12       THE COURT:  Why don't you show me where in the 26(a)
13   disclosure you say this is on behalf of the individual
14   defendants.  Point me to that please.
15       MR. GRAZIADEI:  The caption in the 26(a) disclosures
16   is the defendants' 26(a) disclosures, and we considered that
17   the defendants would be included and it would include
18   detectives Ng and Milan.  We didn't wish to put form over
19   substance.  At that point Judge Kaplan had ordered that we move
20   forward expeditiously and as quickly as possible in the
21   litigation.  As soon as we were served with the subpoenas --
22       THE COURT:  Counsel, let's not mince words, first of
23   all.  The document we are talking about says as follows, and I
24   quote, please take notice that the defendant City of New York
25   by its attorney -- here I skip a few words -- on behalf of
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

7AG4ZHAC

Page 10

7AG4ZHAC
1  Mr. Cardozo hereby submit for its initial disclosure that.
2       You have not submitted a 26(a) disclosure for your
3  individual defendants.  You have got 24 hours to do that.
4       Next item, that's a listing of witnesses with
5  knowledge of the case.
6       MR. GRAZIADEI:  Yes, your Honor.
7       THE COURT:  You didn't do that even in the 26(a)
8  disclosure that you served on behalf of the city.  You referred
9  to documents that are obviously incomplete, and at this point
10  for sure you must have knowledge of the identity of all people
11  with relevant knowledge of the claims and defenses in this
12  case.  You have 24 hours to serve a list of all those witnesses
13  on the other side.
14       MR. GRAZIADEI:  Yes, your Honor.  I just take issue
15  with one of the representations that Mr. Siegle has made.  In
16  those documents, detective Milan is referenced and also
17  sergeant Conlon is referenced, and at the time those
18  disclosures were made there was an application before the court
19  for more time in which to answer because those were the only
20  documents the city defendants had in their possession at the
21  time.
22       THE COURT:  You now have a whole lot more.  So you
23  provide the list of people with knowledge of the facts.
24       MR. GRAZIADEI:  Yes, your Honor.  With respect to
25  certain other things Mr. Siegle has raised, he stated that he
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                        23

7AG4ZHAC
1  requested the inmate file of defendants and to date defendants
2  have not turned that over.  I would advise him to check his
3  records.  We have in fact turned that over.
4       THE COURT:  What are the Bates numbers.
5       MR. GRAZIADEI:  I don't have them with me.
6       THE COURT:  Provide them by close of business today in
7  writing, the Bates numbers of the documents that are responsive
8  to that request.
9       MR. GRAZIADEI:  Your Honor, did you say provide to
10  Mr. Siegle.
11       THE COURT:  Yes.
12       MR. GRAZIADEI:  Yes, your Honor.  In addition, he also
13  said he provided us with requests for the 911 tape and the
14  Sprint reports.  I would note the Sprint reports have been
15  included not only in the discovery but as attached to the 26(a)
16  disclosures that Mr. Siegle referenced earlier in this very
17  conference.
18       THE COURT:  You can identify by Bates numbers those
19  disclosures as well.  You said also that as part of this
20  request were the 911 tapes.  Have those been provided.
21       MR. GRAZIADEI:  Mr. Siegle himself provided them to
22  us.  Those are the only ones we know to be in existence.  He
23  Mr. Siegle has again put form over substance.  He has the tape
24  of the 911 call, and we don't have a copy of those in our
25  possession.  Those tapes are expunged after a certain period of
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                        24

7AG4ZHAC
1  time.  Given the tight schedule, I have made a request of
2  people in my office to continue to search for them, although to
3  date we have not located that there are any or have made a
4  determination that there are any in existence.  However,
5  nevertheless, Mr. Siegle has that tape in his position, as he
                        Page 11

7AG4ZHAC

6    turned it over in discovery to us.
7        THE COURT:  You say this is an ongoing search for
8    tapes that you say have been expunged.
9        MR. GRAZIADEI:  We are always looking for more
10   information if it ever comes to light.  We are cognizant of our
11   continuing obligation to turn over discovery that comes to
12   light.
13       THE COURT:  By the end of tomorrow, an affidavit to
14   the other side from your office from someone with personal
15   knowledge, specifying the scope and nature of the search made
16   for the tapes and the factual basis for your representation
17   that, as far as you know, the tapes have been destroyed.
18       MR. GRAZIADEI:  To clarify, your Honor, I didn't say
19   that I had a factual basis the tapes have been destroyed; my
20   understanding is that after six months the tapes are no longer
21   in existence.
22       THE COURT:  Tapes from what period.
23       MR. GRAZIADEI:  This tape would have been made for the
24   calls of the night of October 24, 2005.
25       THE COURT:  It is your understanding that if, as you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

7AG4ZHAC

1   claim, in document responses and privilege logs, there is an
2   ongoing investigation of this homicide, that the 911 tapes will
3   nonetheless still be destroyed during the pendency of an
4   investigation.
5       MR. GRAZIADEI:  I don't have any knowledge of that.
6       THE COURT:  Well, counsel, these tapes are requested
7   from you as attorney for defendants.  As you well know, you
8   have an obligation under the federal rules and as an officer of
9   the court to determine through your clients, including the
10   police department, the information necessary to respond
11   properly to such a request.  So for you to be standing here now
12   on the eve of the close of discovery saying that you really
13   don't know anything about these tapes at all essentially
14   obviously reflects the failure by you to do that which you are
15   obliged to do.
16       You will be required before the end of this week to
17   find out from the police department and whoever else you need
18   to find it out from, including the District Attorney's Office
19   or your own office, whether or not tapes were created at any
20   time pertaining to this homicide investigation and what their
21   fate was.  You are to provide an affidavit by a person with
22   personal knowledge at the close of business by the end of this
23   week to the other side specifying the fruits of your
24   investigation.
25       This is not a satisfactory state of affairs.  You

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

7AG4ZHAC

1   cannot leave this to idle speculation.  The tapes have to be
2   dealt with in a more specific, concrete manner.
3       MR. GRAZIADEI:  I do want to emphasize also, your
4   Honor, that in response to your question Mr. Siegle indicated,
5   your question specifically has he ever asked or brought this to
6   my attention, the answer is in fact no, he has not, until this
7   filing of this motion.
8       THE COURT:  The privilege log, which appears to, as
9   the plaintiff points out, lump together hundreds of pages of
10   what appear to be discrete documents, without specification of

Page 12

7AG4ZHAC

11  dates or anything else. I don't know what basis you have for
12  doing that. Perhaps you can tell me.
13       MR. GRAZIADEI: Yes, your Honor. With respect to the
14  first document, Bates number NYCP-1, listed on the privilege
15  log, it was a page that referenced information pertaining to a
16  confidential informant. As a result of the law enforcement
17  privilege and the dangers that could arise with respect to
18  disclosing information pertaining to a confidential
19  informant --
20       THE COURT: I think you are missing the question. My
21  question does not deal with specifics of the basis for your
22  claim of privilege for document number 1. It dealt with the
23  problem I see in the privilege log where you lump together in
24  categories without other distinction hundreds of pages of
25  apparently disparate papers and do not identify them. I am

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

27

7AG4ZHAC

1   asking you for the basis for your assumption, I assume you have
2   an assumption, this is a valid way of doing a privilege log.
3        MR. GRAZIADEI: Yes, your Honor. My office prepared
4   this privilege log, and with respect to the pages that have
5   been lumped together, they are in fact all of a similar nature
6   with respect to certain documents. With respect to for
7   instance 2 to 285, my understanding is that those are, upon
8   information and belief, because I don't have the documents in
9   front of me, those documents are all DE-5 documents which are
10  police records. The reason why they have been identified as
11  such is because they do identify another person in this
12  investigation who may in fact be a suspect and for whom the
13  police were still looking.
14       THE COURT: Still looking when.
15       MR. GRAZIADEI: Upon information and belief, as soon
16  as last week or two weeks ago, my understanding was they were
17  trying to locate him and they had new information about this
18  person's whereabouts, that he was a person of interest, they
19  were interested in speaking with him and locating him.
20       THE COURT: There was a deposition yesterday --
21       MR. GRAZIADEI: Yes.
22       THE COURT: -- of detective Milan. Was he involved in
23  this investigation.
24       MR. GRAZIADEI: Yes, your Honor. I understand
25  Mr. Siegle testified that yesterday he said he still believes

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

28

7AG4ZHAC

1   or believed at the time during the deposition that the
2   plaintiff in this litigation still committed the crime and that
3   was in fact his belief at the time and in fact he was still
4   interested in prosecuting the plaintiff in this case and was
5   looking for additional evidence with which to do so and perhaps
6   suggesting it to another area or branch of law enforcement.
7        In addition, he was looking for other people because
8   he had not ruled out conclusively that it was possible that
9   someone else had committed the crime, and these documents
10  pertain to someone who would either have been the person who
11  was the next logical suspect for the homicide underlying the
12  investigation, or someone who could provide conclusory evidence
13  or conclusive evidence with respect to the plaintiff's own
14  guilt.
15       With respect to the tape that Mr. Siegle and plaintiff

Page 13

7AG4ZHAC

16   showed Mr. Milan yesterday, Mr. Siegle is somewhat disingenuous
17   to the extent that he suggests that detective Milan was failed
18   in his responsibility to ever see this tape and had never
19   looked at this tape. This tape was in fact prepared by
20   plaintiff's expert, and I am looking at plaintiff's expert's
21   report, it was reformatted by a company called Now You See It
22   Investigative Services. So that additional information on the
23   videotape was now made visible. This information was not
24   visible on the tape that the detective had while he was in the
25   process of investigating this open homicide.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

29

7AG4ZHAC

1    THE COURT: With respect to the privilege log and the
2    claim of privilege, that is what we are going to do. The
3    defendants are to serve and file an affidavit by someone with
4    personal knowledge providing an evidentiary basis for any
5    claims of privilege with respect to each of these documents. I
6    emphasize each of these documents, not a global reference to
7    285 pages of documents, all of which are kind of similar, all
8    of which are significant in ways that prevent any disclosure.
9    There is also going to have to be a very specific
10   showing as to why, if there are particular pieces of sensitive
11   information, such as the identity of a suspect or identifying
12   information of a suspect, why the document cannot be produced
13   in redacted form.
14   That's to be done in one week. I suggest that you
15   accompany that with a memo of law explaining the legal basis
16   for your claims of privilege and of course in the meantime if
17   you decide that any of the privilege claims are not really
18   defensible, feel free to turn over the document either in
19   redacted or unredacted form to the other side as you deem
20   appropriate.
21   MR. GRAZIADEI: With respect to your order, your
22   Honor, does this pertain to every category.
23   THE COURT: It pertains to everything on this
24   privilege log.
25   MR. GRAZIADEI: I note the plaintiffs have not made an

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

30

7AG4ZHAC

1    argument for production of documents that reflect information
2    of the personal or personal information relating to the victim.
3    THE COURT: Correct. That's one they have not touched
4    on, so you need not respond to that.
5    MR. GRAZIADEI: Documents 316 to 413, those documents,
6    I will have to look at those documents specifically to see if
7    there are any additional arguments to be made.
8    THE COURT: Or whether the documents could be redacted
9    in a way to eliminate the identification of the individuals
10   that you reference in the privilege log which might still
11   provide useful and relevant information to the plaintiff.
12   MR. GRAZIADEI: Yes, your Honor.
13   THE COURT: You will have to deal with that. All of
14   the third category needs to be addressed.
15   MR. GRAZIADEI: With respect to the criminal
16   investigators course and the homicide investigators course,
17   your Honor, defendants have argued, and as they briefed in the
18   October 15, 2000 letter to the court, that disclosing
19   information of that nature is unnecessary for purposes of this
20   litigation.

Page 14

7AG4ZHAC

21    THE COURT:  Which is not a privilege argument per se.
22    MR. GRAZIADEI:  It's a law enforcement privilege
23 argument, your Honor, because the law enforcement privilege
24 does in fact cover, I do quote the Second Circuit, In Re
25 Department of Investigation of the City of New York.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

31

7AG4ZHAC

1    THE COURT:  I am well aware of what the Second Circuit
2 said in that decision as well as other decisions.  You may want
3 for some guidance to look at more recent decisions that have
4 applied those cases in pertinent contexts.  In any event, you
5 will also have to consider and address the question whether
6 even if you make an arguable showing that some of the training
7 materials are potentially sensitive, why their production on,
8 for example, an attorneys-eyes-only basis would pose such an
9 irremediable threat to law enforcement in the city that no
10 production should be made at all, if you can defend that
11 position.  In any event, that is an issue; you have to
12 recognize it.
13    One week after defendants' submission for plaintiff to
14 respond.  I will also ask that you include the transcript of
15 detective Milan's deposition.  If you need to order it
16 expedited, order it expedited.  To the extent there is a
17 dispute about what he said about whether there is an open
18 investigation, well it's not significant to the law enforcement
19 privilege, I am not saying it's necessarily definitive, but it
20 is a factor.
21    MR. GRAZIADEI:  Detective Milan, your Honor, testified
22 that as of the time he picked up the case in 2003, late in
23 2003, it may have been April 2003, that at that time he did not
24 consider it technically an open investigation, but that he
25 picked it up, although nothing had been done that he was aware

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

32

7AG4ZHAC

1 of for the previous six months in that investigation.
2    THE COURT:  I think rather than trying to narrate your
3 memory of what he said, it's going to be easier to order the
4 deposition transcript, both sides make whatever arguments they
5 want to make off the transcript, and I will consider it, but I
6 can't decide now anything based on what detective Milan did or
7 didn't say, because I have no idea what he did or didn't say,
8 and it's obviously in some dispute.
9    There was a reference by plaintiff to some documents
10 that were produced but with redactions and do not appear on the
11 privilege log.
12    MR. GRAZIADEI:  Those redactions were redacted or made
13 to those documents because they were not relevant or reasonably
14 calculated to lead to discovery of admissible evidence.  They
15 were simply portions of the patrol guide.  That had nothing to
16 do with the claims in this case.  They were not privileged
17 material.  We didn't assert privileges.  We just simply said
18 they are not responsive.
19    THE COURT:  For future reference, if you are going to
20 redact material, you have to communicate to the other side the
21 basis for the redaction.  If it's nonprivileged and you are
22 simply redacting on the basis of relevance, you have to inform
23 the other side so he is not left scratching his head, wondering
24 where on the privilege log are the redactions.  Normally
25 redactions are appropriate only for privileged material.

Page 15

7AG4ZHAC
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

33

7AG4ZHAC

1  MR. GRAZIADEI: I submit that many of these issues
2  could have been resolved had Mr. Siegle raised them prior to
3  filing the motion.
4  THE COURT: Let's put it this way; given what happened
5  before Judge Kaplan in the last week or two, both sides are
6  obviously under some extreme time pressures at this point which
7  is not going to prevent us from dealing with all of the open
8  issues that need to be dealt with. But I recognize, normally I
9  am the first one to say you have to talk to each other, but I
10  recognize that things have gotten perhaps out of control in
11  terms of getting things done, trying to cover all bases, on
12  both sides.
13  MR. GRAZIADEI: Yes, your Honor. I do submit that
14  defendants have made their best efforts to try to accommodate
15  what has become an extremely tight discovery schedule including
16  transporting and providing for deposition four officers who are
17  retired and three of which are out of state within the
18  discovery calendar. Part of defendants' motion, and this was
19  on the consent of plaintiff, was to conduct one retired officer
20  who is a nonparty to this litigation on October 22.
21  THE COURT: Detective Rivera.
22  MR. GRAZIADEI: Yes. We have tried to get him here in
23  advance of the October 18 deadline. He stated that he would be
24  willing to come for deposition, to present himself for
25  deposition without a subpoena in New York, but the earliest he

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

34

7AG4ZHAC

1  could it would be October 22.
2  THE COURT: That's fine. I am just going through my
3  notes to be sure that we are covering all bases. With respect
4  to the noticed depositions of both plaintiff attorneys, I am
5  not going to get into the substance of that. I don't have that
6  motion in front of me. I don't know that there has been a
7  response to it. In any event, since other depositions, at
8  least one other deposition was scheduled for that day, any
9  depositions of plaintiff's attorneys are going to be postponed
10  in any event pending resolution of the motion to quash.
11  Are there any other open issues that we have not
12  touched upon at this point.
13  MR. GRAZIADEI: With respect to the postponement of
14  plaintiff's counsel's depositions, we also requested documents
15  and/or in the alternative a privilege log with respect to those
16  documents. We respectfully request those be produced, while we
17  would be amenable to postponing and rescheduling with
18  plaintiffs their depositions.
19  THE COURT: That's something you should take up with
20  the witnesses whom you have subpoenaed. See if you can work
21  something out along those lines. What is the motion schedule
22  on this motion to quash at this point.
23  MR. SIEGLE: They served us with the subpoenas during
24  a deposition on Friday afternoon. By Friday evening, the
25  motion was submitted. So it's sub judice now. They have two

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

35

7AG4ZHAC

1  business days to respond. They should be responding today to

Page 16

7AG4ZHAC

2  our motion to quash as they should have responded to the motion
3  before court last week on October 11.
4          THE COURT:  Are there any other open issues at this
5  point on what has been presented by the plaintiff to the court.
6          MR. GRAZIADEI:  Yes, your Honor, there are.  With
7  respect to disciplinary materials, CCRB evaluations,
8  investigations, plaintiffs served their requests and defendants
9  timely served their responses on August 28, 2007.  We agreed to
10 provide performance evaluations at that time.  We did not
11 receive any objections to that response or attempt to resolve
12 that dispute until receiving their motion, this motion that's
13 before the court today, with respect to those disciplinary
14 matters.
15          THE COURT:  Did you provide the evaluations.
16          MR. GRAZIADEI:  We did, your Honor.  So this is the
17 first time we have had an opportunity to resolve this dispute.
18 The defendants have moved for a protective order pursuant to
19 26(f) because the issues --
20          THE COURT:  when.
21          MR. GRAZIADEI:  In response to their motion, your
22 Honor.
23          THE COURT:  I have received no response to their
24 motion.
25          MR. GRAZIADEI:  I filed it yesterday.
             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                          36

7AG4ZHAC

1          THE COURT:  I have not got it.
2          MR. GRAZIADEI:  I ECF'd it.  I apologize if you have
3  not had an opportunity to see our argument in this matter.  I
4  have my notes on it, but there is underlining.
5          MR. SIEGLE:  Your Honor, Judge Kaplan's rules provide
6  two business days to respond on a motion for discovery
7  requests.  This was responded to --
8          THE COURT:  I should note this is addressed to Judge
9  Kaplan.  Perhaps it's not a surprise we didn't see this.  In
10 any event, this is I think one of these bobbles that comes with
11 high speed.
12          MR. SIEGLE:  It's not a bobble.
13          THE COURT:  Let me quickly scan this.
14          MR. SIEGLE:  Sure.
15          (Pause)
16          THE COURT:  With regard to the disciplinary personnel
17 records and the like, have you provided a list of whatever
18 complaints were made so we have some idea whether they might be
19 relevant or not.
20          MR. GRAZIADEI:  No, your Honor.  We provided the
21 performance evaluations as we responded in our objections and
22 responses.  We did not receive any objections to our
23 objections.
24          THE COURT:  I know you told me that before.  My
25 question is in response to the current motion by the plaintiff,
             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                          37

7AG4ZHAC

1  you submitted this letter from October 15 in witch you argue
2  that among other things, quote, unsubstantiated allegations of
3  misconduct that have no similarity to the misconduct alleged in
4  the complaint and that are remote in time are clearly
5  irrelevant.
6          Putting aside whether that's a correct statement of
                         Page 17

7AG4ZHAC

7  the law or not, have you provided a list of the claims or
8  accusations that were made and how they were disposed so that
9  plaintiff or the court can judge whether these are
10  unsubstantiated allegations of misconduct that have no
11  similarity to the misconduct alleged in the complaint and that
12  are remote in time.  Have you done that.
13         MR. GRAZIADEI:  No, your Honor.
14         THE COURT:  How is the court, whether it be Judge
15  Kaplan or me, supposed to evaluate this argument without even
16  knowing whether or not any of the complaints or charges or
17  whatever were remote in time, what they were about, how they
18  were disposed of, whether they were deemed unsubstantiated.  We
19  can't indulge in extrasensory perception or mind-reading.  Why
20  have you not provided that information.
21         MR. GRAZIADEI:  In the letter with respect to at least
22  the law enforcement privileged documents and other documents we
23  claim privilege to, we suggested we would promptly forward the
24  court the documents for in camera review.  I would suggest the
25  same would be true for the disciplinary matters.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

38

7AG4ZHAC

1         THE COURT:  You are to provide by close of business
2  end of this week a list to the plaintiff of any charges, any
3  complaints, whether they be CCRB or IAB, whatever they are,
4  with respect to these defendants, officers or detectives,
5  dates, nature of charges, disposition.  You can, in fact I
6  think it is appropriate when you make your privilege submission
7  to include a section on these documents, so-called for want of
8  a better phrase, disciplinary personnel records we will call
9  them, you can submit those for in camera review.
10         Obviously, you are required to submit an affidavit
11  that will address in detail the particular harm that you claim
12  will arise if any of these documents, disciplinary documents,
13  are disclosed to the other side, whether to the other without
14  condition or to the other side on some limited basis such as
15  attorneys eyes only.  I know that the law department is fond of
16  have citing Thompson v. The City of New York.  I think you
17  should address yourself to the ream of decisions that are not
18  in accord with Thompson.
19         Any other open issues at this point.
20         MR. GRAZIADEI:  No, your Honor, but so I am clear, can
21  we have a list of the various orders.  I know that some
22  things --
23         THE COURT:  Order the transcript, and you should order
24  it on an expedited basis.
25         MR. GRAZIADEI:  With respect to the immediate

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

39

7AG4ZHAC

1  deadlines, I believe your Honor ordered that 26(a) disclosures
2  should be made within 24 hours, is that correct.
3         THE COURT:  What should be.
4         MR. GRAZIADEI:  The 26(a) disclosures with respect to
5  the witnesses.
6         THE COURT:  That's right.
7         Anything else at this time.
8         MR. SIEGLE:  Yes.  I don't want cut off Mr. Graziadei.
9  We deposed detective Milan yesterday, one of the defendants in
10  the case.  We are deposing detective Ng, the other named
11  defendant in the case today.  The city has refused to allow

Page 18

7AG4ZHAC

12  these officers to testify as to their training, to testify as
13  to their training in interrogation, their assessment of
14  probable cause, conducting identifications.
15       THE COURT:  Let me cut this short.  I am not going to
16  make a ruling in advance but I will tell you very clearly, if I
17  find that any of these directions not to answer were improperly
18  done, all of those people will have to be returned for further
19  deposition.
20       MR. GRAZIADEI:  I would like to clarify that most of
21  the questions Mr. Siegle just specified were not in fact asked.
22  With respect to --
23       THE COURT:  If they were not, it will be a moot point.
24       MR. GRAZIADEI:  With respect to the assertions
25  yesterday at detective Milan's deposition, I suggested that the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              40

7AG4ZHAC

1   reason for the direction not to answer was the motion pending
2   before the court, that in every instance I must have reiterated
3   at least five to ten times we should call the court for a
4   ruling so we could avoid that very circumstance if necessary,
5   and plaintiffs opted not to call the court.
6        THE COURT:  As I said, if it turns out that there were
7   directions not to answer that were inappropriate, the witness
8   will be required to return to complete the deposition.
9        MR. GRAZIADEI:  To avoid that circumstance from
10  happening in today's deposition, is it possible that we can
11  determine what is the scope of their required responses to
12  questions regarding the criminal investigators course, homicide
13  investigators course.
14       THE COURT:  You want a ruling now.  Tell me if you
15  want a ruling, I will give you a ruling.
16       MR. GRAZIADEI:  What I want to avoid, I know we have a
17  week to respond to our privilege on these matters, but that I
18  would like to avoid is the possibility that we assert a
19  privilege, direct a witness not to answer the questions, and
20  then find ourselves in a position where the court would
21  disagree with our position at the deposition.
22       THE COURT:  You can do it one of two ways, either have
23  a ruling now or you can choose to take your chances.
24       MR. GRAZIADEI:  What we asserted was that the proper
25  response to the question would be what was their practice,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              41

7AG4ZHAC

1   their experience, what was their knowledge, but not to answer
2   questions on what they are trained specifically in doing with
3   respect to the actual techniques that we asserted the privilege
4   for.
5        THE COURT:  I confess to you I cannot imagine how you
6   would defend that position.  If you want a ruling I would
7   reject that position.  If you want don't want a ruling, I will
8   await your papers.  Take your pick.
9        MR. GRAZIADEI:  Your Honor, it would be difficult to
10  assert a privilege with respect to materials that we consider
11  confidential because of law enforcement privilege then permit
12  defendants to actually testify as to everything that are within
13  those materials.
14       THE COURT:  Counsel, I am not going to beg.  You
15  either want a ruling or you don't want a ruling.  I am sure you
16  want a ruling in your favor now.  That's what you are asking
                              Page 19

7AG4ZHAC

17  for. That's not going to be given. If you want an adverse
18  ruling, if you want a ruling, now it will be an adverse ruling.
19  If you want me to wait for your papers, I will withhold
20  judgment, come to it with an open mind.
21          MR. GRAZIADEI:  Thank you, your Honor.
22          THE COURT:  What's your pick.
23          MR. GRAZIADEI:  We will be directed accordingly at
24  deposition and we will submit our papers as you ordered.
25          THE COURT:  Any other items.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

42

7AG4ZHAC

1           MR. SIEGLE:  One, very briefly, based on the court's
2   rulings today, I am going to ask the court, we brought this
3   case in federal court because we wanted an expeditious schedule
4   and we got it, based on the court's rulings, I am going to ask
5   for a brief 3-week enlargement from Thursday based on
6   everything that transpired today.
7           THE COURT:  I am not in a position at the moment to
8   deal with the overall extension of the discovery deadline. The
9   problem is the ordered reference from Judge Kaplan was to deal
10  with a discovery motion. I will set dates based on our
11  adjudication of all these issues on an issue-by-issue basis.
12  My assumption is, because I will tell you we have a call into
13  Judge Kaplan's chambers about that question, whether I am
14  permitted to deal with the overall schedule, and we have not
15  yet had a response. By the time some of this gets sorted out
16  in the next couple of days, we will undoubtedly have an answer
17  to the question. If either side, or both side want to make a
18  pitch for a movement of the general deadline back, you will be
19  free to do so.
20          MR. SIEGLE:  Just brief, a couple weeks.
21          MR. GRAZIADEI:  Thank you, your Honor.
22          THE COURT:  Thank you.
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
YANG FENG ZHAO,

              Plaintiff,      :      MEMORANDUM & ORDER

                        :

      -against-          07 Civ. 3636 (LAK)(MHD)

                        :
CITY OF NEW YORK et al.,

                        :
              Defendants.
------------------------------x

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


    Plaintiff seeks relief for what he claims are inappropriate

objections and answers by defendants to a set of requests for

admissions and a separate set of interrogatories and document

requests. Most of the Rule 36 requests are addressed to certain

video capacities of the Police Department during a period of time

relevant to the claims in this case. (Letter from Eric W. Siegle,

Esq., to the Court, Nov. 30, 2007.) The remaining requests concern

the authorship of certain notations in a police log book and the

question of whether several videotapes produced by plaintiff are

identical to a videotape in the possession of the Department.


    Most of the requests in dispute concern the dates of

acquisition of certain video equipment. Defendants have responded

that they are unable to make this determination, but they offer no

explanation for these assertions, either in their response or in

their opposition to plaintiff's application to the court. On its face, defendants' objection to these requests is meritless, and their assertion that they cannot obtain the information is entirely unexplained and indeed mystifying.

Defendants refer, however, to an apparently impending deposition of a witness from the Department's TARU unit, who may be able to provide the requested information. If that deposition has not yet taken place, we will adjourn defendants' obligation to answer in a responsive manner until one week after the deposition has been taken. If the deposition has already taken place, then defendants are to supplement their current responses to state what information they have that is responsive to these requests and what information they are unable to supply and why.

A further request seeks to determine whether all of the entries in a specific multi-page document were authored by Det. Vincenzo Romano. Again, the parties are unclear as to whether Det. Romano answered that question at his deposition, and defendants do not explain their response, stating in substance that they cannot answer the request. We direct that they provide a responsive answer.

The last disputed request asks whether several videotapes

2

provided by the plaintiff are identical to a videotape held by the Department. Defendants argue that this is a difficult question to answer because there may be slight technical adjustments to the videotapes supplied by plaintiff. The thrust of the plaintiff's inquiry seems to be whether defendants will contest the authenticity of the plaintiff's videotapes for purposes of admissibility. If defendants are unable to make a determination of identity, they are to so represent but indicate in their response the extent, if at all, of the congruence between their videotape and the plaintiff's proffered tapes.

The remaining dispute concerns one document reflecting the purchase of some video equipment by the Police Department. The defendants have redacted the price as irrelevant, but do not assert a privilege as to that piece of information. The information is at least marginally relevant under the liberal standards applicable to discovery, and in any event redaction is ordinarily inappropriate merely on the basis of a claim of irrelevance. Defendants are to produce an unredacted copy of this document.

Dated: New York, New York
        December 17, 2007

3

_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Memorandum and Order have been mailed today
to:

Eric W. Siegle, Esq.
Siegle & Sims L.L.P.
The Astor Building
217 Broadway
Suite 611
New York, New York 10007

John H. Graziadei, Esq.
Assistant Corporation Counsel
  for the City of New York
100 Church Street
New York, New York 10007