# SIEGLE & SIMS L.L.P.
*THE ASTOR BUILDING*
217 BROADWAY • SUITE 611
NEW YORK, NEW YORK 10007
TELEPHONE: (212) 406-0110
FACSIMILE: (212) 406-5259

ERIC W. SIEGLE                                                                                    JONATHAN D. SIMS

July 23, 2008

**VIA ECF & FACSIMILE**
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York 10007
Attn.: Michael H. Dolinger, U.S.M.J.

Re:   **Zhao v. City of New York et al.**
      **07CV.3636 (LAK)(MHD)**

Dear Honorable Judge Dolinger:

We are writing the Court in opposition to defendants' specious motion for an order pursuant to FRCP Rule 35,[1] which has been proffered by defendants in the eleventh hour herein to delay this litigation, as the request for examination and this application was recently made, despite the fact that defendants basis therefore is an expert report prepared by one of plaintiff's experts on or about August 26, 2007, which was served on defendants **on or about October 9, 2007.**

Moreover, contrary to movants counsel's misrepresentations, NOWHERE in the report of plaintiff's expert, Deborah Davis, PhD., a renowned expert on false confessions, does she opine, much less conclude, that plaintiff suffers from any mental condition, or that a mental condition rendered him particularly vulnerable to any specific interrogation techniques. Rather as a review of plaintiff's expert's report dated August 26, 2007, which was supplemented by report dated June 9, 2008 (attached hereto), reveals, Dr. Davis simply opines as to the unconstitutional conduct employed by defendants which might have caused plaintiff to confess and as to the inadequacy of the NYPD's training and procedures relative to custodial interrogations, including the intentional undermining of *Miranda,* among other things. Dr. Davis' report does not raise any issues as to plaintiff's mental condition, nor is there any other controversy in this litigation as to plaintiff's mental condition, and therefore, an examination of plaintiff pursuant to FRCP Rule 35 is unwarranted.

---

[1] Defendants' motion pursuant to FRCP Rule is made in contravention of this Court's Chamber Rules and Local Rule 37.2. Pursuant to this Court's Chamber Rules all discovery motions are subject to Local Rule 37.2 which requires that "[n]o motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the court and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference."

Letter to Hon. Michael H. Dolinger
Re: Zhao v. City et al.
July 23, 2008

  Contrary to defendants' misquoting of Dr. Davis' report in their application, nowhere therein does Dr. Davis state that Mr. Zhao is "particular[ly] 'vulnerable to interrogation tactics'" due to any mental condition that she or anyone else diagnosed. In fact on the very page of her report which defendants' cite in furtherance of their baseless application, Davis writes "[s]ince Mr. Zhao exhibited no propensity to confess voluntarily (he repeatedly denied the allegations prior to and during the use of multiple interrogation tactics), the false confession is clearly the result of the interrogation to which he was subjected." *See* defendants Ex. A, p.2, Opinion sect., para.2. Nowhere in Dr. Davis' report does she attribute the fact that plaintiff Zhao falsely confessed to his mental condition and in fact states that the main reasons he falsely confessed are as follows:

> It is my opinion that the interrogation of Yang Feng Zhao (henceforth YFZ) included coercive features known to increase the risk of false confession. Although there are many, I have summarized several of the most important below. Perhaps the most egregious of these are the excessive length, use of false evidence (including false statements that his exonerating witnesses were instead testifying to his guilt), explicit statements linking YFZ's choice to admit versus deny responsibility to reduced charges and the use of explicit threats to deport his family. This interrogation stands out with respect to the very explicit references to the link between the suspect's willingness to admit his involvement and "explain" what happened and the nature of the charges to be filed. It also stands out with respect to threats to the suspect's family and the use of physical force and intimidation.

*See* defendants' Ex. A, p.7, para. IV.

  Relative to *Miranda* warnings, Dr. Davis simply opined that the interrogating detectives herein should have taken care in administering those warnings because plaintiff was "relatively young, uneducated, not native to our culture, and from a culture with vastly different laws and human rights." She does **not** opine that greater care should have been taken because plaintiff suffers from any "mental condition." Nowhere in Dr. Davis' report, or anywhere else in this litigation, has plaintiff alleged that he suffers from any particular mental condition; although he did testify that after his false imprisonment wherein he was sexually abused, he initially had nightmares, which abated over a period of a few months, and was fearful of the police. Defendants have possessed Dr. Davis' report for nine months and had the opportunity to inquire of plaintiff about these things (ie. age, education, understanding of English, culture) at his numerous depositions; which they did. Moreover, defendants have had the opportunity to depose Dr. Davis as to her report and findings and have not done so.

  Contrary to defendants misreading and misquoting of Davis' expert report, plaintiff was not particularly vulnerable to any interrogation technique due to any mental condition, was not diagnosed by anyone, including Dr. Davis, with any mental condition, and therefore, an

SIEGLE & SIMS L.L.P.

Letter to Hon. Michael H. Dolinger
Re: Zhao v. City et al.
July 23, 2008

examination pursuant to FRCP 35 is not warranted herein. Rather, as testified by plaintiff and verified by Dr. Davis, plaintiff signed a confession prepared by defendant Ng because his free will was broken after physical abuse, threats of physical harm, threats to his family during numerous interrogation sessions, at different locations, by several officers (during which he repeatedly denied his involvement in the crime), and not due to any underlying mental condition. As a result, defendants should not be entitled to a mental examination of plaintiff. *Kunstler v. City of New York*, 2007 U.S.Dist. LEXIS 35534.

Here, as in *Kunstler*, plaintiff is not claiming to be suffering from any significant psychological injury, and is not claiming that any mental condition caused him to sign the false confession prepared by defendant Ng, and thus, defendants have not established good cause for ordering a mental examination.

The defendants also try to justify this baseless request for an examination on plaintiff's Notice of Claim, made pursuant to General Municipal Law 50-e, which is of no evidentiary significance in this litigation, and further, does not allege that plaintiff Zhao suffers from any particular mental condition.

Finally, defendants' claim that an examination is required as plaintiff has brought a pendent state claim sounding in Outrageous Conduct Causing Emotional Distress, recognized under New York Pattern Jury Instruction §3:6. While plaintiff has brought such a cause of action, there is no expert evidence that plaintiff suffers from or has been diagnosed with any particular medical/mental condition. The allegation of such a claim in a complaint, in and of itself, does not mandate a mental examination of plaintiff pursuant to FRCP 35. Plaintiff's mental condition is not in controversy. He did not testify that he suffered from any particular mental ailment, nor is their expert medical testimony being proffered by plaintiff that plaintiff suffers from any particular condition.

Accordingly, we respectfully request that the Court deny defendants' application for an of plaintiff pursuant to FRCP Rule 35.

Respectfully submitted,

SIEGLE & SIMS L.L.P.

Eric W. Siegle

cc: Jennifer Rossan, A.C.C. (via facsimile)
Afsaan Saleem, A.C.C. (via facsimile)

To:     Mr. Jonathan Sims

        Attorney at Law

From:   Deborah Davis, Ph.D.

Re:     Supplemental Report re Yang Feng Zhao

Date:   6-9-08


I have reviewed the following documents related to the training of Detective Ng regarding interrogation:

    Deposition testimony of Ng: 10-16 2007; 4-14-2008

    New York City Police Department Manual: Detective Guide NYC384

    Legal Bulletins, July 2007

    Specialized Training Section, Advanced Training Unit: Criminal Investigation Course (Revised 10/07)

    Cold Case: 2006 Homicide Seminar for the NYCPD December 22, 2005

    (1) The Nature of Mr. Ng's Training

Mr. Ng testified that he received training as follows: (1) the CIC course of the NYPD included about 1-1 ½ hours on interrogation of both suspects and witnesses, (2) a homicide course that included a lesson on interview and interrogation techniques (which was of unknown duration, but less than 1 day) (deposition, pp. 22-26). He described the training from the homicide course as 1 hr in deposition 2 (p. 80). He described this training as taking place 20 years ago (p. 32). Ng also testified that he had a refresher on interrogation at the Detective Bureau training of about 15-20 minutes (depo 2, p. 81).

Mr. Ng did not answer specific questions regarding the nature of this training during the first deposition, responding only that he was taught to "get the truth." During the second deposition, he repeated this focus on getting the truth, but added that they were not to use force, not to beat people up, but to learn more about the suspect to help get information from him (p. 82). Mr. Ng denied recalling all the training about *how* to get the truth. He also did not recall any training about what to do with a suspect who consistently denies involvement in the crime (p. 84).

Mr. Ng was ambiguous on whether he was specifically trained to make "mistakes" that the suspect must correct and/or initial in the written confession. (90-94, depo 2). However, he did

say "because you don't want later on an argument that I change it, why we cross. We make sure the case go to court, we know that was the original one.." (p. 94).

The following are my opinions regarding the nature and adequacy of training received by Mr. Ng, based on my review of these written materials and Mr. Ng's testimony:

2. Adequacy of Training

As compared to available training materials from formal interrogation training seminars by training organizations such as John Reid Associates, the FBI and others, and popular interrogation manuals such as Inbau, Reid, Jayne & Buckley (2001), the training materials of the NYPD are extremely informal, unorganized, and woefully incomplete. The website of John Reid Associates (Reid.com) claims that they have trained over 500,000 law enforcement officers at all levels since 1974. Indeed, inspecting their online training schedule, one can see that they currently have seminars scheduled all over the country, including in NYC. Other training agencies offer similar training, as do many individual law enforcement agencies and departments. The Reid interrogation technique or the individual components it embodies are employed widely by officers at all levels, including those who have learned it by observation of other officers.

This training is quite comprehensive, including specific techniques for conducting pre-interrogation interviews, for evaluating truthfulness and likely guilt, and for how to conduct the interrogation. While the Reid technique does entail risk for eliciting false confessions, it includes some training intended to minimize that possibility. This includes training that (1) specifically prohibits use of legally impermissible threats, promises, or physical coercion (and gives examples of permissible versus impermissible statements regarding incentives or consequences), (2) includes suggestions of how to evaluate when denials may be truthful, and (3) covers conditions under which the interrogation should be stepped down or terminated.

It should also be noted that the interrogation manual for the Reid technique is now in the fourth edition, the first of which was more than 20 years ago, and available during the time Mr. Ng refers to for his training.

The NYPD materials have in common with the Reid technique the following features:

(1) Aspects of instructions regarding the interrogation room

(2) The importance of learning as much as possible about the suspect during the pre-interrogation interview phase,

(3) The importance of establishing rapport with the suspect

(4) The importance of controlling the interaction with the suspect at all times during interrogation

(5) Confronting the person with the accusation

(6) Confronting the person with true or false evidence of guilt

(7) Telling the suspect he can help himself during the interrogation

(8) Giving them an apparent escape, such as self-defense or accident (theme development in Reid terms)

(9) Not yelling or using physical coercion

(10) Taking the confession in both written and video form

(11) Inserting deliberate errors in written statements or confessions, to make the statements more credible to others that the statement is accurate and from the suspect

The NYPD materials also include material not typical of other training organizations and materials that is intended to violate the spirit of *Miranda*. That is, they instruct officers to tell the suspect to listen carefully to each question and answer either yes or no. But, "when you get to question number five explain to them 'Before I ask the next question keep in mind that if you say anything other than yes, I can't talk to you anymore and you won't get to tell your side of the story,' then ask them number five." This amounts to a form of threat of negative consequences if the suspect chooses to invoke *Miranda* rights.

Most of the instructions in the NYPD written materials are given in one or a few sentences, without detailed instructions and examples. Further, Mr. Ng testified that his combined training by the NYPD consisted of approximately 2 – 2 ½ hrs. In contrast, Reid seminars and training manuals involve three full days of onsite initial training, follow-up advanced seminars, and hundreds of written pages of instructions and examples. It is my opinion that it is impossible to give adequate instruction regarding interviewing and interrogation in 2-3 hours, and by way of the written materials submitted in this case.

Although I have referred to Reid and similar training as embodying the standards of the industry, these and other agencies fail to devote adequate attention to the issue of false confessions, how to avoid inducing them, and how to recognize them when they occur. The Reid training does include recognition that they can occur, but attributes them exclusively to improper interrogation technique. It also does devote some attention to when one should conclude that the suspect may be innocent and step down the interrogation. However, the NYPD training materials appear to devote no attention to the issues of false confessions and when and why they occur, or how to recognize them. This issue is vitally important, since false confession do, in fact, occur with some frequency. Recent surveys of police across the country have indicated that even police officers believe approximately 1 in 20 confessions they take are false. This can only be regarded as the tip of the iceberg, since police are unlikely to recognize all false confessions.

New York police have taken a number of known false confessions. In fact, a recent publication of the Innocence Project specifically regarding New York State has shown that whereas approximately 25% of all those exonerated by the project were convicted in part via false confessions, for New York State approximately 43% were convicted in part due to false confessions. Such findings emphasize the need for greater training directed toward detecting innocence as well as collecting admissions of guilt.

The final issue that remains unaddressed by the NYC training materials, as well as by other training materials and organizations, is the requirement to video (or at least tape) record all interactions with suspects. As of this spring, 9 states and the District of Columbia require recordings of all interrogations. In addition, some jurisdictions in all states require such recordings. Advocates recommend recording for two general purposes: (1) to deter inappropriate interrogation techniques such as physical abuse or inappropriate verbal threats and promises, and (2) to preserve an objective and complete record of what actually transpired. In the present case, Zhao has alleged physical threats and abuse as well as inappropriate verbal threats and promises of leniency and other misbehaviors. Such behaviors are less likely to occur when interrogations are recorded, but if they do occur, they are at least accessible to scrutiny and available as proof of any claims. A number of reports among those using recordings have shown that police like the practice, in that it protects them against allegations of wrongdoing. It protects all concerned against the faulty memories or falsehoods of others.