

| | | |
|---|---|---|
| MICHAEL A. CARDOZO<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | Afsaan Saleem<br>*Senior Counsel*<br>Telephone (212) 788-9580<br>Facsimile (212) 788-9776 |

August 7, 2008

**BY HAND DELIVERY**
Honorable Lewis A. Kaplan
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re: *Zhao v. City of New York, et al.*, 07 CV 3636 (LAK) (MHD)

Your Honor:

   I am an Assistant Corporation Counsel in the Special Federal Litigation Division of the New York City Law Department and one of the attorneys assigned to this matter. Defendants respectfully request permission to move to exclude the testimony of plaintiff's expert, Deborah A. Davis, Ph.D., in its entirety, as her testimony is inadmissible under Rules 401, 402, 403, 702 and 704 of the Federal Rules of Evidence. In the alternative, if this Court is inclined to permit all or part of Davis's testimony, defendants request permission to conduct an examination of plaintiff pursuant to Fed. R. Civ. P. 35 and, pursuant to Fed. R. Civ. P. 72, and file this objection to Magistrate Michael H. Dolinger's July 24, 2008 decision ("July 24 decision") denying defendants' motion to compel plaintiff to submit to a mental examination. See Exhibit A, Order of Hon. Michael H. Dolinger, dated July 24, 2008.[1]

   Plaintiff filed a Section 1983 Civil Rights complaint on May 8, 2007, alleging, *inter alia*, false arrest and malicious prosecution claims arising out of his arrest and prosecution for the December 11, 2001 murder of a bouncer at a karaoke club in Queens. Plaintiff alleges, *inter alia*, that he was coerced into confessing to the crime. Plaintiff was indicted by a grand jury and after 11 months in custody, the Queens District Attorney's office dismissed the indictment. Plaintiff brings claims under state and federal law for false arrest, malicious prosecution, excessive force, violation of his due process rights under the Fifth and Fourteenth Amendments, assault, battery and intentional infliction of emotional distress ("IIED"). See, generally, Exhibit

---

[1] This Court's individual practices require a pre-motion conference for discovery disputes only. Because the discovery dispute at issue is an appeal pursuant to Fed. R. Civ. P. 72, and is inextricably intertwined with defendants' request to preclude plaintiff's expert testimony, defendants have proceeded in this manner.

B. Amended Complaint. Fact discovery concluded on June 13, 2008 and expert discovery was scheduled to close on August 15, 2008.[2]

Plaintiff submitted a report by Deborah Davis, Ph.D., dated August 26, 2007, and a supplemental report by Davis dated June 9, 2008. In her August 26th report, Davis opines that "the confession obtained from Mr. Zhao was clearly false." See Exhibit C, p. 2. In her June 9th report, Davis purports to opine on the nature and adequacy of training received by a defendant detective, concluding that deficiencies in his training led to plaintiff's allegedly false confession. See Exhibit D. For the reasons set forth below, Davis's testimony should be precluded in its entirety.

I.  **Preclusion of the Testimony of Deborah Davis, Ph.D.**

**A. The Proffered Testimony of Davis Fails to Meet Standards of Admissibility and Reliability**

Defendants seek to preclude Dr. Davis from testifying at trial or submitting any evidence because her testimony is inadmissible under Rules 401, 402, 403, 702 and 704 of the Federal Rules of Evidence. Rule 702 of the Federal Rules of Evidence sets out the standard of admissibility for experts. The rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony must establish its admissibility. See Astra Aktiebolag v. Andrx Pharms., Inc., 222 F. Supp. 2d 423, 487 (S.D.N.Y. 2002) (citing Fed. R. Evid. 104(a) and Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)); Cayuga Indian Nation v. Pataki, 83 F. Supp. 2d 318, 322 (N.D.N.Y. 2000) ("It is the proponent's burden . . . to establish admissibility, rather than the opponent's burden to establish inadmissibility.") (internal quotations omitted).

Plaintiff offers Davis's testimony in support of his contention that he was coerced into falsely confessing to the homicide for which he was arrested and prosecuted. So-called "expert" testimony about whether a confession is true or false has been routinely excluded by courts because, as Davis herself has admitted under oath, there is no scientifically reliable method of demonstrating that a confession is either true or false. United States v. Wright, 2008 U.S. Dist. LEXIS 15668, *9-10 (M.D. La. Feb. 29, 2008). Therefore, by plaintiff's expert's own

---

[2] The expert discovery deadline was extended by Hon. Michael H. Dolinger on this date from August 15, 2008, to September 15, 2008.

- 2 -

admission, the testimony he seeks to offer fails to meet the standards of admissibility and reliability. Federal and New York courts have precluded expert's from testifying about both a defendant's alleged susceptibility to police interrogation techniques and about whether a confession is true or false. See Shaw v. Miller, 2001 U.S. Dist. LEXIS 8715, *8-13; (E.D.N.Y. 2001)(on habeas review, District Court concluded that trial court properly precluded expert testimony about plaintiff's susceptibility to police questioning); People v. Days, 31 A.D.3d 574, 817 N.Y.S.2d 535 (2d Dept.), lv. den. 7 N.Y.3d 811, 855 N.E.2d 802, 822 N.Y.S.2d 486 (2006)(affirming trial court's exclusion of expert testimony about defendant's susceptibility to police interrogation tactics); People v. Rosario, 2008 N.Y. Slip Op. 28187, 20 Misc. 3d 401; 2008 N.Y. Misc. LEXIS 2906 (collecting cases). But see United States v. Raposo, 1998 U.S. Dist. LEXIS 19551, *13-18 ( S.D.N.Y. Dec. 16, 1998)(admitting expert testimony by clinical psychologist about psychological characteristics of defendant that may have made him more prone to falsely confessing only after psychologist conducted tests accepted in the scientific community and that were administered according to appropriate standards). Because plaintiff cannot demonstrate that Davis used a scientifically reliable method of arriving at her conclusions, her testimony must be precluded in its entirety.

Earlier this year, Davis was precluded from offering the same type of testimony that plaintiff seeks to offer here. See United States v. Wright, 2008 U.S. District LEXIS 15668, 06-150-JVP-CN (M.D. La. February 29, 2008). In Wright, Davis admitted that there is no scientifically reliable method of demonstrating the truth or falsity of a confession. Id. at 10. Davis also admitted in Wright that she did not discuss the circumstances involving the confession with either the criminal defendant or the interrogating officers. Id. at * 5. Similarly, here, Davis conducted one brief telephone interview with plaintiff, through an interpreter, for the sole purpose of asking him about cross-outs on the confession. See Exhibit C, p. 11. There is no indication that Davis sought or obtained any other information from plaintiff or that she interviewed the defendant detective who conducted the questioning of plaintiff. See Exhibit C. Here, as in Wright, Davis based her expert opinion entirely on articles and materials written by others that she read and on data that she allegedly obtained from the Innocence Project. See Exhibit C. In this case, as in Wright, Davis's testimony should be precluded in its entirety.

**B.   Davis's Testimony and Conclusion that Plaintiff's Confession Was False Invades the Province of the Jury**

Defendants further object to the admission of Davis's testimony and conclusions as it will usurp the function of the jury. Davis opines that plaintiff's confession was false. See Exhibit C, p. 2. However, the questions of whether plaintiff's confession was "coerced" and whether it was "false" are ones to be decided by the jury.

Davis's testimony, in its entirety, runs afoul of the prohibition on expert testimony that does little more than "tell the jury what result to reach." United States v. Duncan, 42 F.3d 97, 101 (1994) ("when an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury. When this occurs, the expert acts outside his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed decision."); see also Hygh v. Jacobs, 961 F. 2d 359, 363-64 (2d Cir. 1992) (quoting Fed. R. 704 advisory committee's note) (in an excessive force case, expert testimony that arresting officer's conduct was "not justified under the circumstances" should have been excluded as "conclusory condemnation" that merely

told jurors what result to reach); United States v. Bronston, 658 F. 2d 920, 930 (2d Cir. 1981) (expert testimony should have been excluded as conveying nothing more than expert's belief as to how the case should be decided); In re Rezulin Products Liab. Litigation, 309 F. Supp. 2d 531, 542, n. 23 (S.D.N.Y. 2004).

Davis's opinion is merely a rendition of evidence proffered to her by the plaintiff in which she chooses what evidence to credit, what to discount, and what inferences to draw from the evidence. None of Davis's conclusions are the result of any commonly-accepted procedure, methodology or expertise in any field.

The jury must determine whether the tactics that *the jury concludes* were used by the officers were justified. In this case, witness testimony is readily available to the jury from which to decide all questions regarding plaintiff's claims that he was coerced into falsely confessing. Davis's testimony can add nothing to that analysis. A jury does not require Davis's help to determine whether plaintiff falsely confessed to the homicide.

As the Second Circuit recently reiterated, "expert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying the law to the facts before it," United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991), by definition does not "aid the jury in making a decision;" rather it "undertakes to tell the jury what result to reach," and thus "attempts to substitute the expert's judgment for the jury's," United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994)." Nimely v. City of New York, 414 F.3d 381, 297 (2d Cir. 2005).

Davis can serve no purpose other than to summarize and interpret evidence that can be understood by the jury without her assistance and deliver a "summation from the witness stand." Lippe v. Bairnco Corp., 288 B.R. 678, 687-88 (S.D.N.Y. 2003) (excluding purported expert witness who merely summarized and interpreted evidence that was otherwise understandable by the jury); see Linkco, Inc. v. Fukitsu Ltd., 00 Civ. 7242, 2002 U.S. Dist. LEXIS 12975, *6 (S.D.N.Y. July 16, 2002) (an expert does little more than what "counsel for plaintiff will do in argument, i.e., propound a particular interpretation of defendant's conduct," that testimony is not admissible). Expert testimony is not permitted to state that officers acted "properly" or "improperly," or reasonably or unreasonably, or that their conduct was "justified" or not justified. See Hygh, 961 F.2d at 364.

Therefore, for the reasons set forth above, and for additional reasons that defendants will set forth if the Court grants this application, defendants respectfully request permission to move to exclude Davis's testimony in its entirety.

## II. Appeal Pursuant to Fed. R. Civ. P. 72(a) of Hon. Michael H. Dolinger's Order dated July 24, 2008

### A.  Procedural History

After plaintiffs produced their expert reports, and prior to the July 29 due date for defendant's expert reports, defendants contacted plaintiff on July 18th to seek their consent to conduct a mental examination of plaintiff. In her report dated August 26, 2007, plaintiff's expert, Deborah Davis, Ph.D., opined that the confession obtained from Mr. Zhao "was clearly

- 4 -

false." See Ex. C, p. 2. In arriving at her opinion, Dr. Davis described Mr. Zhao as both "vulnerable" to misunderstanding his Miranda rights and "vulnerable" to interrogation tactics, which, according to Davis, caused him to falsely confess to having committed a homicide. See Ex. C, pp. 2, 7-8. According to Davis, because Mr. Zhao was "relatively young, uneducated, not native to our culture, and from a culture with vastly different laws and human rights," he was particularly vulnerable to misunderstanding his Miranda rights. See Ex. C, p. 7-8. Further, Davis opines that Mr. Zhao's vulnerability to interrogation tactics was "increased by a lack of real knowledge or rights, or police prerogatives versus limitations, and other information concerning the legal system." See Ex. C, p. 8. Davis also suggests that Mr. Zhao may have well possessed "exaggerated views of police power (including the ability to deport his family) that would not characterize native Americans to such a degree." Id.

In order to rebut the conclusions drawn by plaintiff's expert about plaintiff's purported susceptibility to police interrogation tactics, defendants sought his consent to submit to a mental examination. On July 21st, plaintiff indicated that he would not consent to an examination. On July 22nd, defendants moved to compel plaintiff to submit to a Rule 35(a) examination.[3] Plaintiff opposed the application on July 23rd. On July 24th, Magistrate Dolinger issued an order denying defendants' motion to compel. See Exhibit A.

### B. Legal Standard

Pursuant to Rule 72(a), non-dispositive pretrial orders are reviewed according to the deferential "clearly erroneous or contrary to law" standard. Fed. R. Civ. P. 72(a). Discovery matters, such as orders compelling the production of documents, "generally are considered 'nondispositive' of the litigation" and can only be reversed if they are clearly erroneous or contrary to law. See Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990); see also Adrian v. N.Y. City Transit Auth., 96 Civ. 6204, 1997 WL 1068713, at * 2 (E.D.N.Y., June 13, 1997).

### C. Argument

In this instance defendants respectfully submit that the July 24 decision was clearly erroneous or contrary to law. As a preliminary matter, the Court was incorrect in determining that the defendants' application was "manifestly untimely." While fact discovery concluded on June 13, 2008, expert discovery was set to conclude August 15, 2008, but as set forth above, was extended to September 15, 2008. The parties had revised the scheduling order to reflect when each side's disclosures were due. The defendants application was made a week before their expert reports were due. The Court found that the purported untimeliness of defendants' motion to compel a Rule 35(a) exam was sufficient grounds for denial. However, other courts have permitted defendants to conduct an examination of plaintiff after receiving plaintiff's expert reports. In Peters v. Nelson, 153 F.R.D. 635 (N.D. Iowa 1994), a case cited by courts in this Circuit, the court granted defendants motion to compel plaintiff to be examined by a neuropsychologist when defendants made their request during expert discovery, and after the exchange of plaintiff's expert.

---

[3] Defendants were ordered to exchange their expert reports by the July 29, 2008.

In evaluating whether or not to grant a motion to compel a mental examination pursuant to Fed. R. Civ. P. 35, the trial judge is required to decide whether the moving party "has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" Schlagenhauf v. Holder, 379 U.S. 104, 85 S. Ct. 234, 13 L. Ed. 2d 152 (1964). In this case, plaintiff has clearly placed his mental condition "in controversy" by asserting a claim for intentional infliction of emotional distress ("IIED"). The Court held that defendants must show that plaintiff is continuing to suffer from the effects of "nightmares" and "fear of the police," in order to justify a Rule 35(a) mental examination A review of the caselaw on this subject reveals that it is enough that plaintiff brings forth a claim for IIED to justify a Rule 35(a) mental examination. In Bridges v. Eastman Kodak Co., 850 F. Supp. 216 (S.D.N.Y. 1994), the court, in reviewing cases, concluded that "most cases where mental examinations have been allowed have either involved a separate tort claim for emotional distress, or an allegation of ongoing severe mental injury. Id. (internal citations omitted). See also Jarrar v. Harris, 2008 U.S. District LEXIS 57307 * 16, 07 Civ. 3299 (JO) (E.D.N.Y. July 25, 2008); (on the of the bases for denying motion to compel was that "Jarrar has not brought a separate claim for intentional infliction of emotional distress."); Hirschheimer v. Assoc. Minerals & Minerals Corp., 1995 U. S. Dist. LEXIS 18378, 94 Civ. 6155 (JKF) (S.D.N.Y. December 12, 1995) (motion granted where plaintiff pled a separate tort claim for emotional distress); Turner v. Imperial Stores, 161 F.R.D. 89, 98 (S.D. Cal. 1995) (one of the bases for denying motion to compel was because "Turner has not brought a cause of action for either intentional or negligent infliction of emotional distress.").

In addition, courts have rejected the argument put forth by the plaintiff, and endorsed by Judge Dolinger, that an examination is not warranted because "plaintiff is not claiming a mental disorder or condition, and will not call any medical expert." (Ex. A, p. 5). "Courts will order a mental exam when emotional distress is an element of plaintiff's claim even when the plaintiff has stipulated that she will not support those claims with medical evidence." In re: MTBE Products Liability Litigation, 528 F. Supp. 2d 303, (S.D.N.Y. November 29, 2007) (citing Gattegno v. PricewaterhouseCoopers, LLP, 204 F.R.D. 228, 232 (D. Conn. 2001)). The court in Gattegno reasoned that because plaintiff has asserted a separate and independent cause of action for infliction of emotional distress, the court is "not willing to find a waiver of an entire count based simply on the plaintiff's counsel's statements in a letter to the defendant (and repeated in the memorandum in opposition)." Id. The court concluded that "if the plaintiff wishes to remove her mental state from controversy, she may seek leave to amend the complaint to remove such allegations." Id. at 233.

In denying defendants' application, Judge Dolinger concluded that a "mental condition or disorder" was not implicated by Davis's conclusions. "There are two primary ways in which the mental or physical condition can be placed 'in controversy.' The first is where the mental or physical condition of the person is placed in issue by *another* party. In cases where the defendant seeks to make the plaintiff's mental state an issue, the defendant bears the burden of showing that the plaintiff's mental state is in controversy." Womack v. Stevens Transport, Inc., 205 F.R.D. 443 (E.D. Pa. 2001). In this instance, plaintiff has placed his mental issue "in controversy" by virtue of Davis's report, which opined about plaintiff's background, culture, age, educational level, knowledge of his rights and perception of police power, all of which allegedly contributed to his purported susceptibility to interrogation techniques, which in turn resulted in his allegedly false confession. See Exhibit C.

Moreover, defendants need not establish that plaintiff suffer from a "mental condition or disorder" in order to warrant a mental examination. Courts have held that cognitive and intellectual abilities can constitute the type of "mental condition" that may be evaluated in a Rule 35 examination. See Mohamed v. Marriott International, Inc., 1996 U.S. Dist. LEXIS 2788, 94 Civ. 2336 (RWS) (S.D.N.Y. 1996) (court ordered a Rule 35 mental examination to determine a sign language interpreter's ability to sign). In Large v. Our Lady of Mercy Medical Center, 1998 U.S. Dist. LEXIS 1702, 94 Civ. 5986 (JGK) (THK) (S.D.N.Y. 1998) the court granted defendant's application for a Rule 35 psychiatric examination where defendant's expert opined that plaintiff may be diagnosed as suffering from paranoia. The court found that that fact would be "directly relevant to her credibility and the accuracy of her perceptions of the events which she relies upon as evidence of the discrimination and retaliation she alleges." Id. at * 18. See also Hodges v. Keane, 145 F.R.D. 332 (S.D.N.Y. 1993) ("plaintiff's mental condition is relevant not only to the extent of his past pain and suffering, but to its cause---i.e., to the very existence of the claimed Section 1983 violations). As these cases illustrate, plaintiff has put his mental condition "in controversy" by virtue of Davis's report.

Finally, defendants have established "good cause" because the independent medical examination ("IME") is the only means available to defendants to truly test whether in fact plaintiff's sociological status made him more "vulnerable" to police interrogation and whether he in fact possessed "exaggerated views of police power." See Waggaman v. Villanova Univ., 2007 U.S. District LEXIS 36764 *3, 04-4447 (E.D. Pa. 2007) (district court upheld the magistrate's decision to order the IME finding that defendant had "no alternative discovery procedure available to ascertain plaintiff's emotional state."). In addition, as set forth in Point I A, *supra*, the one Court in this district that permitted expert testimony about a defendant's purported susceptibility to falsely confess did so only after it was satisfied that the expert conducted scientifically accepted tests before arriving at his opinion. See United States v. Raposo, 1998 U.S. Dist. LEXIS 19551, *13-18 ( S.D.N.Y. Dec. 16, 1998)(admitting expert testimony by clinical psychologist about psychological characteristics of defendant that may have made him more prone to falsely confessing only after psychologist conducted tests accepted in the scientific community and that were administered according to appropriate standards).

If plaintiff is permitted to introduce Davis's testimony, defendants submit that they are entitled to have their expert conduct testing on plaintiff in order to determine whether he was in fact "vulnerable" to interrogation techniques. See Exhibit E.

For the reasons set forth above, defendants request that they be permitted to move to exclude the testimony of Deborah Davis. In addition, if this Court is inclined to permit the testimony of Davis, defendants respectfully request that it reverse the Magistrate's July 24, 2008 decision and order plaintiff to submit to a Rule 35 mental examination.

Respectfully submitted,

Afsaan Saleem
Assistant Corporation Counsel

cc:   Eric Siegle, Esq. (via fax w/out encl)