UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

YANG FENG ZHAO,

                                        Plaintiff,

         -against-

CITY OF NEW YORK, DETECTIVE NGA
CHEUNG NG, DETECTIVE BILLY MILAN,
SGT. BRIAN CONLON and "JOHN DOE #2,"

                                        Defendants.
------------------------------------------------------------------x

Docket #: 07CV3636 (LAK)

**AMENDED COMPLAINT**
(JURY TRIAL
REQUESTED)



Plaintiff, YANG FANG ZHAO ("ZHAO") complaining of the defendants CITY OF

NEW YORK ("CITY"), DETECTIVE NGA CHEUNG NG ("NG"), DETECTIVE BILLY

MILAN ("MILAN"), SGT. BRIAN CONLON ("CONLON"), and "JOHN DOE #2"

(collectively "DEFENDANTS") herein, by and through his attorneys SIEGLE & SIMS L.L.P.,

alleges the following upon information and belief:

## INTRODUCTION

1. On or about December 11, 2001, inside the Golden Box Karaoke Club, 40-52 Main

Street, Flushing, New York, Danny Cabezas, the doorman/bouncer at the location, was stabbed

to death by an unknown third person. ZHAO was a patron of the club that night.

2. On the night of said murder, the matter was investigated by members of the New York

City Police Department who definitively established that ZHAO was located in a different part of

the club at the time of the murder and could not have been responsible for the crime.

3. Despite this information, with little or no further investigation conducted by DEFENDANTS into the murder of Danny Cabezas, almost four years after said murder, with intentional and/or in reckless disregard for the truth, on October 24, 2005, plaintiff ZHAO was falsely arrested and imprisoned, maliciously prosecuted, assaulted, battered, interrogated and unlawfully searched, by DEFENDANTS, their agents, servants and/or employees in violation of ZHAO's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, United States Code, Title 42, § 1983 and Article 1, §12, and Article 2, § 8 of the Constitution of the State of New York.

4. Upon his arrest, in an effort to obtain a confession, DEFENDANTS threatened, assaulted, battered, intentionally inflicted emotional distress and/or otherwise negligently inflicted emotional distress on ZHAO, causing ZHAO to sign a false confession written by NG, which DEFENDANTS, their agents, servants and/or employees knew or should have known was false and of no merit.

5. Subsequently, ZHAO was maligned, defamed, libeled, and slandered, by DEFENDANTS, their agents, servants and/or employees who published that ZHAO had confessed to a murder which DEFENDANTS' knew or should have known he did not commit, with intent to injure ZHAO and deceive the public, in reckless disregard of the truth.

6. As a result of DEFENDANTS' conduct, ZHAO was incarcerated for approximately eleven months and prosecuted for the murder of Danny Cabezas. At the insistence of ZHAO's counsel, the Queens County District Attorney's Office conducted a post-arrest, post-indictment investigation of ZHAO's claims of innocence. Upon completion of said investigation, ZHAO

was released from custody and the indictment pending against him was dismissed with prejudice.

7.   By this action ZHAO seeks to recover monetary damages, including attorneys fees, caused by the intentional and/or negligent acts and omissions of the DEFENDANTS, their agents, servants and/or employees.

## JURISDICTION

8.   Jurisdiction is founded on the existence of a federal question, United States Code, Title 28, § 1331, as the action arises, in part, under the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States and United States Code, Title 42, § 1983, as hereinafter more fully appears. Additionally, jurisdiction is founded in part on United States Code, Title 28, §§ 1343 and 1367.

## PARTIES

9.   ZHAO is a natural person who resides in the County of New York, State of New York.

10.   Defendant, CITY OF NEW YORK, was and is a municipal corporation organized and existing under and by virtue of the laws of the State of New York.

11.   At all times mentioned hereafter, defendants NG, MILAN and CONLON were employees of defendant CITY and at all times referred to hereafter, were working for and acting within the scope of their employment, and under color of state law, for defendant CITY.

12. Defendant, JOHN DOE #2, was and is an employee of defendant CITY, and at all times referred to hereafter, was working for and acting within the scope of his/her employment, and under color of state law, for defendant CITY.

13. On or about November 14, 2006, before the commencement of this action, a Notice of Claim on behalf of ZHAO was served in writing sworn to by or on behalf of the claimant by delivering same by personal service upon defendant CITY, which said Notice of Claim set forth the name and post office address of claimant and claimant's attorneys, the notice of claim, the time when, the place where, and the manner in which the claim arose, and the items of damages or injuries claimed to have been sustained as far as then practicable.

14. Said Notice of Claim was presented and delivered to defendant CITY within ninety (90) days after the claim herein sued upon arose and before the commencement of this action.

15. On January 19, 2007, ZHAO was examined by defendant CITY at a hearing conducted pursuant to section 50h of the Municipal Law of the State of New York.

16. This action was commenced within one year after such cause of action arose and more than thirty (30) days have elapsed since the service of this claim or such claim was presented, and defendant CITY has failed and/or refused to make an adjustment or payment of said claim.

## FACTS

17. On or about December 11, 2001, ZHAO was a patron of the Golden Box Karaoke club located at 40-52 Main Street, Flushing, New York.

18. On or about December 11, 2001, Danny Cabezas was employed by and working at the Golden Box Karaoke club as a bouncer/doorman.

19. On or about December 11, 2001, at approximately 2:10 a.m., inside the Golden Box Karaoke Club, Danny Cabezas was stabbed to death by an unknown third person in the area of the second floor doorway entrance to the club.

20. At the time of the stabbing, ZHAO was in another part of the club and could not have committed the murder.

21. After being stabbed in the entrance area, Danny Cabezas stood against a wall, clutched his chest, and then stumbled to the main hallway of the club, where he collapsed and fell to the floor.

22. At approximately the same time as Danny Cabezas fell, ZHAO walked passed him while heading toward the exit.

23. Shortly after the stabbing, numerous members of the New York City Police Department arrived at the Golden Box Karaoke Club and began conducting an investigation into the stabbing of Danny Cabezas.

24. As part of its investigation, on or about December 11, 2001, several witnesses to the murder were interviewed by DEFENDANTS, including the two managers from the location.

25. On December 11, 2001, at approximately 4:10 a.m., Yun Chen, a waitress working that night at the Golden Box, was interviewed by defendant NG.

26. Ms. Chen informed defendant NG that at approximately 2:00 a.m. there was a fight in the club. The fight was between Danny Cabezas and the patrons of room 6. George and Peter helped to break up the fight. A few minutes later Danny escorted the customers to the stair area to show them out. Ms. Chen then went into room 6, to make sure things inside the room were alright. After a brief time she exited room 6 and walked back toward the entrance/exit of the club. As she walked near room 8, she saw Danny walking back from the stairway area. Danny was holding his chest and was bleeding from the stomach area. Danny then fell down slowly to the floor in front of room 9.

27. On or about December 11, 2001, at approximately 4:00 a.m., another waitress employed by the Golden Box, Yuhua Huang, was interviewed by another detective from the New York City Police Department, Richard Maline.

28. Ms. Huang informed Detective Maline that she stopped working at approximately 2:00 a.m., at which time she went into room 9 to read a book. She heard some yelling and looked out of the room but saw nothing. After a few minutes she got up to leave the room. When she exited the room she did not see anyone. Then she went and stood by the bathroom and saw several people walking down the stairs to leave. She then saw Danny walk passed her

holding his chest. He took a few steps passed her and then fell to the floor. When Danny fell to the floor she called 9-1-1.

29. On or about December 11, 2001, at approximately 3:55 a.m., Peter Yee, the Assistant Manager of the Golden Box, was interviewed by Detective Sergio Rivera.

30. Mr. Yee informed Detective Rivera that Danny Cabezas was a part-time doorman and bouncer for the Golden Box. He stated that he was present in the Golden Box that night and Danny was working. During the night, while he and the manager of the Golden Box, George Huang, were inside room 5 playing cards, he heard Danny arguing with a couple of Asian males, then he heard the walls banging. At that time he and the manager, George Huang, ran out of the room and saw Danny fighting with approximately six Asian men. George and Peter helped break up the fight and instructed Danny to walk away and let the guys leave. Danny walked to the end of the hallway and was met at the doorway by a group of male Asians who attacked Danny. Peter ran over to break up the fight. The male Asians were kicking and punching Danny. Peter saw a male Asian with long hair, wearing a white ski jacket leap over and hit Danny, possibly stabbing him in the chest. After breaking up the second fight, Peter saw Danny walking away holding his chest and then fell down to the ground in front of room 9, at which time he saw that Danny's hands were full of blood. Peter further advised that most of the Asian males fighting with Danny are on the videotapes which were supplied to the New York City Police Department that night.

31. On or about December 11, 2001, at approximately 3:37 a.m., Detective C. Wilkinson interviewed George Huang, who identified himself as the manger of the Golden Box.

32. Mr. Huang informed Detective Wilkinson that the person who was stabbed was a part time security person named Danny. He further stated that immediately prior to the stabbing, he was talking with a friend down the hall in one of the rooms when he heard a noise coming from down the hall. He came out from the room he was in and saw male and female Chinese patrons, who were previously using room 6, fighting with Danny. He went down the hall and broke up the fight. The people involved in the fight then started leaving. Two of the male patrons were looking for their shoes while the other patrons were being led out by Danny. Shortly thereafter, Danny came back holding his chest and bleeding. While walking back, Danny fell in front of room 9, falling slowly to the floor holding his chest. The two guys that were with the group initially fighting with Danny, the ones that had been looking for shoes, then just left. They had nothing in their hands.

33. As witnessed by George Huang and depicted in the videotapes provided to the New York City Police Department that night, ZHAO was one of the two men that were getting their shoes at the time that Danny was stabbed.

34. On or about December 11, 2001, four videotapes containing various images of the activities at the Golden Box Karaoke club, before, during, and after the murder, including, but not limited to, images of the two fights that immediately preceded the murder, and images showing portions of the actual stabbing itself, were turned over to DEFENDANTS.

35. The statements of all the witnesses, taken by the police on December 11, 2001, immediately after the stabbing, are consistent with each other.

36. The statements taken that day are corroborated by the content of the four surveillance videotapes of the Golden Box provided to the New York City Police Department on December 11, 2001.

37. Despite obtaining this information from the witnesses and obtaining four videotapes from the owners of the Golden Box, which depict portions of the murder and the events surrounding same, on October 24, 2005, ZHAO was arrested for the murder of Danny Cabezas.

38. Based upon the witness statements of December 11, 2001, and the videotapes, no probable cause existed to arrest ZHAO for the murder of Danny Cabezas.

39. Based upon the witness statements and videotapes of December 11, 2001, ZHAO could not have committed the murder.

40. On or about October 24, 2005, in the vicinity of Grand Street and Hester Street, in the County and State of New York, DEFENDANTS, their agents, servants and/or employees, without probable cause that ZHAO committed any crime, and under color of statute, placed plaintiff ZHAO under arrest by pointing firearms, frisking, handcuffing, searching, and placing ZHAO into a police vehicle.

41. From the night of the murder, December 11, 2001, until the time of ZHAO's arrest, October 24, 2005, a period of almost four years, DEFENDANTS failed to properly investigate the stabbing death of Danny Cabezas and obtained no information contradicting the witness statements or videotape depictions of December 11, 2001, and had no basis whatsoever to arrest

ZHAO.

42. Thereafter, on October 24, 2005, DEFENDANTS, their agents, servants and/or employees, under color of law, transported ZHAO to a New York City Police Department precinct in Manhattan and interrogated ZHAO regarding the murder of Danny Cabezas.

43. After denying any involvement in the murder of Danny Cabezas, DEFENDANTS transported ZHAO to the Office of the New York County District Attorney, where the interrogation of ZHAO was continued.

44. ZHAO continued to assert that he had nothing to do with the murder of Danny Cabezas.

45. Next, DEFENDANTS transported ZHAO to the New York City Police Department 112th Precinct, located in Queens, New York.

46. While at the 112th Police Precinct, DEFENDANTS, their agents, servants and/or employees, acting under color of law, assaulted, battered, tortured, terrorized, and threatened ZHAO, and through the use and infliction of unconstitutionally impermissible tactics and measures and through the employment of unlawful physical force and psychological intimidation, coerced and forced ZHAO to sign a false written statement drafted by DEFENDANTS, which contained an admission that he had stabbed Danny Cabezas on December 11, 2001 at Golden Box Karaoke club.

47. DEFENDANTS, their agents, servants and/or employees, by the employment of such tactics, knew that ZHAO did not voluntarily sign the statement drafted by them.

48. DEFENDANTS, their agents, servants and/or employees, knew or should have known that the statement they prepared and forced ZHAO to sign was false.

49. Prior to arresting ZHAO on October 24, 2005, DEFENDANTS, their agents, servants and/or employees, failed to examine the witness statements and videotapes, which, taken together, showed ZHAO could not have stabbed Danny Cabezas.

50. DEFENDANTS, their agents, servants and/or employees, failed to re-interview the witnesses who gave statements the morning of the murder prior to arresting ZHAO on October 24, 2005.

51. None of the witnesses to the stabbing or the events of December 11, 2001, ever implicated ZHAO in the murder of Danny Cabezas.

52. DEFENDANTS, their agents, servants and/or employees, prior to the arrest of ZHAO, possessed actual evidence of ZHAO's innocence and improperly and unlawfully acted with disregard for same.

53. Additionally, DEFENDANTS, their agents, servants and/or employees, possessed information from other members of law enforcement, including the Federal Bureau of Investigation, of the name, with a description, of the person who stabbed Danny Cabezas to

death.

54. This additional information, including the name and description of said person, was not of ZHAO.

55. This additional information further corroborated the witness statements obtained on the night of December 12, 2001, and fit the description of the person who appears on the videotapes, who initially instigated the fight with Danny Cabezas, who is standing around in a taunting and threatening manner after the initial altercation, and who is seen wildly swinging an object in his hand from over his head in a downward motion during the second altercation during which Danny Cabezas was stabbed. This person is also seen in the videotapes folding an object, placing it in his waistband and hastily fleeing the scene of the murder. This physical description of the real perpetrator also matches that of Peter Yee, who witnessed the stabbing, provided on the night of the incident.

56. DEFENDANTS, their agents, servants and/or employees, failed to examine or otherwise further investigate the above statements prior to arresting ZHAO on October 24, 2005.

57. On or about October 25, 2006, DEFENDANTS, their agents, servants and/or employees, under color of law, caused a criminal court complaint to be filed in the Criminal Court of the City of New York, County of Queens, against plaintiff ZHAO charging him with Murder in the Second Degree, and which contained an allegation that ZHAO caused and admitted stabbing Danny Cabezas, thereby causing his death.

58. As a result of the DEFENDANTS conduct in causing the filing of the criminal court complaint, ZHAO was incarcerated on October 25, 2005, and held without bail for a period of almost one year.

59. Thereafter, DEFENDANTS, their agents, servants and/or employees, knowingly testified in a false and misleading manner before a grand jury sitting in Queens County, including testimony concerning the confession, which they knew or should have known was not truthful, nor voluntarily made by ZHAO.

60. As a result of the intentionally false and misleading testimony of the DEFENDANTS, their agents, servants and/or employees, the grand jury of the County of Queens filed an indictment charging ZHAO with two counts of Murder in the Second Degree and one count of Criminal Possession of a Weapon in the Fourth Degree.

61. ZHAO was incarcerated from October 24, 2005, until September 22, 2006, when, upon the motion of the District Attorney for the County of Queens, he was released on his own recognizance.

62. On December 18, 2006, the indictment charging ZHAO with Murder in the Second Degree and other charges was dismissed upon the motion of the District Attorney for the County of Queens.

63. As a result of DEFENDANTS' wrongful conduct ZHAO was incarcerated for a total of 334 days.

## CUSTOMS AND PRACTICES OF DEFENDANT CITY OF NEW YORK WHICH LED TO THE WRONGFUL AND MALICIOUS ARREST, IMPRISONMENT PROSECUTION AND VICTIMIZATION OF ZHAO

64. The defendant CITY OF NEW YORK has a number of customs and practices which are employed by the New York City Police Department which caused and /or contributed to ZHAO's false arrest and imprisonment, his malicious prosecution, and the assault and battery committed against him as part of his unlawful interrogation and search.

65. Specifically, it is the custom and/or practice of defendant CITY OF NEW YORK, its agents, servants and/or employees, to routinely seize individuals, suspected of some type of criminality or possibly the witnesses to criminality, without sufficient and legal probable cause, effectively "arresting" them.

66. Additionally, it is the custom and/or practice of the defendant CITY OF NEW YORK, its agents, servants and/or employees, subsequent to the arrests and seizures of individuals, which arrests lack probable cause, through the employment of unlawful and unconstitutional physical harm and intimidation, and psychological abuse, to interrogate and seek to elicit confessions ("false confessions") in violation of the rights of all people guaranteed by the Constitutions of the United States and State of New York.

67. Defendant CITY OF NEW YORK, its agents, servants and/or employees, including employees of the New York City Police Department, due to a lack of training and supervision, fail to train and/or improperly train their employees in recognizing probable cause sufficient to seize an individual suspected of a crime or a witness to a crime.

68.    Defendant CITY OF NEW YORK, its agents, servants and/or employees, including employees of the New York City Police Department, due to a lack of proper training and supervision, routinely engage in a custom or practice of making arrests without sufficient and legal probable cause.

69.    Defendant CITY OF NEW YORK, its agents, servants and/or employees, including employees of the New York City Police Department, due to a lack of proper training and supervision, are taught to employ unlawful and unconstitutional physical harm, intimidation, threats, coercion, force, and psychological abuse, to elicit confessions in violation of individuals' Constitutional rights in criminal cases.

70.    The employment of the techniques taught by defendant CITY OF NEW YORK, specifically the New York City Police Department, have been shown, over time, to produce unworthy, specious, incredible and false confessions.

71.    Confirmed examples of false confessions routinely elicited by defendant CITY OF NEW YORK, its agents, servants and/or employees, include: People v. Antron McCray, 1989, People v. Kevin Richardson, 1989, People v. Yusef Salaam, 1989, People v. Raymond Santana, 1989, People v. Bently Louis Grant, 2000, People v. Jason Ligon, 1999.

72.    Additionally, it was the custom or practice of defendant CITY OF NEW YORK, its agents, servants and/or employees, specifically the New York City Police Department, to fail to properly resume, continue and/or re-investigate "cold cases;" criminal matters which have remained unsolved and/or not closed for a lengthy period of time.

73.    Moreover, the defendant CITY OF NEW YORK, its agents, servants and/or employees, specifically the New York City Police Department, failed to properly train and/or supervise its agents, servants and/or employees, in the resumption, continuation, and /or re-investigation of such "cold cases."

74.    As a result of such lack of training and supervision, it was the custom or practice of defendant CITY OF NEW YORK, its agents, servants and/or employees, to fail to properly investigate "cold cases" by failing to review evidence previously amassed, failing to locate and re-interview witnesses to the crime, and failing to exercise due care and prudence in a full and complete investigation of a "cold case."

75.    As a result of the custom or practice of defendant CITY OF NEW YORK, its agents, servants and/or employees, in failing to properly investigate "cold cases," individuals are frequently subjected to a violation of their Constitutional rights, including wrongful arrest and imprisonment.

76.    As a result of the defendant CITY OF NEW YORK, its agents, servants and/or employees, failure to properly train and/or supervise its agents, servants and/or employees in the proper investigation of "cold cases," ZHAO's Constitutional rights were violated by, among other things, his wrongful arrest and imprisonment.

## AS AND FOR A FIRST CAUSE OF ACTION
## CIVIL RIGHTS PURSUANT TO FOURTH AND FOURTEENTH AMENDMENTS
### (FALSE ARREST AND IMPRISONMENT)

77.    ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 76.

78.     Defendants CITY OF NEW YORK, DETECTIVE NGA CHEUNG NG, DETECTIVE BILLY MILAN, SGT. BRIAN CONLON, and "JOHN DOE #2, their agents, servants and/or employees conduct and actions toward ZHAO detailed herein, including the false arrest and imprisonment of ZHAO without probable cause, were in violation of the rights guaranteed ZHAO pursuant to the Fourth Amendment of the United States Constitution.

79.     As set forth above, such conduct was the custom and practice of the defendant CITY OF NEW YORK herein.

80.     As set forth above, such conduct was the result of the improper training and/or supervision of the agents, servant and/or employees of defendant CITY OF NEW YORK, specifically the New York City Police Department.

81.     As set forth above, such conduct was performed under color of state law.

82.     As a result of their conduct, DEFENDANTS violated ZHAO's civil rights and are liable to ZHAO pursuant to 42 U.S.C. §1983.

83.     As a result, ZHAO suffered physical and mental injuries.

84.     As a result thereof, ZHAO has been damaged in the sum of Ten Million dollars ($10,000,000).

## AS AND FOR A SECOND CAUSE OF ACTION
## CIVIL RIGHTS PURSUANT TO THE FOURTH AMENDMENT
### (MALICIOUS PROSECUTION)

85.  ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 84.

86.  As set forth above, defendants CITY OF NEW YORK, DETECTIVE NGA CHEUNG NG AND DETECTIVE BILLY MILAN, SGT. BRIAN CONLON, and "JOHN DOE #2," their agents, servants and/or employees, under color of state law, commenced a criminal prosecution against ZHAO.

87.  As set forth above, the prosecution ended in ZHAO's favor as the matter against ZHAO was dismissed and sealed upon the motion of the District Attorney for the County of Queens.

88.  As set forth above, the prosecution of ZHAO was without probable cause.

89.  As set forth above, DEFENDANTS prosecuted ZHAO knowing that ZHAO had not committed any crime.

90.  As set forth above, defendants prosecuted ZHAO when they should have known ZHAO had not committed any crime.

91.  As set forth above, such conduct was a result of the customs and practices of the defendant CITY OF NEW YORK.

92. As set forth herein, such conduct was a result of the improper training and/or supervision of DEFENDANTS, their agents, servants and/or employees.

93. As set forth above, as a result of the prosecution, ZHAO suffered a deprivation of liberty pursuant to the Fourth Amendment.

94. As a result of their conduct, DEFENDANTS violated ZHAO's civil rights and are liable to ZHAO pursuant to 42 U.S.C. §1983.

95. As a result, ZHAO suffered physical and mental injuries.

96. As a result thereof, ZHAO has been damaged in the sum of Ten Million dollars ($10,000,000).

## AS AND FOR A THIRD CAUSE OF ACTION
## CIVIL RIGHTS PURSUANT TO THE FOURTH AMENDMENT
### (EXCESSIVE FORCE)

97. ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 96.

98. DEFENDANTS conduct and actions toward ZHAO detailed herein, including the employment of excessive force and intimidation, were in violation of the rights guaranteed plaintiff pursuant to the Fourth Amendment of the United States Constitution.

99. Such conduct was performed by DEFENDANTS within the scope of their employment and at the behest and under the supervision of the supervisors responsible for and

overseeing the operation of the municipality named herein.

100.    The conduct and acts of the defendants were performed under the color of the governmental authority of the CITY.

101.    As a result of their conduct, defendant violated ZHAO's civil rights and are liable to plaintiff pursuant to 42 U.S.C. §1983.

102.    As a result, ZHAO suffered physical and mental injuries.

103.    As a result thereof, ZHAO has been damaged in the sum of Ten Million dollars ($10,000,000).

## AS AND FOR A FOURTH CAUSE OF ACTION
## CIVIL RIGHTS PURSUANT TO FIFTH & FOURTEENTH AMENDMENTS
## (DUE PROCESS)

104.    ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 103.

105.    DEFENDANTS conduct and actions  toward ZHAO detailed herein, including the arrest, interrogation, abuse, confinement, repeated searches and strip searches of ZHAO were in violation of the rights guaranteed ZHAO pursuant to the Fifth and Fourteenth Amendments of the United States Constitution.

106.    DEFENDANTS' conduct and actions toward plaintiff deprived plaintiff of  life

liberty and property without due process of law.

107.   Such conduct and actions was performed by DEFENDANTS within the scope of their employment and at the behest and under the supervision of the supervisors responsible for and overseeing the operation of the municipality named herein.

108.   The conduct and acts of the DEFENDANTS were performed under the color of the governmental authority of the defendant CITY.

109.   As a result of their conduct, DEFENDANTS violated ZHAO's civil rights and are liable to plaintiff pursuant to 42 U.S.C. §1983.

110.   As a result, plaintiff suffered physical and mental injuries, as well as loss of property.

111.   As a result thereof, plaintiff has been damaged in the sum of Ten Million dollars ($10,000,000).

## PENDENT STATE CLAIMS

### AS AND FOR A FIFTH CAUSE OF ACTION
### (FALSE ARREST AND IMPRISONMENT)

112.   ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 111.

113.   On October 24, 2005, DEFENDANTS, their agents, servants and/or employees, arrested ZHAO, handcuffed him, and took ZHAO into custody, whereby he was detained for approximately eleven (11) months.

114.   ZHAO was conscious of the arrest and confinement.

115.   ZHAO did not consent to the confinement.

116.   The arrest and confinement of ZHAO was not otherwise privileged.

117.   The arrest and confinement of ZHAO was without probable cause.

118.   As a result, ZHAO suffered physical and mental injuries.

119.   As a result thereof, ZHAO has been damaged in the sum of Ten Million dollars ($10,000,000).

## AS AND FOR A SIXTH CAUSE OF ACTION
### (MALICIOUS PROSECUTION)

120.   ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 119.

121.   DEFENDANTS, their agents, servants and/or employees, initiated a prosecution against ZHAO while having no probable cause to believe that ZHAO committed any crimes.

122. DEFENDANTS, their agents, servants and/or employees acted maliciously in initiating said prosecution against ZHAO.

123. DEFENDANTS, their agents, servants and/or employees did not act in good faith when initiating said prosecution against ZHAO.

124. DEFENDANTS, their agents, servants and/or employees did not act on reasonable grounds when initiating said prosecution against ZHAO.

125. As a result, ZHAO suffered physical and mental injuries.

126. As a result thereof, ZHAO has been damaged in the sum of Ten Million dollars ($10,000,000).

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (ASSAULT)

127. ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 126.

128. DEFENDANTS conduct detailed herein, including, the training of firearms upon ZHAO; the arrest and interrogation of ZHAO, including the throwing of a chair, repeated banging of a table, threats of violence against ZHAO, and the slapping of ZHAO's face and the slamming of ZHAO's face into/onto a table; the repeated handcuffing and transportation of ZHAO to court; the multiple strip searches of ZHAO; the repeated shackling of ZHAO; was all done with the intent of placing ZHAO in fear of imminent harmful and offensive contact and did in fact place ZHAO in fear of imminent harmful and offensive conduct.

129. As a result, ZHAO suffered physical and mental injuries.

130. As a result thereof, ZHAO has been damaged in the sum of Ten Million dollars ($10,000,000).

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (BATTERY)

131. ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 130.

132. DEFENDANTS' conduct toward ZHAO herein, including the training of firearms upon ZHAO; the arrest and interrogation of ZHAO, including the throwing of a chair, repeated banging of a table, threats of violence against ZHAO, and the slapping of ZHAO's face and the slamming of ZHAO's face into/onto a table; the repeated handcuffing and transportation of ZHAO to court; the multiple strip searches of ZHAO; the repeated shackling of ZHAO; was intentional.

133. ZHAO did not consent to the intentional touching of his body and person on any occasion.

134. Such conduct by the DEFENDANTS towards ZHAO constituted offensive bodily contact.

135. As a result, ZHAO suffered physical and mental injuries.

136. As a result thereof, ZHAO has been damaged in the sum of Ten Million dollars ($10,000,000).

## AS AND FOR A NINTH CAUSE OF ACTION
## (OUTRAGEOUS CONDUCT CAUSING EMOTIONAL DISTRESS)

137. ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 136.

138. DEFENDANTS' conduct toward ZHAO detailed herein; including the training of firearms upon ZHAO; the arrest and interrogation of ZHAO, including the throwing of a chair, repeated banging of a table, threats of violence against ZHAO, and the slapping of ZHAO's face and the slamming of ZHAO's face into/onto a table; the repeated handcuffing and transportation of ZHAO to court; the multiple strip searches of ZHAO; the repeated shackling of ZHAO; the repeated physical searching of ZHAO; the failure to properly investigate and examine evidence in their possession that demonstrated ZHAO's innocence of any crime; intentionally ignoring evidence of ZHAO's innocence; charging ZHAO with the crime of murder; knowingly submitting a confession that defendants knew or should have known was "false" to the criminal court and grand jury; was all intentional and done for the purpose of causing severe emotional distress to ZHAO. DEFENDANTS conduct toward ZHAO, including all the act and/or omissions detailed herein, were done in a manner so shocking and outrageous as to exceed the bounds of decency and has caused ZHAO severe emotional distress.

139. As a result, ZHAO suffered physical and mental injuries.

140. As a result thereof, ZHAO has been damaged in the sum of Ten Million dollars ($10,000,000).

## AS AND FOR A TENTH CAUSE OF ACTION
### (DEFAMATION)

141. ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 140.

142. Subsequent to the arrest and processing of ZHAO by DEFENDANTS, DEFENDANTS caused to be filed a criminal court complaint falsely charging ZHAO with the crime of Murder in the Second Degree in the Criminal Court of the City of New York, Queens County, and falsely claiming that ZHAO confessed to the crime.

143. DEFENDANTS also caused statements to be published in various newspapers that ZHAO was charged with Murder in the Second Degree and had confessed to the crime.

144. The statements in the complaint and in the newspapers were false and defamatory and DEFENDANTS knew or should have known that they were false and defamatory at the time they were uttered.

145. Such statements made by DEFENDANTS in the criminal court complaint and in the newspapers caused ZHAO disgrace and ridicule.

146. As a result of DEFENDANTS' publication of these false and defamatory statements ZHAO suffered damage to their reputation and mental injuries.

147. As a result thereof, ZHAO has been damaged in the sum of Ten Million dollars ($10,000,000).

## <u>AS AND FOR AN ELEVENTH CAUSE OF ACTION</u>
## (NEGLIGENCE)

148.  ZHAO repeats and reiterates the allegations contained in paragraphs 1 through 147.

149.  DEFENDANTS acts and conduct toward ZHAO, detailed herein, including the faulty and defective investigation into the stabbing death of Danny Cabezas, their failure to examine videotape evidence and witness statements which proved ZHAO was not guilty of any crime, and resulting arrest, imprisonment, interrogation and prosecution of ZHAO for the crime of murder were performed in the course of the administration of DEFENDANTS' public duties.

150.  DEFENDANTS' conduct toward ZHAO, including all the acts and omissions detailed herein, were wrongful, harmful, deceitful and negligent.

151.  As a result, ZHAO suffered physical and mental injuries, as well as loss of property.

152.  As a result thereof, ZHAO has been damaged in the sum of Ten Million dollars ($10,000,000).

**WHEREFORE**, plaintiff YANG FENG ZHAO. demands judgment against defendants CITY OF NEW YORK, DETECTIVE NGA CHEUNG NG AND DETECTIVE BILLY MILAN, SGT. BRIAN CONLON. and "JOHN DOE #2," in the sum of Ten Million dollars ($10.000,000) for each cause of action alleged, together with the costs and disbursements of this action, including attorneys fees.

Dated: New York, New York
       April 18, 2008

Yours, etc.

**SIEGLE & SIMS L.L.P.**

By:

Eric W. Siegle (ES4277)
Jonathan D. Sims (JS8472)
Attorneys for Plaintiff
YANG FENG ZHAO
217 Broadway - Suite 611
New York, NY 10007
(212) 406-0110

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

YANG FENG ZHAO

## SUMMONS IN A CIVIL CASE

V.

CASE NUMBER:  07 CV 3636

CITY OF NEW YORK, DETECTIVE NGA
CHEUNG NG, DETECTIVE BILLY MILAN,
SGT. BRIAN CONLIN and "JOHN DOE #2,"

TO: (Name and address of defendant)

SGT. BRIAN CONLIN
C/O NEW YORK CITY POLICE DEPARTMENT - QUEENS HOMICIDE SQUAD
68-40 AUSTIN STREET
FOREST HILLS, NEW YORK 11375

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

SIEGLE & SIMS L.L.P.
217 Broadway - Suite 611
New York, New York 10007

an answer to the complaint which is herewith served upon you, within _____30_____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

J. MICHAEL McMAHON

APR 2 1 2008

_____
CLERK

_____
DATE

_____
(BY) DEPUTY CLERK