To:     Mr. Jonathan Sims

        Attorney at Law

From:   Deborah Davis, Ph.D.

Re:     Supplemental Report re Yang Feng Zhao

Date:   6-9-08


I have reviewed the following documents related to the training of Detective Ng regarding interrogation:

   Deposition testimony of Ng: 10-16 2007; 4-14-2008

   New York City Police Department Manual: Detective Guide NYC384

   Legal Bulletins, July 2007

   Specialized Training Section, Advanced Training Unit: Criminal Investigation Course (Revised 10/07)

   Cold Case: 2006 Homicide Seminar for the NYCPD December 22, 2005

   (1) The Nature of Mr. Ng's Training

Mr. Ng testified that he received training as follows: (1) the CIC course of the NYPD included about 1-1 ½ hours on interrogation of both suspects and witnesses, (2) a homicide course that included a lesson on interview and interrogation techniques (which was of unknown duration, but less than 1 day) (deposition, pp. 22-26). He described the training from the homicide course as 1 hr in deposition 2 (p. 80). He described this training as taking place 20 years ago (p. 32). Ng also testified that he had a refresher on interrogation at the Detective Bureau training of about 15-20 minutes (depo 2, p. 81).

Mr. Ng did not answer specific questions regarding the nature of this training during the first deposition, responding only that he was taught to "get the truth." During the second deposition, he repeated this focus on getting the truth, but added that they were not to use force, not to beat people up, but to learn more about the suspect to help get information from him (p. 82). Mr. Ng denied recalling all the training about *how* to get the truth. He also did not recall any training about what to do with a suspect who consistently denies involvement in the crime (p. 84).

Mr. Ng was ambiguous on whether he was specifically trained to make "mistakes" that the suspect must correct and/or initial in the written confession. (90-94, depo 2). However, he did

say "because you don't want later on an argument that I change it, why we cross. We make sure the case go to court, we know that was the original one.." (p. 94).

The following are my opinions regarding the nature and adequacy of training received by Mr. Ng, based on my review of these written materials and Mr. Ng's testimony:

2. Adequacy of Training

As compared to available training materials from formal interrogation training seminars by training organizations such as John Reid Associates, the FBI and others, and popular interrogation manuals such as Inbau, Reid, Jayne & Buckley (2001), the training materials of the NYPD are extremely informal, unorganized, and woefully incomplete. The website of John Reid Associates (Reid.com) claims that they have trained over 500,000 law enforcement officers at all levels since 1974. Indeed, inspecting their online training schedule, one can see that they currently have seminars scheduled all over the country, including in NYC. Other training agencies offer similar training, as do many individual law enforcement agencies and departments. The Reid interrogation technique or the individual components it embodies are employed widely by officers at all levels, including those who have learned it by observation of other officers.

This training is quite comprehensive, including specific techniques for conducting pre-interrogation interviews, for evaluating truthfulness and likely guilt, and for how to conduct the interrogation. While the Reid technique does entail risk for eliciting false confessions, it includes some training intended to minimize that possibility. This includes training that (1) specifically prohibits use of legally impermissible threats, promises, or physical coercion (and gives examples of permissible versus impermissible statements regarding incentives or consequences), (2) includes suggestions of how to evaluate when denials may be truthful, and (3) covers conditions under which the interrogation should be stepped down or terminated.

It should also be noted that the interrogation manual for the Reid technique is now in the fourth edition, the first of which was more than 20 years ago, and available during the time Mr. Ng refers to for his training.

The NYPD materials have in common with the Reid technique the following features:

(1) Aspects of instructions regarding the interrogation room

(2) The importance of learning as much as possible about the suspect during the pre-interrogation interview phase,

(3) The importance of establishing rapport with the suspect

(4) The importance of controlling the interaction with the suspect at all times during interrogation

(5) Confronting the person with the accusation

(6) Confronting the person with true or false evidence of guilt

(7) Telling the suspect he can help himself during the interrogation

(8) Giving them an apparent escape, such as self-defense or accident (theme development in Reid terms)

(9) Not yelling or using physical coercion

(10)    Taking the confession in both written and video form

(11)    Inserting deliberate errors in written statements or confessions, to make the statements more credible to others that the statement is accurate and from the suspect

The NYPD materials also include material not typical of other training organizations and materials that is intended to violate the spirit of *Miranda*. That is, they instruct officers to tell the suspect to listen carefully to each question and answer either yes or no. But, "when you get to question number five explain to them 'Before I ask the next question keep in mind that if you say anything other than yes, I can't talk to you anymore and you won't get to tell your side of the story,' then ask them number five." This amounts to a form of threat of negative consequences if the suspect chooses to invoke *Miranda* rights.

Most of the instructions in the NYPD written materials are given in one or a few sentences, without detailed instructions and examples. Further, Mr. Ng testified that his combined training by the NYPD consisted of approximately 2 – 2 ½ hrs. In contrast, Reid seminars and training manuals involve three full days of onsite initial training, follow-up advanced seminars, and hundreds of written pages of instructions and examples. It is my opinion that it is impossible to give adequate instruction regarding interviewing and interrogation in 2-3 hours, and by way of the written materials submitted in this case.

Although I have referred to Reid and similar training as embodying the standards of the industry, these and other agencies fail to devote adequate attention to the issue of false confessions, how to avoid inducing them, and how to recognize them when they occur. The Reid training does include recognition that they can occur, but attributes them exclusively to improper interrogation technique. It also does devote some attention to when one should conclude that the suspect may be innocent and step down the interrogation. However, the NYPD training materials appear to devote no attention to the issues of false confessions and when and why they occur, or how to recognize them. This issue is vitally important, since false confession do, in fact, occur with some frequency. Recent surveys of police across the country have indicated that even police officers believe approximately 1 in 20 confessions they take are false. This can only be regarded as the tip of the iceberg, since police are unlikely to recognize all false confessions.

New York police have taken a number of known false confessions. In fact, a recent publication of the Innocence Project specifically regarding New York State has shown that whereas approximately 25% of all those exonerated by the project were convicted in part via false confessions, for New York State approximately 43% were convicted in part due to false confessions. Such findings emphasize the need for greater training directed toward detecting innocence as well as collecting admissions of guilt.

The final issue that remains unaddressed by the NYC training materials, as well as by other training materials and organizations, is the requirement to video (or at least tape) record all interactions with suspects. As of this spring, 9 states and the District of Columbia require recordings of all interrogations. In addition, some jurisdictions in all states require such recordings. Advocates recommend recording for two general purposes: (1) to deter inappropriate interrogation techniques such as physical abuse or inappropriate verbal threats and promises, and (2) to preserve an objective and complete record of what actually transpired. In the present case, Zhao has alleged physical threats and abuse as well as inappropriate verbal threats and promises of leniency and other misbehaviors. Such behaviors are less likely to occur when interrogations are recorded, but if they do occur, they are at least accessible to scrutiny and available as proof of any claims. A number of reports among those using recordings have shown that police like the practice, in that it protects them against allegations of wrongdoing. It protects all concerned against the faulty memories or falsehoods of others.