# ANDERSON & NASSAR
CLINICAL AND FORENSIC PSYCHIATRY

500 Fifth Avenue
Suite 923
New York, NY 10110

DOUGLAS ANDERSON, M.D., F.A.C.F.P.       (212) 764-9083   Fax: (212) 764-0306       PAUL NASSAR, M.D., F.A.P.A.

July 28, 2008

Jennifer Rossan, Esq.
Law Department, City of New York
100 Church Street
New York, N.Y. 10007

RE:  Zhao v. City of New York, et al.

## RECORD REVIEW

1. Amended Complaint;
2. Various arrest paperwork;
3. Yang Feng Zhao, Grand Jury Minutes (11/16/05);
4. Yang Feng Zhao, Deposition(s) (10/10/07, 10/11/07);
5. Yang Feng Zhao, 12 DVD videos of Deposition(s) (10/10/07, 10/11/07);
6. Deborah Davis, Ph.D., Expert Reports (2) Re: Yang-Feng Zhao; Curriculum Vitae; Powerpoint presentation, "Confession Evidence";

Dear Ms. Rossan:

At your request I have reviewed materials related to the claims of Yang Feng Zhao that he was the victim of coercive interrogation techniques that resulted in him falsely confessing to a crime of second degree murder. Specifically, I was asked to give an opinion as the proper methods to be used in order to assess the allegations, including conducting a clinical psychiatric examination, in order to establish whether or not Mr. Zhao was coerced to confess by the police, as claimed.

Deborah Davis, Ph.D., in a report of August 26, 2007, concluded that Yang Feng Zhao's confession was "clearly the result of the interrogations to which he had been subjected." She stated that the length of the interrogation was excessive and "causes the person to both think less clearly and to become more and more driven to do anything in order to escape the situation." As part of the "proof" that Mr. Zhao had been coerced and that his

confession had been authored by the examining officer, she stated that "it is characteristic of false confessions that the details must be fed to the suspect." However, in Yang Feng Zhao's statement, he claimed to not remember certain details of the assault, including who had given him the knife, where he stabbed the victim, and where he had disposed of the weapon. The actual confession, and the lack of certain details, does not support her conclusion that Mr. Zhao "had been fed details" of his confession.

In the report prepared by Dr. Davis, she detailed methods used to induce false confessions. Although she theorizes what techniques were effective in extracting a false confession from Yang Feng Zhao, several of the assumptions of what happened depended upon the reaction Mr. Zhao while undergoing interrogation. For example, she stated that false confessions occur when a person wishes to escape a situation that is intolerable (a subjective parameter). Yet, she failed to establish whether such a state of mind existed with Mr. Zhao, when he confessed. A direct clinical examination is necessary in order to establish what Dr. Davis hypothesized to have been the state of mind of Mr. Zhao. She failed to establish whether this suspect experienced what Dr. Davis said "could happen" during an interrogation. Without asking, she could not know whether Mr. Zhao confessed in order to escape the situation, was tired, etc., instead of having confessed for other reasons. She also claimed that Mr. Zhao's cultural differences added to his misperception of police powers, even though Mr. Zhao had been in the United States for over seven years and had been arrested and interrogated on prior occasions.

Dr. Davis also concluded that Yang Feng Zhao had been physically intimidated and had been faced with explicit threats, but later she noted that flattery and benevolence had been used to help induce Mr. Zhao to falsely confess. In a sense, Dr. Davis tried to have it both ways. Rather than to speculate as to what Yang Feng Zhao thought or felt about his interrogators, a clinical examination would address such questions. Significantly, Dr. Davis gave a long explanation about Mr. Zhao's probable inability to under the Miranda Warning. She explained how he may have not had "real knowledge of his rights," and the he even had been given and "anti-Miranda Warning, that would invalidate his confession. When faced with such questions, there are readily available tests that are recognized and designed to explore the individual's ability to understand the Miranda Warning, and its application. Apparently Dr. Davis, a psychologist and trained to administer psychometrics, chose not to employ such a tool and instead chose to speculate as to what Mr. Zhao was capable of understanding. Test instruments include Thomas Grisso's Instruments for Assessing Understanding and Appreciation of Miranda Rights, published in 1998, and had been designed to examine the capacities of individuals to have waived their Miranda rights.

The above reflects the fact that Dr. Davis, as noted in her CV, was not a clinician but researched and taught about various issues, including false confessions. In order to address the experience of an individual such as Yang Feng Zhao, a clinical examination is necessary in order to move from speculation about what Mr. Zhao may have thought or felt, to an exploration of his state of mind and what actually influenced his decision to confess to the crime for which he had been charged. Otherwise, as Dr. Davis apparently had done, such notations as "offers of leniency may have been used," reflects the purely speculative nature of the methods used to reach her opinion. Norms, typical methodologies used to induce certain states of mind, etc., are not specific to any individual and should not be the basis for determining why a given behavior had been utilized. Instead, a clinical psychiatric examination by a clinician trained to understand the effects of stress, personality, culture, and other parameters on human behavior, should be the basis for forming an opinion as to what motivated Yang Feng Zhao to confess.

Paul Nassar, MD

3