# EXHIBIT 2

Daniel Saunders - P.V. Zhao.wpd                                                                                  Page 1

Date: September 7, 2006

To:        Richard A. Brown

From:      Gene Reibstein

Re:        P.V. Zhao
           IND. #2892/2005
           Possible Wrong Man

Date of Homicide: December 11, 2002 @ 2:20 A.M.

Location:      2nd Floor Hallway
               KTV Gold Box Karoke Bar
               40-52 Main Street, Flushing

Victim:        Danny Cabezas, D.O.B. 9/9/80
               5'10", 232lbs - Bouncer at Gold Box

Cause of Death: Single Stab Wound to Chest

Weapon:        Knife (Not Recovered)

Witnesses:     Though there were many people present, including customers, employees, and the manager of the karaoke club, no one claimed to have seen the stabbing. Several people including the manager, gave detectives their accounts of what they did see. These accounts are included on the 5's from the night of the incident. Additionally, that night the manager turned over to police several videotapes from security cameras on the second floor of the club.



ATTORNEY'S EYES ONLY – CONFIDENTIAL

NYC 639

### Facts

The victim was killed in a 2nd floor hallway of the Gold Box Karaoke Bar, where he worked as a bouncer. The bar, which has been entirely renovated since this incident, had, on the 2nd floor, several rooms off the hallways, a kitchen, restrooms and a stairway to the 1st floor around the corner from where the victim fell. There were several waitresses whose job was to serve the patrons in each of the karaoke rooms off the hallways. The bar was managed by Peter Yee, with an Assistant Manager, George Hwong. There were security cameras on the 2nd floor covering different areas.

On December 11, 2001, the upstairs was crowded with customers. The security tapes show a great deal of movement in the hallways and in and out of rooms. Several waitresses are seen, the victim is seen and many customers. The defendant appears on the tapes, coming and going in the hallway and the rooms, as do many other people. The videotapes are without sound. One of the tapes, from the camera that shows the hallway just around the corner from where the victim fell to the ground in, unfortunately, very distorted. The other tapes from the cameras, are much clearer, but show different events.

The trouble this night began, and is captured on one of the clear videotapes, when the victim, who is seen talking to 3 men in the hallway, is suddenly kicked by one of the three men. A fight between the victim and those three men ensues. Many other people came rushing out of the karaoke rooms to pile onto the victim, including the defendant, who is seen joining the crowd. The manager, Peter Yee, perhaps assisted by others, separates the fighters and the crowd calms down and disperses. People go back into the rooms and the victim walks around the corner. Some time later, on the tape, the defendant is seen coming out of a karaoke room and walking down the hallway. It is in this section of the tape that the defendant's motions and the reactions of other people on the tape create the impression that he has stabbed the victim. This inference, however, is contrary to the witnesses statements made on 12/11/01 and repeated now. It is also contrary to the position of the fatal wound and the physical sizes, movements and positions of the victim and defendants.

The defendant was picked up in 2003. By that time, after the case had gone through many investigative hands, the defendant was considered the perpetrator. Since he speaks only Chinese ( he is Cantonese, the majority of the people in the bar were Fukienese), Det. Keith Eng was brought in to question him. Defendant admitted he was on the tape but stated he didn't stab anyone. Eventually, however, he signed a confession written in Chinese by Keith Eng. It does not appear that Det. Eng did anything improper in his questioning. It only seems that the defendant, a young immigrant being told that he was going to be convicted anyway because he was on tape and that there were witnesses, including his friends, who said he did it (a ruse) and that the only effect of his not confessing would likely be the deportation of his parents, finally gave in and signed the statement. It is worth noting that Det. Eng, having now interviewed some of the witnesses in the case, no longer believes the defendant is guilty

ATTORNEY'S EYES ONLY – CONFIDENTIAL

NYC 640

Daniel Saunders - P.V. Zhao.wpd                                                                Page 3

The critical facts exonerating the defendant come from the statements of three witnesses, all employed by the Gold Box at the time of the stabbing. In the tape that appears to show the defendant doing the stabbing, the victim falls to the ground immediately after the alleged stabbing motion. The witnesses, however, have each reported that the victim walked some distance, holding his chest and bleeding before falling to the floor. One of the waitresses says she saw the victim holding his chest, cursing, saying he'd been stabbed and then walking approximately 10 feet before he fell. If this is so, the defendant could not have been the stabber. It should also be noted that the defendant is 5'6", the victim is 5'10". The stab wound in the victim is relatively straight forward and enters the chest 15" from the top of his head. These facts are inconsistent with what appears to be the defendant's stabbing motion. Interestingly enough, the wound placement and orientation is consistent with what may be the actions of someone else seen on the tapes. Without going into detail, there is another person, in a short sleeved white T shirt, who is one of the men who begin the first fight with the victim (the defendant is not one of those 3). In the very distorted tape from the security camera around the corner from the first fight, a second melee is captured. This distorted tape may contain the stabbing. The tape seems to include someone in a short sleeved white T-shirt leaping over other people, with his arm extended towards the center of the melee, where the victim is. Peter Yee, the manager, stated on 12/11/01 that during the second fight, a person leaped over him and hit the victim in the chest, though he believed that person wore a white ski jacket. (There is a person wearing a white ski jacket in the tape, but the distorted tape seems to show a short sleeved white T-shirt on the person). Significantly, in the first fight, the short sleeved person appears to have been knocked on the ground and may have blood under his nose. He is also the most angry and agitated person in the entire tape. It takes two people to hold him back from the victim after the first fight is over and everyone else has calmed down. There are also handwritten notes, forwarded to us from a 5th Pct. detective, of a 2004 interview with someone named Chen who stated that, as he was leaving he saw 3 men fighting with the victim. He also states that one of those men stabbed and killed the victim. He doesn't say he saw it or heard it, and, as yet, we don't know who he is or who wrote the note, but it fits the idea that the short sleeved man is the real killer. We will be in touch with the 5th Pct. to follow this up.

The defendant has no previous arrests. His family can put up $10,000 cash bail. He has been in custody since October, 2005. The case is on 9/12 in Judge Eng's part.


cc:     Jack Ryan
        Charles Testagrossa
        Dan Saunders
        Brad Leventhal
        Peter Lomp


ATTORNEY'S EYES ONLY – CONFIDENTIAL

NYC 641